8/22/14
at 9:20am

## In the Circuit Court of the State of Oregon
## For the County of Marion

ELLEN ROSENBLUM, the Attorney General for the )
State of Oregon; STATE OF OREGON, by and through )
Ellen Rosenblum, the Attorney General for the State of )
Oregon, the Oregon Health Authority, and the Oregon )    No. *14C 20043*
Department of Human Services; and the OREGON )
HEALTH INSURANCE EXCHANGE CORPORATION, )
dba Cover Oregon, an Oregon public corporation, )    **SUMMONS**
                                         Plaintiffs, )
                                                    )
                        vs.                         )
                                                    )
ORACLE AMERICA, INC., a Delaware corporation; )
STEPHEN BARTOLO, an individual; THOMAS )
BUDNAR, an individual; KEVIN CURRY, an individual; )
SAFRA CATZ, an individual; BRIAN KIM, an )
individual; RAVI PURI, an individual; and MYTHICS, )
INC., a Virginia corporation, )
                                         Defendants. )

*TO:*   **ORACLE AMERICA, INC., a Delaware corporation**
        Registered Agent:  Corporation Service Company
        285 Liberty Street NE
        Salem, OR  97301                              *Defendant*

   *You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.*

**NOTICE TO THE DEFENDANT: READ THESE PAPERS CAREFULLY!**

   You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within **30 days** along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service upon the plaintiff.
   If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

SIGNATURE OF ATTORNEY/AUTHOR FOR PLAINTIFF

Lisa A. Kaner                                            881373
ATTORNEY'S/AUTHOR'S NAME (TYPED OR PRINTED)         BAR NO. (IF ANY)

_____
TRIAL ATTORNEY IF OTHER THAN ABOVE (TYPED OR PRINTED)    BAR NO.

*STATE OF OREGON*          )
                           ) *ss.*
*County of Multnomah*      )

   *I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original summons in the above-entitled action.*

ATTORNEY OF RECORD FOR PLAINTIFF(S)

*TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual or other legal entity to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.*

ATTORNEY(S) FOR PLAINTIFF(S)

**ATTORNEY GENERAL ELLEN ROSENBLUM**
**MARKOWITZ, HERBOLD, GLADE & MEHLHAF, P.C.**
**SPECIAL ASSISTANT ATTORNEYS GENERAL**
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204
(503) 295-3085

**EXHIBIT A**
**PAGE 1 of 140**

## In the Circuit Court of the State of Oregon
## For the County of Marion

ELLEN ROSENBLUM, the Attorney General for the )
State of Oregon; STATE OF OREGON, by and through )
Ellen Rosenblum, the Attorney General for the State of )
Oregon, the Oregon Health Authority, and the Oregon )   No.  14C20043
Department of Human Services; and the OREGON )
HEALTH INSURANCE EXCHANGE CORPORATION, )   **SUMMONS**
dba Cover Oregon, an Oregon public corporation, )
                                   Plaintiffs, )
                                              )
          vs.                                 )
                                              )
ORACLE AMERICA, INC., a Delaware corporation; )
STEPHEN BARTOLO, an individual; THOMAS )
BUDNAR, an individual; KEVIN CURRY, an individual; )
SAFRA CATZ, an individual; BRIAN KIM, an )
individual; RAVI PURI, an individual; and MYTHICS, )
INC., a Virginia corporation, )
                                   Defendants. )

*TO:*   **SAFRA CATZ, an individual**
        c/o Orrick, Herrington & Sutcliffe LLP
        405 Howard Street
        San Francisco, CA  94105-2669                    *Defendant*

        *You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.*

**NOTICE TO THE DEFENDANT: READ THESE PAPERS CAREFULLY!**

        You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within **30 days** along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service upon the plaintiff.
        If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

SIGNATURE OF ATTORNEY/AUTHOR FOR PLAINTIFF

Lisa A. Kaner                                            881373
ATTORNEY'S/AUTHOR'S NAME (TYPED OR PRINTED)        BAR NO. (IF ANY)

TRIAL ATTORNEY IF OTHER THAN ABOVE (TYPED OR PRINTED)        BAR NO.

*STATE OF OREGON*      )
                       ) *ss.*
*County of Multnomah*  )

        *I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original summons in the above-entitled action.*

ATTORNEY OF RECORD FOR PLAINTIFF(S)

*TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual or other legal entity to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.*

ATTORNEY(S) FOR PLAINTIFF(S)

**ATTORNEY GENERAL ELLEN ROSENBLUM**
**MARKOWITZ, HERBOLD, GLADE & MEHLHAF, P.C.**
**SPECIAL ASSISTANT ATTORNEYS GENERAL**
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204
(503) 295-3085

# PROOF OF SERVICE

STATE OF _____    )
                                       ) ss.
County of _____    )

    *I hereby certify that I made service of the foregoing summons upon ORACLE AMERICA, INC. by delivering or leaving true copies of said summons and the complaint mentioned therein, certified to be such by the attorney for the plaintiff, as follows:*

**Personal Service Upon Individual**

    *By delivering such true copy to him/her, personally and in person at _____ _____ on _____, 20___, at _____ o'clock ___M.*

**Substituted Service Upon Individual**

    *By delivering such true copy at his/her dwelling house or usual place of abode, to-wit:_____ _____, to _____ who is a person over the age of 14 years and a member of the household of the person served on _____, 20___, at _____ o'clock ___M.*

**Office Service Upon Individual**

    *At the office which he/she maintains for the conduct of business at _____ _____ by leaving such true copy with _____ _____, the person who is apparently in charge, on _____, 20___, at _____ o'clock ___M.*

**Service on Corporations, Limited Partnerships or Unincorporated Associations Subject to Suit Under a Common Name**

    (a)  *By delivering such true copy, personally and in person to _____ _____, who is a/the _____ thereof; OR*

    (b)  *By leaving such true copy with _____, the person who is apparently in charge of the office of _____ _____ who is a/the _____ thereof;*

    *at _____ on _____, 20___, at _____ o'clock ___M.*

DATED _____, 200___.

_____
                             SHERIFF

By:_____
                             DEPUTY

    *I further certify that I am a competent person 18 years of age or older and a resident of the state of service or the State of Oregon, and that I am not a party to nor an officer, director or employee of, nor attorney for any party, corporate or otherwise; that the person, firm or corporation served by me is the identical person, firm or corporation named in the action.*

    *DATED _____, 20____.*

_____
                             SIGNATURE

_____
                TYPE OR PRINT NAME

_____
                          ADDRESS

_____

_____
                             PHONE

**EXHIBIT A**
**PAGE 3 of 140**



**THIRD JUDICIAL DISTRICT**
**MARION COUNTY CIRCUIT COURT**

## <u>Read carefully. If you do not comply with the following, your case will be dismissed.</u>

_Risenblum_ v. _Cracle·_

Case Number: _14C 20043_  Date: _8/22/14_

### <u>THIS CASE HAS BEEN ASSIGNED TO:</u>

| | |
|---|---|
| ☐ Judge Donald D. Abar (503) 588-5135 | ☐ Judge David E. Leith (503) 588-5160 |
| ☐ Judge Claudia M. Burton (503) 584-7713 | ☐ Judge Lindsay R. Partridge (503) 566-2974 |
| ☐ Judge Vance D. Day (503) 588-5026 | ☒ Judge Cheryl A. Pellegrini (503) 588-5028 |
| ☐ Judge Courtland Geyer (503) 373-4445 | ☐ Judge Dale W. Penn (503) 588-5492 |
| ☐ Judge Dennis J. Graves (503) 585-4939 | ☐ Judge Tracy A. Prall (503) 588-5030 |
| ☐ Judge Thomas M. Hart (503) 584-7749 | ☐ Judge Jamese L. Rhoades (503) 588-7950 |
| ☐ Judge Mary M. James (503) 373-4303 | ☐ Judge Susan M. Tripp (503) 373-4361 |

### <u>If a party served with a summons intends to contest this matter, that party must file a response, or other appearance, as instructed in the summons.</u>

A status conference will be set after the party served has filed an appearance. All attorneys must appear at the status conference with their calendars. If parties do not have legal representation, they are to appear at the status conference.

If the Plaintiff has not filed a <u>Return</u> or <u>Acceptance of Service</u> by the 63rd day after the filing of the complaint, the case may be dismissed for want of prosecution 28 days later. If proof of service is filed by the 91st day from the filing of the complaint, and no default is later filed, the case will be dismissed 119 days from the date of the filing of the complaint.

Follow these instructions carefully and refer to the <u>Uniform Trial Court Rules</u> for further information or clarification.

All correspondence or other communication shall be directed to the assigned Judge at the following address: Marion County Circuit Court, PO Box 12869, Salem, Oregon 97309-0869.

☐ _Assignment following standard procedure._
☒ _Random assignment following the standard procedure._
☐ _Random assignment at the request of:_ _____

CASE ASSIGNMENT NOTICE          Page 1 of 1          **EXHIBIT A**



I HEREBY CERTIFY THAT THE FOREGOING IS A COMPLETE AND EXACT COPY OF THE ORIGINAL THEREOF

ATTORNEYS FOR _Plaintiffs_

8:01 am

1

2

3  Marion County Circuit Court

4  IN THE CIRCUIT COURT OF THE STATE OF OREGON

5  FOR THE COUNTY OF MARION

6  ELLEN ROSENBLUM, the Attorney General
   for the State of Oregon; STATE OF
7  OREGON, by and through Ellen Rosenblum,
   the Attorney General for the State of Oregon,
8  the Oregon Health Authority, and the Oregon
   Department of Human Services; and the
9  OREGON HEALTH INSURANCE
   EXCHANGE CORPORATION, dba Cover
10 Oregon, an Oregon public corporation,

11                                    Plaintiffs,

12                vs.

13 ORACLE AMERICA, INC., a Delaware
   corporation; STEPHEN BARTOLO, an
14 individual; THOMAS BUDNAR, an
   individual; KEVIN CURRY, an individual;
15 SAFRA CATZ, an individual; BRIAN KIM,
   an individual; RAVI PURI, an individual; and
16 MYTHICS, INC., a Virginia corporation,

17                                    Defendants.

No. 14C20043

**COMPLAINT**

**(Fraud; Oregon False Claims Act;
Breach of Contract; Oregon
Racketeer Influenced and Corrupt
Organizations Act)**

**(Not Subject to Mandatory
Arbitration – Prayer in excess of
$51,000)**

**Fee Authority: ORS 21.160(1)(e)**

**DEMAND FOR JURY TRIAL**

18      Plaintiffs for their complaint against defendants allege as follows:

19                          **INTRODUCTION**

20                                1.

21      Oracle America, Inc. ("Oracle") fraudulently induced the State of Oregon (the

22 "State") and the Oregon Health Insurance Exchange Corporation ("Cover Oregon") to enter

23 into contracts for the purchase of hundreds of millions of dollars of Oracle products and

24 services that failed to perform as promised.  Oracle then repeatedly breached those contracts

25 by failing to deliver on its obligations, overcharging for poorly trained Oracle personnel to

26 provide incompetent work, hiding from the State the true extent of Oracle's shoddy

Page    1 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105
EXHIBIT A
PAGE 5 of 140

1    performance, continuing to promise what it could not deliver, and wilfully refusing to honor

2    its warranty to fix its errors without charge.  Over the last three years, Oracle has presented

3    the State and Cover Oregon with some $240,280,008 in false claims under those contracts.

4    Oracle's conduct amounts to a pattern of racketeering activity that has cost the State and

5    Cover Oregon hundreds of millions of dollars.  Accordingly, plaintiff Ellen Rosenblum, the

6    Attorney General for the State of Oregon, along with the State and Cover Oregon, brings this

7    lawsuit to recover losses to the State and Cover Oregon caused by Oracle's fraud,

8    racketeering, false claims, and broken contracts.

9                                          2.

10        In 2011, the State of Oregon had two needs.  One was to build a State-run health

11    insurance exchange that met the requirements of the Patient Protection and Affordable Care

12    Act ("ACA").  The other was to modernize its aging social services computer systems.

13    Oracle claimed it had the answer, the so-called "Oracle Solution for Oregon."

14                                          3.

15        Oracle lied to the State about the "Oracle Solution."  Oracle lied when it said the

16    "Oracle Solution" could meet both of the State's needs with Oracle products that worked

17    "out-of-the-box."  Oracle lied when it said its products were "flexible," "integrated," worked

18    "easily" with other programs, required little customization and could be set up quickly.

19    Oracle lied when it claimed it had "the most comprehensive and secure solution with regards

20    to the total functionality necessary for Oregon."

21                                          4.

22        Initially, long before Oracle's fraud was revealed, the State was impressed with

23    Oracle — and with reason.  The Oregon Department of Human Services ("DHS") and the

24    Oregon Health Authority ("OHA") held a series of meetings with Oracle throughout 2010

25    and 2011.  Oracle made presentations, provided demonstrations, and answered questions that

26    convincingly addressed all of the State's concerns about the ability of Oracle to meet its

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax:  (503) 323-9105

1    needs.  Independent outside evaluators agreed.  They reviewed Oracle's claims and

2    recommended that the State purchase the "Oracle Solution."  Oracle's fraudulent

3    representations induced DHS and OHA to sign the first contract in June 2011 for Oracle to

4    build a single platform for both a health insurance exchange (the "HIX-IT Project") and to

5    modernize the State's social services technology (the "Modernization Project").

6                                           5.

7         As soon as the first contract was signed, Oracle took control of both Projects.  DHS

8    and OHA initially planned to hire an independent "Systems Integrator" to manage the

9    Projects and implement the "Oracle Solution."  Oracle was dead set against the State hiring

10   an independent Systems Integrator.  According to a former Oracle employee, Oracle

11   advanced a "planned * * * behind-the-scenes effort" to convince the State "that a Systems

12   Integrator would just cause * * * delay."  The former employee explained that "the message

13   was we've got to make sure that [the State] doesn't bring [a Systems Integrator] in because

14   it's * * * just going to cause us trouble."  Oracle recommended to the State that it hire

15   Oracle's own internal consulting unit, Oracle Consulting Services, to play the same role.

16   Oracle also offered to provide training services to State employees, enabling the State to

17   believe that it, along with Oracle, could co-manage the Projects without hiring an

18   independent Systems Integrator.  Oracle continued to support the State's decision through the

19   life of the project.

20                                          6.

21        Oracle's behind-the-scene scheme paid off, for Oracle.  Oracle convinced the State to

22   spend millions of dollars more to use Oracle Consulting Services to design, plan, integrate

23   and manage the Projects.  Oracle became, in effect, the Systems Integrator, bringing on

24   project managers and taking the lead in proposing system architecture, selecting software and

25   hardware, and managing the Projects.  From 2011 on, Oracle was the technical lead on both

26   Projects and was responsible for the development of the technology.  Oracle not only was

**Page    3 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105    **PAGE 7 of 140**

1   responsible for all technology, it tightly controlled access to the software development

2   environments, so that the State had to rely on Oracle's demonstrations and reports to learn

3   about Oracle's progress on the Projects.

4                                          7.

5          In 2013, the State transitioned the HIX-IT Project to Cover Oregon, a State-created

6   public corporation responsible for running Oregon's health insurance exchange. Cover

7   Oregon needed to launch the exchange to the public on October 1, 2013, to ensure that

8   Oregonians would be able to enroll in health insurance online in time to meet federal

9   deadlines. Oracle assured Cover Oregon that the exchange would be ready to launch on

10   October 1. Oracle presented Cover Oregon detailed spreadsheets showing that the HIX-IT

11   Project was nearly 80% complete. Cover Oregon relied on Oracle's statements and entered

12   contracts with Oracle to complete the HIX-IT Project.

13                                         8.

14         In the spring, summer, and fall of 2013, Oracle failed to deliver. At first, Oracle

15   asked Cover Oregon to reduce the scope of the HIX-IT Project. In order to meet its

16   October 1 launch date, Cover Oregon had no choice but to agree. But even with a reduced

17   scope, Oracle fell far behind schedule. By the summer of 2013, it was evident that, despite

18   its assurances, Oracle would fail to complete by October 1 a key element of the exchange—a

19   website portal for small employers and their employees to shop for and purchase insurance.

20   Nonetheless, Oracle employees assured Cover Oregon that the centerpiece of the HIX-IT

21   Project—a website portal for individual Oregonians to review, compare, and purchase health

22   insurance—would be ready to launch on schedule. By late September, however, when

23   Oracle was unable to demonstrate a working website, Cover Oregon realized that Oracle's

24   assurances were worthless. On October 1, Oregon's health insurance exchange was not

25   ready for public launch.

26   /// ///

Page    4 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

9.

Despite Oracle's failure, its executives continued to demand full payment, while promising the exchange would be ready to launch, first by mid-October 2013, then by the end of October, then in December, then January 2014, then February.  Again and again, Oracle broke its promises, missing every promised date.  Without the website portal that the State and Cover Oregon had already paid Oracle more than $100,000,000 to build, Cover Oregon and the State each hired hundreds of additional employees and expedited their training, in order to manually enroll Oregonians in health insurance, Medicaid, and other programs by hand processing paper applications.

10.

In the spring of 2014, Oracle's president claimed that the exchange had been ready to launch in February 2014.  Her self-serving claim was belied by assessments performed by independent experts.  In January, a review conducted on behalf of the federal government reported that "there are still significant performance issues with the system such that, while the core functionality exists, the end user experience would be significantly diminished."  In April, Cover Oregon staff identified 1,198 errors that required repair before the system could be considered for a public launch.  That same month, an independent assessment concluded that it would cost tens of millions of dollars and take more than a year to fix Oracle's abysmal and incomplete work.

11.

Oracle willfully refused to fix its defective work under its warranty, continually demanded to be paid, and threatened to walk off the job if it were not paid, jeopardizing Cover Oregon's ability to meet the needs of Oregonians during open enrollment for health care.  Realizing Oracle would never live up to its obligations, Cover Oregon began work to transition to a federally run system.  The State and Cover Oregon are unable to use most of Oracle's shoddy and incomplete work.

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

12.

Oracle sold the State of Oregon a lie. According to a former Oracle employee, "There was no solution." The cobbled together collection of products that Oracle called the "Oracle Solution" was not flexible, was not integrated, and most importantly, did not work "out-of-the-box." Oracle's 2010 and 2011 claims to DHS and OHA were patently and categorically false.

13.

Not only were Oracle's claims lies, Oracle's work was abysmal. One developer experienced in Oracle products called Oracle's programming "atrocious." He added that "they broke every single best practice that Oracle themselves have defined. It is one of the worst assessments I have performed * * *." The same developer wrote to Oracle, "You are Oracle people, working on an Oracle hardware platform, with Oracle technology products, on an Oracle solution. * * * Oracle should be delivering these environments and products as a solution, like they actually understood the products and owned the solution which has not been the case by a long shot." According to an independent quality assessment conducted in October 2013, Oracle's "processes do not meet industry standards. Impact analysis, code review, coding standards and proper parallel development techniques are ad hoc and inconsistently applied or understood." Another assessment stated simply that "Oracle's performance is clearly lacking." A former Oracle employee was more direct saying Oracle's products were seemingly configured "by a kindergartner."

14.

The cost of Oracle's lies and appalling work is extraordinary. The State and Cover Oregon paid Oracle approximately $240,280,008 for a health insurance exchange that never worked as promised and a modernization program that never got off the ground. The State has and will spend tens of millions more fixing or compensating for Oracle's failures, including millions of dollars to process paper applications, to create a manual enrollment and

**Page    6 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    insurance eligibility determination process, to transition to the federal health insurance

2    exchange, to fix Medicaid enrollment, to independently assess and repair Oracle's failures,

3    and to connect to the federal exchange.

4                                              15.

5         In short, Oracle employed false statements to induce the State, and later Cover

6    Oregon, to employ Oracle and related defendants to undertake Projects that were central to

7    the social programs and healthcare needs of hundreds of thousands of Oregonians.  In

8    addition, Oracle employed false statements to expand Oracle's role in the Projects and, thus,

9    increase its profits. The result was that Oracle had nearly unfettered control of the

10   Modernization and HIX- IT projects.  Then, when problems arose and plaintiffs were in a

11   terrible bind due to the looming deadlines related to the health exchange, Oracle made further

12   false statements to induce the State and Cover Oregon to stay the course. In effect, Oracle

13   used its purported superior expertise, coupled with lies and pressing deadlines, to trap the

14   State and Cover Oregon in a deadly spiral: at each juncture Oracle charged more and Oregon

15   got less.

16                                             16.

17        Oracle has never offered to return a penny of $240,280,008 it fraudulently obtained or

18   to pay for any of the millions its failures cost the State.  On the contrary, on August 8, 2014,

19   Oracle filed a lawsuit riddled with false and irrelevant allegations against Cover Oregon,

20   claiming that Cover Oregon owes Oracle an *additional* $23,000,000 for the "Oracle

21   Solution" that never worked.

22                          **PARTIES, JURISDICTION, AND VENUE**

23                                             17.

24        Plaintiff Ellen Rosenblum is the Attorney General of Oregon.  Pursuant to

25   ORS 180.760(1), Attorney General Rosenblum has authority to bring claims under the

26   Oregon False Claims Act in the name of the State of Oregon.  Pursuant to ORS 166.725(5)

**Page    7 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 11 of 140

1   and (8), Attorney General Rosenblum has authority to institute civil actions for violations of

2   the Oregon Racketeer Influenced and Corrupt Organizations Act ("ORICO").

3                                                  18.

4          Plaintiff Oregon Health Insurance Exchange Corporation, doing business as Cover

5   Oregon ("Cover Oregon"), is an Oregon public corporation.  Pursuant to ORS 741.002(2),

6   Cover Oregon has the authority to sue.

7                                                  19.

8          Plaintiff Oregon Department of Human Services ("DHS") is the State agency

9   responsible for most of the State's social service programs, including Temporary Assistance

10  for Needy Families ("TANF"), Employment Related Day Care ("ERDC"), and the

11  Supplemental Nutrition Assistance Program ("SNAP").  Pursuant to ORS 179.040(2)(a),

12  DHS has the authority to sue.

13                                                 20.

14         Plaintiff Oregon Health Authority ("OHA") is the State agency responsible for

15  managing most of the State's health care programs, including the Oregon Health Plan, the

16  State's Medicaid program.  The Oregon legislature created OHA in 2009 as a division within

17  DHS, and DHS consolidated health-related programs under OHA.  Effective July 1, 2011,

18  OHA became a separate and independent State agency.  Pursuant to ORS 179.040(2)(a),

19  OHA has the authority to sue.

20                                                 21.

21         Defendant Oracle America, Inc. ("Oracle") is a Delaware corporation with its

22  principal place of business in California.  Oracle conducts business in offices in Portland,

23  Oregon.  This court has jurisdiction over Oracle pursuant to ORCP 4 (A)(4)-(5) and 4 (L)

24  because Oracle is engaged in substantial activities within the state and has consented to the

25  exercise of personal jurisdiction.

26  /// ///

**Page    8 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A
PAGE 12 of 140**

22.

Defendant Mythics, Inc. ("Mythics") is a Virginia corporation with its principle place of business in Virginia. This court has jurisdiction over Mythics pursuant to ORCP 4 (A)(4)-(5), 4(C), 4(D), and 4 (L) because Mythics committed acts within and without Oregon giving rise to injuries to plaintiffs within Oregon and at the time of the injuries, service activities were carried on within Oregon on Mythics' behalf, and because Mythics is engaged in substantial activities within the state and has consented to the exercise of personal jurisdiction.

23.

Defendant Stephen Bartolo is an individual resident of Massachusetts. He is Vice President, Engineered Systems and Hardware, at Oracle. This court has personal jurisdiction over Bartolo pursuant to ORCP 4 A(4), C, and L because Bartolo was engaged in substantial activities within Oregon and committed acts within Oregon giving rise to injuries within Oregon.

24.

Defendant Thomas Budnar is an individual resident of Connecticut. He is Vice President for North America Government Consulting at Oracle. This court has personal jurisdiction over Budnar pursuant to ORCP 4 A(4), C, and L because Budnar was engaged in substantial activities within Oregon and committed acts within Oregon giving rise to injuries within Oregon.

25.

Defendant Safra Catz is an individual resident of California. She is the President and Chief Financial Officer of Oracle. This court has personal jurisdiction over Catz pursuant to ORCP 4 C, D, and L because Catz committed acts within and without Oregon giving rise to injuries to plaintiffs within Oregon. In addition, Catz sent correspondence into Oregon giving rise to a claim alleged herein.

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1                                          26.

2          Defendant Kevin Curry is an individual resident of Georgia.  At all relevant times, he

3    was Group Vice President for North America Public Sector at Oracle.  This court has

4    personal jurisdiction over Curry pursuant to ORCP 4 A(4), C, and L because Curry was

5    engaged in substantial activities within Oregon and committed acts within Oregon giving rise

6    to injuries to plaintiffs within Oregon.

7                                          27.

8          Defendant Brian Kim is an individual resident of Virginia.  At all relevant times, Kim

9    was a Technical Manager at Oracle.  This court has personal jurisdiction over Kim pursuant

10   to ORCP 4 A(4), C, and L because Kim was engaged in substantial activities within Oregon

11   and committed acts within Oregon giving rise to plaintiffs' injuries within Oregon.

12                                         28.

13         Defendant Ravi Puri is an individual resident of Georgia.  At all relevant times, Puri

14   was Senior Vice President for North America Technology and Government Consulting at

15   Oracle.  This court has personal jurisdiction over Puri pursuant to ORCP 4 C, D, and L

16   because Puri committed acts within and without Oregon giving rise to injuries to plaintiffs

17   within Oregon and, at the time of the injuries, service activities were carried on within

18   Oregon on Puri's behalf.  In addition, Puri sent correspondence into Oregon giving rise to a

19   claim alleged herein.

20                                         29.

21         Subject matter jurisdiction is conferred on this Court by ORS 14.030 and 14.050(1).

22                                         30.

23         Venue in Marion County is proper pursuant to ORS 14.080(1) and (2) and ORS

24   14.050(1) because the cause of action arose in Marion County and because the address for

25   Oracle's registered agent is in Marion County and because plaintiff Attorney General

26   Rosenblum seeks the recovery of penalties imposed by statute.  Venue is also proper in

Page     10 -     **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105
PAGE 14 of 140

1    Marion County because Section O.1 of the Oracle License and Services Agreement signed by

2    Oracle and Cover Oregon provides for venue in the Circuit Court for the State of Oregon for

3    Marion County.

**SUMMARY OF THE ACTION**

**Origins of DHS Modernization Project, 2007-2010**

6                                    31.

7          In the 2007-2008 biennium, DHS began a project to modernize its aging information

8    technology systems to improve the delivery of social services such as Medicaid, TANF,

9    ERDC, and SNAP.  DHS referred to this project by several names, including the

10   "Modernization Project."  DHS considered several potential technology strategies to

11   implement the Modernization Project, including transferring a technology strategy from

12   another state or purchasing a Commercial-off-the-Shelf ("COTS") package.

13                                    32.

14         COTS software is software sold to the general public, businesses, and governments

15   that is designed for a particular purpose.  COTS software is an alternative to custom designed

16   software, which is built from the ground up for a single customer to meet the individual and

17   specific demands of that customer and not sold to the general public.  Programs such as

18   Microsoft Word, Excel, and PowerPoint are examples of COTS software.  COTS software

19   has a number of different "functionalities."  "Functionality" is the capacity of a software

20   program to perform a particular task.  For example, Microsoft Word has the functionality to

21   perform word processing.  PowerPoint has the functionality to create slide presentations.

22   COTS software can be "configured" to perform in certain ways.  "Configure" means to set

23   the values of parameters within a software program to achieve a goal.  For example,

24   Microsoft Word may be configured to produce documents in many different fonts.

25   Configuration does not require a software developer to write computer code to achieve the

26   functionality.

Page      11 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

33.

DHS sought to implement a system that would integrate all social services into a single technology strategy capable of meeting a variety of requirements, including:

    (a)    Automating the determination of eligibility for social services ("Eligibility Automation");

    (b)    Automating the calculation of benefits;

    (c)    Providing a unified set of case management tools for caseworkers; and

    (d)    Providing client notifications and scheduling.

34.

To identify potential technology vendors capable of meeting these requirements, DHS issued a Request for Information ("RFI") in January 2009. The purpose of the RFI was to identify potential technology packages or technology providers who could assist DHS in design, development, and implementation of the Modernization Project.

35.

Oracle submitted a response to the RFI in February 2009. Oracle proposed that DHS adopt an "Oracle Solution" that consisted of a suite of Oracle software products and Oracle consulting services to implement those products. Oracle claimed that its COTS software "meets the current and future needs [of] DHS's case management requirements with out-of-the-box functionality." Oracle also stated that Siebel Public Sector Case Management, the key product in the "Oracle Solution," "is a true enterprise COTS [Commercial-off-the-Shelf] application that leverages 'out-of-the-box' functionality and allows DHS to accommodate various application requirements by configuring the Siebel Public Sector application (using our comprehensive development tools) while minimizing the need for custom coding. This configuration-based approach will drive down cost, time to market and substantially reduce the risk for the [Modernization Project]." In addition, Oracle claimed that its proposed COTS application was "flexible to accommodate various program area needs and business

Page     12 -     **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085   **EXHIBIT A**
Fax: (503) 323-9105
**PAGE 16 of 140**

1    processes across the entire organization.  Oracle's COTS software meets the current and

2    future needs of the Health and Human Services Sector case management requirements with

3    out-of-the-box functionality.  It also provides the ability for each customer to configure the

4    application to their precise business needs[.]"

                                        36.

6        In addition to the purchase of Oracle products, Oracle proposed that DHS utilize

7    Oracle Consulting Services ("OCS") to implement the "Oracle Solution."  OCS is a division

8    of Oracle that provides systems integration, software engineering, project management, and

9    technical support to integrate and implement Oracle Projects.  According to Oracle's

10   response to the RFI, "Who knows Oracle applications better than Oracle?"  Oracle stated that

11   OCS could successfully plan and implement the Modernization Project, "concluding in an

12   actual application that operates as anticipated."

                                        37.

14       In March 2010, the President signed two bills, the Patient Protection and Affordable

15   Care Act and the Health Care and Education Reconciliation Act (collectively the "ACA"),

16   overhauling the nation's healthcare system.  Among its provisions, the ACA required states

17   to implement a health insurance exchange ("HIX") or use an exchange developed by the

18   federal government.  A HIX is an entity created to facilitate the purchase of health insurance.

19   Oregon elected to build and operate its own HIX.

                                        38.

21       The ACA requires most Americans to obtain health insurance coverage by 2014.  The

22   ACA provides that uninsured Americans should be able to compare, purchase, and enroll in

23   health insurance through state HIXes ("Individual Enrollment").  The ACA does not require

24   small employers to provide health insurance.  However, the ACA provides that small

25   employers should be able to use state HIXes to offer insurance to their employees.  Small

26

Page    13 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105 **EXHIBIT A**

1    employers who use a HIX to offer insurance to their employees are eligible for federal tax

2    credits. This program is known as the Small Business Health Options Program ("SHOP").

3                                             39.

4              In summer of 2010, DHS followed up on its RFI by inviting technology vendors to

5    participate in an "Eligibility Automation Vendor Fair." DHS invited more than a dozen

6    software vendors to present proposed strategies for eligibility automation and case

7    management. DHS also encouraged vendors to make presentations demonstrating a

8    "broader-based solution" consisting of "an integrated, interoperable solution spanning

9    anywhere from application intake, eligibility determination up to total back end (legacy)

10   system replacement and/or modernization." To participate in the vendor fair, DHS required

11   the vendors to offer COTS programs and an automated rules engine, a software program

12   designed to electronically determine an individuals' eligibility for social services programs.

13                                            40.

14             On August 18, 2010, a dozen Oracle employees made a nearly four-hour presentation

15   to DHS staff at the vendor fair. As part of their presentation, Oracle distributed an article

16   describing its proposed solution. According to the article, "Oracle now provides a complete

17   solution that gives caseworkers a comprehensive view of clients across programs. Using

18   Oracle's social services solution, organizations can streamline the entire social services

19   lifecycle, including 1) application, initiation and screening, 2) determination and

20   investigation, 3) delivery of benefits and services and 4) measurement, analysis and

21   optimization of programs * * *."

22                                            41.

23             With the passage of the ACA, DHS saw an opportunity to combine the Modernization

24   Project with an effort to develop a HIX. In September 2010, following the Eligibility

25   Automation Vendor Fair, DHS issued a Request for Additional Information to the vendors

26   who participated in the Fair. In this request, DHS asked the vendors to provide additional

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    information about work they were performing to assist other states in implementing the

2    requirements of the ACA.  Oracle responded that it was prepared to "provide guidance to

3    states on how to fulfill the[ir] obligations under" the ACA.

4                                          42.

5          Based on its market research, responses to the RFI and the Request for Additional

6    Information, and presentations at the Eligibility Automation Vendor Fair, DHS concluded

7    that it should purchase COTS programs to complete the Modernization Project.  In October

8    2010, DHS issued a report summarizing its findings and requesting authorization to proceed

9    with procurement of COTS programs.  This report indicated that DHS was considering

10   combining the Modernization Project with a project to develop a HIX.

11                                         43.

12         By late 2010, two vendors emerged as leading contenders for supplying the State with

13   a COTS platform: Oracle and Cúram Software.

14   **Early Innovator Grant and Procurement, Fall 2010 – Summer 2011**

15                                         44.

16         In October 2010, the U.S. Department of Health and Human Services ("HHS")

17   announced that it would offer "Early Innovator" grants to states to design and implement the

18   information technology infrastructure needed to operate the health insurance exchanges

19   required by the ACA.  This grant provided Oregon with an opportunity to combine the

20   Modernization Project with a project to create a HIX. (The project to create a HIX became

21   known as the "HIX Project."  The HIX Project included the work to determine the business

22   requirements for running a HIX, the technology to implement a HIX, and the program to

23   market the HIX to Oregonians).

24   /// ///

25   /// ///

26   /// ///

**Page      15 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

45.

1

2        The State applied for the Early Innovator grant.  The State proposed that it would

3    build on the planning it had already completed on the Modernization Project to create an

4    integrated technology platform on which to build a HIX.

46.

5

6        In its application, the State outlined that its HIX "will be a central marketplace for

7    health insurance in the state, providing one-stop shopping for individuals and small

8    businesses to compare rates, benefits and quality among plans, offering meaningful choice of

9    health plans and providers, apples-to-apples comparisons, and easy payment processing.  It

10    will administer the new federal health insurance tax credits, offer improved, seamless access

11    to Medicaid, and make it easier to enroll in commercial health insurance plans."

47.

12

13        In February 2011, HHS awarded the State an Early Innovator grant of more than $48

14    million to implement a HIX.

48.

15

16        After receiving the Early Innovator grant, DHS continued its efforts to procure a

17    COTS platform, now focused on obtaining a platform that would meet the needs of both the

18    Modernization and HIX Projects.  Because the State now sought a combined technology

19    platform for both the Modernization and HIX Projects, staff from what would become OHA

20    joined with DHS in evaluating vendors.  (The project to develop the technology to support

21    the HIX became known as the "HIX-IT Project," while the overall project to create, operate,

22    and administer a HIX remained known as the "HIX Project.")

49.

23

24        To obtain more information about how Oracle and Cúram proposed to meet the

25    technology requirements of the Modernization and HIX-IT Projects, DHS hosted a series of

26

**Page    16 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

1    "Table Talk" presentations in early 2011.  These presentations were conversations between

2    DHS and the vendors.

                                       50.

4        DHS hired Wakely Consulting Group ("Wakely") and KPMG LLP ("KPMG") to

5    provide guidance to DHS during the evaluation and procurement process, and to provide an

6    independent evaluation of both vendors' platforms, including whether the vendors'

7    technology products could meet State requirements.  Wakely and KPMG staff attended some

8    of the Table Talk presentations, reviewed Oracle's written responses to DHS's request for

9    information, and suggested questions for DHS and OHA to ask both vendors.  Oracle knew

10   that the State had hired Wakely and KPMG, and Oracle's presentations and response to the

11   State's requests for information were intended to persuade Wakely and KPMG, as well as

12   DHS, that the "Oracle Solution" would meet Oregon's needs.

                                       51.

14       In a February 2011 Table Talk presentation, Oracle proposed the "Oracle Solution."

15   Oracle did not have one software product capable of implementing the Modernization and

16   HIX Projects.  However, Oracle said that several of its discrete products had already been

17   integrated together to meet Oregon's needs for the Modernization and HIX-IT Projects.

18   These included, but were not limited to, Siebel Public Sector ("Siebel"), a customer

19   relationship management database used for storing client data and managing clients'

20   applications for and use of social services programs; Oracle Policy Automation ("OPA"), a

21   program designed to automatically determine individuals' eligibility for government

22   subsidies, social service programs, and health insurance plans; and WebCenter, a program to

23   display the website portal.

                                       52.

25       The technology foundation of the "Oracle Solution" consisted of the software

26   programs Siebel and OPA.  According to Oracle, OPA would determine whether Oregonians

Page    17 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105  **PAGE 21 of 140**

1    were eligible for benefits, including health insurance, subsidies for health insurance, and

2    social services, such as TANF, ERDC, and SNAP.  Siebel would allow the State to manage

3    the administration of benefits, including payment processing and enrollment policy

4    management.  Siebel would also provide a back-end portal for insurance providers.

5                                              53.

6            Throughout these presentations, Oracle said that it had developed its products so that

7    the State would be able to very rapidly deploy the systems necessary to complete the

8    Modernization and HIX-IT Projects.

9                                              54.

10           One of the biggest challenges facing the states that developed their own exchanges

11   was that the full list of federal requirements for the exchanges had not yet been developed.

12   Oracle, however, told the State that it had deep experience with state and federal

13   requirements and was already preparing to meet ACA requirements.  In a response to DHS's

14   September 2010 request for additional information, Oracle stated that "Oracle has a long

15   history of involvement in standards bodies and industry initiatives.  Oracle has worked hard

16   with federal and state/local Health and Human Services organizations to ensure that Oracle

17   solutions meet requirements and anticipate future ones."  Oracle added that as "of now, only

18   a fraction of [ACA] requirements have been released and finalized.  Oracle team members

19   are actively assessing the health bill requirements and will continue to work with government

20   leaders on the path forward."  Oracle also added that it "invests several billion dollars in

21   research and development to meet changing organization requirements."

22                                             55.

23           DHS developed a list of 450 technology requirements for the Modernization and

24   HIX-IT Projects.  To determine each vendor's ability to provide a technology platform for

25   the Projects, DHS used this list to create a questionnaire (the "Vendor Questionnaire").  DHS

26   and OHA sent the Vendor Questionnaire to Oracle and Cúram in March 2011.  For each

Page       18 -     COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A

1    requirement, DHS asked Oracle and Cúram to score whether their proposed software

2    programs had functionality to meet the requirement "out-the-box" (score of "4"); had

3    functionality to meet the requirement through the "seamless" use of a third-party product

4    (score of "3"); had functionality to meet the requirement with "customization" (score of "2");

5    had functionality to meet the requirement through "customized integration" with a third-party

6    product (score of "1"); or lacked functionality to meet the requirement ("score of "0").

7                                                56.

8           "Customization" is a term of art in the technology industry.  If a program requires

9    "customization" to meet a functional requirement, a software developer must write custom

10   software code to implement the functionality.  "Out-of-the-box" functionality does not

11   require engineers to write code to implement the functionality.  DHS defined a score of "4"

12   as meaning the "vendor provides the functionality from its own code base. No customizing or

13   working around is required."

14                                               57.

15          In its response, Oracle set forth its interpretation of DHS's scores.  Oracle clarified

16   that it scored its response to DHS's requirements a "4" if its products met the requirement

17   "out-of-the-box without modification or through routine configuration using the toolsets

18   provided with the applications * * *."  Oracle claimed that "routine configuration" could be

19   performed by business analysts and did not require software engineers to write software code

20   or scripts.

21                                               58.

22          Oracle also clarified its interpretation of a "2."  According to Oracle, "customization"

23   involved writing scripts to create new functionality.  Scripts are software code that runs on

24   top of software applications.  "Source code," in contrast, is the software code that forms the

25   underlying application.  Oracle later claimed that "under no circumstances will we

26   recommend" changes to the underlying application source code.

Page     19 -     COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A

59.

Oracle scored more than 95% of the DHS's requirements as a "4," indicating that the "Oracle Solution" was 95% "out-of-the-box."

60.

On the Vendor Questionnaire, Oracle contended that the "Oracle Solution" met key State requirements for both the Modernization and HIX-IT Projects out-of-the-box. Oracle claimed, for example, that the "Oracle Solution" provided the functionality for Individual Enrollment and SHOP out-of-the-box. Oracle also claimed that the "Oracle Solution" would allow Oregonians to electronically apply for DHS benefits and for DHS to make benefit determinations out-of-the-box.

61.

Oracle's responses to the Vendor Questionnaire also indicated that key components of the "Oracle Solution" already worked together out-of-the-box. For example, in response to the State's requirement that the vendor's proposed technology should allow Oregonians to "self-screen[] for program benefits and services," Oracle responded that the "Oracle Solution" met the requirement out-of-the-box. Oracle added in a comment that it would meet this requirement with three Oracle products: WebCenter, Siebel, and OPA. Oracle's response to this requirement, and many others, caused DHS and OHA to believe that there was an "out-of-the-box integration between" OPA and Siebel.

62.

Oracle's responses to the Vendor Questionnaire also stated that OPA and Siebel, the foundation of the "Oracle Solution," could be implemented by business analysts, not software developers, and without customization. Oracle explained that "government subject matter experts (not application developers)" could define rules in OPA "in the terms and vocabulary that they are familiar with and/or as defined in relevant statute, regulations and policy documents. * * * There is no scripting or programming needed." With respect to



ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD, GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    Siebel, Oracle claimed that changes "such as adding new fields are considered configurations

2    in the Oracle system and require NO CODE to implement" (capitalization in original).

3                                    63.

4         Throughout its presentations to and conversations with DHS, Oracle repeatedly

5    stressed that the "Oracle Solution" would only require 5% customization.

6                                    64.

7         DHS hosted a Table Talk presentation on March 14, 2011.  In a PowerPoint

8    accompanying Oracle's presentation, Oracle stated that it was proposing a "Comprehensive

9    Solution for Eligibility Automation and Health Insurance Exchange," and its Solution

10   utilized "Comprehensive **integrated technology**" (emphases in original).  Oracle also

11   claimed that OPA used "pre-packaged integrations."

12                                   65.

13        Oracle also said that the "Oracle Solution" would allow the State to meet the

14   demanding timelines imposed by the ACA.  Oracle's March 14, 2011 PowerPoint

15   presentation stated that "Proven enterprise architecture & OnDemand hosting speeds the

16 · deployment time necessary to meet HIX deadlines."  The presentation also stated that

17   "Infrastructure and Environment can be stood up in less than 3 weeks from contract

18   ratification."

19                                   66.

20        Following its March 2011 Table Talk presentation, Oracle continued to represent that

21   Oregon could implement the "Oracle Solution" quickly and with minimal customization.  In

22   its response to DHS requests for additional information, Oracle wrote that the "Oracle

23   Solution" could be "incorporated into the current technology environment without

24   customization of the core features and functionality * * *."  Oracle also stated that its

25   "Solution" "is a highly flexible, scalable, secure, commercial-off-the-shelf (COTS) package

26   that is easily integrated with internal and external systems."

**Page    21 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085    **EXHIBIT A**
Fax:  (503) 323-9105    **PAGE 25 of 140**

67.

1

2     The Wakely and KPMG assessments also noted that Oracle was claiming it could

3     provide Oregon with a solution for the Modernization and HIX-IT Projects with existing

4     applications that merely needed to be configured.  Upon a review of Oracle documents sent

5     to the State, Wakely and KPMG wrote that "Oracle is touting the 'one stop shop' approach

6     where all of the functionality it feels Oregon needs to handle the [Eligibility Automation] and

7     HIX solution is already available and primarily needs to be configured."  Wakley and KPMG

8     also noted that "Oracle proposes that its solution can [be] incorporated into Oregon's current

9     technology environment without customization of the core features and functionality."

10                                           68.

11    Cúram withdrew from the procurement process in May 2011.

12                                    ·   69.

13    On May 10 through 12, 2011, DHS invited Oracle to provide demonstrations of its

14    products to a State evaluation team.  During these demonstrations, Oracle demonstrated to

15    the evaluation team "the 'out-of-the-box' capabilities of its solution" and answered follow-up

16    questions.  Wakely and KPMG attended Oracle's May 2011 demonstrations.

17                                           70.

18    During the May 2011 demonstrations, Oracle said that its products had been

19    developed so that the State could very rapidly deploy the systems for the Modernization and

20    HIX-IT Projects.  Oracle asserted that key components of the "Oracle Solution," such as

21·   Siebel and OPA, were already seamlessly connected.  Oracle claimed that their products

22    were highly integrated and the State would only need to configure them to make them work

23    together.  Based on Oracle's presentation, DHS believed that Oracle's suite of applications

24    could be configured to work together with "point and click" tools.

25    /// ///

26    /// ///

Page    22 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085    EXHIBIT A
Fax: (503) 323-9105    PAGE 26 of 140

1                                                  71.

2          Oracle Vice President Kevin Curry was the highest ranking Oracle employee present

3    throughout the May 2011 demonstrations.  Curry failed to disclose to DHS that the "Oracle

4    Solution" was not already integrated, was not functional "out-of-the-box," and was not

5    flexible and easy to use.

6                                                  72.

7          During a breakfast meeting held on the final day, Curry told DHS staff, including

8    DHS Interim Chief Information Officer John Koreski, that the "Oracle Solution" was 95%

9    out-of-the-box.  During this same breakfast, Oracle told DHS that rules for determining

10   Oregonians' eligibility for social service programs could be configured in OPA in six to eight

11   weeks.

12                    **The State Decides to Purchase the "Oracle Solution"**

13                                                 73.

14         Following Oracle's May 2011 demonstrations, DHS prepared a final report

15   summarizing its findings and recommending that the State purchase the "Oracle Solution"

16   (the "Recommendation and Evaluation").  The State followed the Recommendation and

17   Evaluation and selected the "Oracle Solution."

18                                                 74.

19         Oracle's representation that the "Oracle Solution" was 95% out-of-the-box was the

20   key factor influencing the State's decision to purchase the "Oracle Solution."  One State

21   evaluation team noted that Oracle "products meet virtually all of our business/field

22   requirements out-of-the-box (Oracle's response to our questionnaire indicated only about 5%

23   of the business requirements will require customization)."

24                                                 75.

25         The DHS Recommendation and Evaluation emphasized that "Oracle's vendor

26   demonstration did a good job showing how flexible the solution is out of the box.  Members

Page    23 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

1   of the Oracle team walked through how configurable the solution components are and how

2   they integrate well together.  The [Oracle] team also *repeatedly reiterated* that everything

3   being presented was core functionality that comes 'out of the box' to its clients" (emphasis

4   added).  The report added that "Oracle's response to [the Vendor] questionnaire indicated

5   only about 5% of business requirements will require customization.  We conclude that the

6   Oracle framework will meet the needs of Eligibility Automation for DHS."  Altogether, the

7   DHS Recommendation and Evaluation mentioned the out-of-the-box functionality of the

8   "Oracle Solution" almost 20 times.

9                                              76.

10      The State also relied on Oracle's representations that the "Oracle Solution" was

11  flexible and easily configurable.  DHS noted that the "Oracle solution is highly

12  configurable"; "the proposed solution is quite flexible"; "Oracle's solution provides an

13  integrated and flexible approach to policy automation"; OPA "is highly configurable and

14  does not require a high level of technical expertise."  In a debrief following Oracle's May

15  2011 demonstrations, the DHS team recorded that "Configurability is very valuable."  A

16  State team focused on developing the HIX reported that "the Oracle solution has the

17  flexibility for scaling and configuration to meet our current and future needs." A summary of

18  team feedback recorded "ease of use" first on a list of features that the team liked.

19                                              77.

20      Finally, the State relied on Oracle's representations that the "Oracle Solution" was

21  scalable.  The DHS final report stated that the "proposed infrastructure supports clustering

22  and load balancing features, flexible deployment options, horizontal and vertical scalability

23  features and high levels of performance tuning on data and application servers to meet

24  availability, performance and capacity growth requirements."

25  /// ///

26  /// ///

Page    24 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
PAGE 28 of 140

78.

Wakely and KPMG independently concluded that the State should purchase the "Oracle Solution." They noted that Oracle's May 2011 demonstrations showed that "several of the various components that comprise the [Oracle] solution are mature, robust, and appear to be well integrated," and concluded that "based on the information provided previously and the functionality demonstrated during the [May demonstrations], the Oracle solution provides Oregon a sound technology foundation on which to build its envisioned" Modernization and HIX-IT Projects.

### The Oracle-Mythics Enterprise

79.

Mythics is a corporation headquartered in Virginia Beach, Virginia. Mythics is engaged in an ongoing organization with Oracle to distribute and resell Oracle products and provide consulting on the implementation and integration of those products.

80.

To purchase the "Oracle Solution," the State entered a contract and purchase orders with Mythics rather than Oracle directly. Oracle and Mythics worked together to develop terms for the contracts between Mythics and the State. Oracle and Mythics employees jointly negotiated the contracts between Mythics and the State.

### Mythics License Service Agreement, June 30, 2011

81.

The Oregon legislature created OHA in 2009 as a division within DHS. DHS consolidated health-related programs under OHA. The legislature provided that OHA should transition to become an independent state agency effective July 1, 2011. Throughout 2010 and early 2011, State employees from what would become OHA attended Oracle's presentations and demonstrations. On July 1, 2011, OHA became a separate and independent State agency.

Page    25 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105    **PAGE 29 of 140**

82.

On June 30, 2011, the State executed the Mythics License and Services Agreement ("MLSA") with Mythics. Oracle did not sign the MLSA, but it was named as a third-party beneficiary of the contract. The MLSA does not itself provide for the purchase of Oracle products and services. Instead, it provides a contractual framework governing the purchase of Oracle products and services. Actual purchases were made through a series of purchase orders submitted pursuant to the MLSA. (The MLSA and the purchase orders and ordering documents submitted pursuant to it shall be collectively referred to as the "Mythics-OHA Contracts.")

83.

The State entered the Mythics-OHA Contracts pursuant to an amendment to an existing Oregon Department of Administrative Services State Procurement Office Price Agreement with Dell Marketing LLP ("Dell"). DHS and OHA issued purchase orders for Oracle and Mythics products and services to Dell, and then Dell invoiced DHS and OHA for these services.

84.

The MLSA expressly warrants that Mythics and Oracle will perform work "in a professional manner consistent with industry standards." It also warrants that programs "will operate in all material respects as described in the applicable program documentation for one year after delivery."

85.

On the same day that DHS and OHA executed the MLSA, they also executed a Statement of Work providing that Mythics and Oracle would "assist" DHS and OHA "with the installation, implementation, configuration, and customization of the Oracle Policy Automation 10.2 components * * * to support benefit eligibility processing and full determination for" SNAP, TANF, Medicaid, and the HIX. The Statement of Work also

Page    26 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 30 of 140

1   included a proposed schedule where Mythics estimated that based "on current knowledge of

2   the DHS/OHA requirements" the work would take 28 weeks to complete.  Mythics proposed

3   that OPA would be configured for full determination of eligibility for SNAP, TANF,

4   Medicaid, and the HIX in January 2012.

5                                          86.

6         In August 2011, DHS and OHA executed a purchase order with Oracle for

7   approximately $8,700,000.  This purchase order provided for the purchase of licenses for the

8   Oracle software comprising the "Oracle Solution," hardware on which to run the software,

9   and consulting services to begin planning and implementing the "Oracle Solution."

10                                         87.

11        Between June 30, 2011 and July 11, 2013, the State and Mythics executed 20

12  purchase orders under the MLSA for the purchase of Oracle hardware, software, and

13  services, for a total of more than $30,000,000.  The first two purchase orders issued by DHS

14  and OHA included services from Oracle's internal consulting unit, Oracle Consulting

15  Services.  The remaining purchase orders were for the purchase of access to data storage,

16  software licenses, hardware, and server maintenance, support, and setup.

17              **Decision Not to Use a Systems Integrator, Summer 2011**

18                                         88.

19        DHS and OHA initially planned to use a Systems Integrator to implement the "Oracle

20  Solution."  A Systems Integrator is a company that is responsible for bringing together all of

21  the components in a project and ensuring that the components function together.

22                                         89.

23        In May 2011, DHS and OHA began preparation of a Request for Proposals to solicit

24  potential Systems Integrators.  Although never completed, the draft envisioned that a

25  potential Systems Integrator would be responsible for managing the Modernization and HIX-

26  IT Projects, including developing and maintaining the work plan and schedule.

**Page    27 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 31 of 140

1                                              90.

2              Unbeknownst to the State, Oracle was dead set against the State hiring an

3    independent Systems Integrator.  According to a former Oracle employee, Oracle advanced a

4    "planned * * * behind-the-scenes effort" to convince the State "that a Systems Integrator

5    would just cause * * * delay."  The former employee explained that "the message was we've

6    got to make sure that [the State] doesn't bring [a Systems Integrator] in because it's * * * just

7    going to cause us trouble."  Oracle recommended to the State that it hire Oracle's own

8    internal consulting unit, Oracle Consulting Services, to fill that role.  Oracle also offered to

9    provide training services to State employees, enabling the State to believe it, along with

10   Oracle, could co-manage the Projects without hiring an independent Systems Integrator.

11   Oracle continued to support the State's decision to not hire a Systems Integrator through the

12   life of the project.

13                                             91.

14             Oracle's behind-the-scene scheme paid off.  Oracle convinced the State to spend

15   millions of dollars more to use Oracle Consulting Services to design, plan, and manage the

16   Projects, rather than hire an independent Systems Integrator.

17                    **Oracle License Service Agreement, November 2011**

18                                             92.

19             In November 2011, DHS and OHA entered the Oracle License Service Agreement

20   ("OHA OLSA") with Oracle.  Like the MLSA, the OHA OLSA does not itself provide for

21   the purchase of Oracle products and services.  Instead, it provides a contractual framework

22   governing the purchase of Oracle products and services.  Actual purchases were made

23   through a series of purchase orders submitted pursuant to the OHA OLSA (collectively, the

24   OHA OLSA and related purchase orders and ordering documents shall be referred to as the

25   "Oracle-OHA Contracts").

26   /// ///

**Page    28 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

93.

1             

    The State entered the Oracle-OHA Contracts pursuant to an amendment to an existing

Oregon Department of Administrative Services State Procurement Office Price Agreement

with Dell.  DHS and OHA issued purchase orders for Oracle products and services to Dell,

and then Dell invoiced DHS and OHA for these products and services.

94.

    The OHA OLSA expressly warrants that Oracle will perform work "in a professional

manner consistent with industry standards."  It also warrants that programs "will operate in

all material respects as described in the applicable program documentation for one year after

delivery."

95.

    Between November 30, 2011 and May 29, 2014, DHS and OHA executed 23

purchase orders under the OHA OLSA.  The majority of the State's purchases under the

Oracle-OHA Contracts were for Oracle Consulting Services.

96.

    Oracle caused 238 invoices to be sent to the State for payment under both the

Mythics-Oracle Contracts and Oracle-OHA Contracts.  The State paid $133,607,504 for

Oracle products and services under these contracts.  A complete list of these invoices under

the Mythics-Oracle and Oracle-OHA Contracts is attached to this complaint as Exhibits 1

and 2, and incorporated herein by reference.

97.

    The Oracle-OHA Contracts provided for Oracle to supply all of the products and

services necessary for the State to implement the technological components of the

Modernization and HIX-IT Projects.  The first purchase order submitted pursuant to the OHA

OLSA provided that "Oracle will assist the State of Oregon Health Authority and the Oregon

Department of Human Services' [sic] implementation of the Health Insurance Exchange

**Page  29 -  COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax:  (503) 323-9105

EXHIBIT A
PAGE 33 of 140

1    system." It goes on to provide that Oracle will assist DHS and OHA with developing the

2    technology architecture for the HIX, including for the creation of an online portal permitting

3    individual Oregonians and Oregon small businesses to create accounts, undergo eligibility

4    screening, and shop for health plans.

5                              **Creation of Cover Oregon**

6                                        98.

7         In June 2011, the Oregon legislature passed and the Governor signed Senate Bill 99,

8    creating the Oregon Health Insurance Exchange Corporation. On October 1, 2012, the

9    corporation adopted the name "Cover Oregon."

10                                       99.

11        Cover Oregon is a public corporation and an independent unit of State government.

12   State law provides that Cover Oregon shall "[a]dminister a health insurance exchange in

13   accordance with federal law to make qualified health plans available to individuals and

14   groups throughout this state."

15                                      100.

16        From 2011 through the end of 2012, Cover Oregon focused on building staff and

17   developing plans for implementation of the ACA in Oregon. During this time, OHA

18   remained responsible for working with Oracle on the HIX-IT Project.

19                                      101.

20        Cover Oregon's business plan provided that it would be funded by federal grants

21   through 2014. To pay for operations beyond 2014, Senate Bill 99 established an assessment

22   to be paid by carriers based on the number of individuals enrolled in health plans offered by

23   the carriers through the exchange. Cover Oregon's plan was to begin to charge the carrier

24   assessment in 2014 and achieve self-sufficiency in 2015.

25   /// ///

26   /// ///

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 34 of 140

1          **Oracle Takes Control, 2012**

2                              102.

3          Oracle did more than provide software, hardware, and implementation services.  It

4    managed both Projects.  In summer of 2012, OHA asked for Oracle's assistance with project

5    management and Oracle set up a project management office.  Oracle provided a project

6    manager and a chief technology officer to direct the Projects.

7                              103.

8          OCS became, in effect, the Systems Integrator throughout the life of the

9    Modernization and HIX-IT Projects.  Oracle brought on project managers to run the Projects

10   and tightly controlled access to Oracle's development and integration work.  Oracle took the

11   lead in proposing system architecture, the selection of software and hardware, and project

12   management.  At all times, Oracle was the technical lead on both Projects.  Under this

13   arrangement, Oracle was 100% responsible for the development of the HIX technology, and

14   State employees did not have access to the technical development environment.

15                             104.

16         Oracle described itself as Oregon's Systems Integrator in its own internal email.

17                             105.

18         Until the HIX failed to launch in October 2013, Oracle managed its own staff

19   throughout the Projects.  Before that time, Oracle did not seek State approval for most

20   staffing decisions unless it was for approval to add additional staff.

21                             106.

22         Oracle, and Oracle alone, was responsible for the technical development and

23   implementation of the Modernization and HIX-IT Projects systems.  Oracle did not provide

24   the State, Cover Oregon, or the State and Cover Oregon's independent quality assurance

25   provider, Maximus, with access to its technical development work.  State employees did not

26   set up hardware, configure software, integrate components, or write code.  In fact, Oracle

Page     31 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

1    managers forbade their staff from discussing the progress of Oracle's development with State

2    employees.  A former Oracle employee was chastised by an Oracle manager after he revealed

3    to Cover Oregon staff that Oracle developers were having trouble implementing an Oracle

4    product.  The State, Cover Oregon, and Maximus did not gain access to test the system until

5    July 16, 2013, less than three months before the HIX-IT Project was planned for launch.

6    **Transition to Cover Oregon, 2012-2013**

7    107.

8        From the execution of the MLSA in June 2011 through December 2012, the

9    Modernization and HIX-IT Projects proceeded in parallel and were jointly managed under an

10   executive steering committee consisting of the heads of DHS, OHA, and Cover Oregon.  The

11   State originally planned to merge both Projects into a single code base.

12   108.

13       In December 2012, however, due to concerns about meeting ACA deadlines, the State

14   decided not to merge the HIX-IT Project code base with the Modernization code base.  In

15   December 2012, OHA began to transition the HIX-IT Project to Cover Oregon.

16   109.

17       In January 2013, the HHS awarded Cover Oregon a Level-2 Establishment grant to be

18   used in part to complete the HIX-IT Project.

19   110.

20       Because Cover Oregon was not a party to the MLSA or the Oracle-OHA Contracts,

21   on March 14, 2013, Cover Oregon executed an Oracle License and Services Agreement with

22   Oracle.

23   111.

24       Like the MLSA and the OHA OLSA, the Cover Oregon OLSA does not itself provide

25   for the purchase of Oracle products and services.  Instead, it provides a contractual

26   framework governing the purchase of Oracle products and services.  Actual purchases were

Page    32 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    made through a series of Oracle ordering documents and Cover Oregon purchase orders

2    submitted pursuant to the Cover Oregon OLSA (collectively, the Cover Oregon OLSA and

3    the ordering documents and purchase orders submitted pursuant to it shall be referred to as

4    the "Oracle-Cover Oregon Contracts").

5                  112.

6        The Cover Oregon OLSA expressly warrants that Oracle will perform work "in a

7    professional manner consistent with industry standards." It also warrants that programs "will

8    operate in all material respects as described in the applicable program documentation for one

9    year after delivery."

10                 113.

11        The Cover Oregon OLSA also provides that if Oracle breaches its warranty to

12    provide service in a professional manner consistent with industry standards, then Oracle will

13    provide additional services at no charge to correct that breach of warranty. Specifically, the

14    Contract provides that when Oracle breaches the warranty, Oracle shall provide "**THE**

15    **REPERFORMANCE OF THE DEFICIENT SERVICES**" (capitalization and emphasis in

16    original).

17                 114.

18        Oracle sent Cover Oregon invoices for payment under Cover Oregon-Oracle

19    Contracts. Between March 15, 2013 and August 6, 2014, Oracle sent Cover Oregon 105

20    invoices under these contracts. Cover Oregon paid a total of $106,672,503 for Oracle

21    products and services. A complete list of Oracle's invoices under the Oracle-Cover Oregon

22    Contracts is attached to this complaint as Exhibit 1, and incorporated herein by reference.

23                 115.

24        In early 2013, before Cover Oregon and Oracle had executed the Cover Oregon

25    OLSA, Cover Oregon officials, including Cover Oregon Chief Information Officer Aaron

26    Karjala, met twice with Oracle executives, including Vice-President of Government Sales

**Page**    **33 -**    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1   Greg Loos and Regional Vice-President for Public Sector State and Local Government Colin

2   Wardlaw.  During these meetings, Cover Oregon and Oracle discussed Cover Oregon

3   purchasing Oracle hardware, including servers and environments.  The Oracle executives

4   told Karjala that key Oracle environments could be set up and ready for use in approximately

5   12 weeks.

6                                            116.

7        Karjala relied on the Oracle executives' representations to recommend that Cover

8   Oregon execute two purchase orders totaling $12.4 million for the purchase of Oracle servers

9   and related licenses, equipment, and support.  Both purchase orders were executed on March

10   14, 2013, contemporaneously with the Cover Oregon OLSA.

11                                           117.

12        In early 2013, Oracle provided Cover Oregon with estimates of the "Level of Effort"

13   required to complete the HIX-IT Project by October 1, 2013.  Oracle's Level of Effort

14   estimates indicated to Cover Oregon that the HIX-IT Project was approximately 80%

15   complete.

16                                           118.

17        Cover Oregon relied on Oracle's Level of Effort estimates to enter into an ordering

18   document for Oracle consulting services on May 1, 2013.  This ordering document provided

19   for Cover Oregon to purchase $45 million in consulting services.  Oracle used the Level of

20   Effort estimated to determine the size and scope of the May 1, 2013 ordering document and

21   Cover Oregon relied on Oracle's Level of Effort estimates to approve and sign the May 1,

22   2013 ordering document.

23                                           119.

24        In the May 1, 2013 ordering document, Oracle agreed to provide Cover Oregon with

25   consulting services "to assist with the completion of the Cover Oregon * * * implementation

26   of the Health Insurance Exchange system[.]"

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

1              120.

2         The May 1, 2013 ordering document provided that Oracle would, among other tasks,

3    assist with program management, milestone planning, and project scheduling.  It also

4    provided that Oracle would assist Cover Oregon with the implementation of the "Oracle

5    Solution," including configuring, integrating, and implementing Siebel, OPA, and

6    WebCenter.  The ordering document also provided that Oracle would provide "post

7    production support from 10/1/13 [Cover Oregon's launch date for the HIX] through

8    12/31/13" and additional post-production support in 2014.

9                   **The HIX-IT Project, Spring – Fall, 2013**

10             121.

11        Consistent with the requirements set forth in the ACA, Cover Oregon sought to

12   implement a HIX that offered both Individual Enrollment and SHOP.  As described above,

13   Individual Enrollment allows individuals to compare, purchase, and enroll in health

14   insurance on a HIX website.  SHOP is the Small Business Health Options Program.  SHOP

15   offers small employers an option to provide health insurance to their employees through a

16   HIX website.  In order for Oregonians to obtain insurance for 2014, as required by the ACA,

17   Cover Oregon established a goal of implementing Individual Enrollment and SHOP by

18   October 2013.  Consistent with the goal, Cover Oregon set October 1, 2013 as the launch

19   date for the HIX.

20             122.

21        Both orally and in writing Oracle assured OHA and Cover Oregon that it would

22   deliver a fully functioning HIX system on or before the launch date of October 1, 2013.  On

23   May 20, 2013, Oracle Senior Vice President for North America Technology and Government

24   Consulting Kate Johnson wrote in an email to Cover Oregon Executive Director Howard

25   "Rocky" King: "I have copied my manager, Matt Mills, to ensure that you know we are

26   committed to the successful implementation of Oregon's Health Insurance Exchange at the

**Page    35 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085  **EXHIBIT A**
Fax  (503) 323-9105 **PAGE 39 of 140**

1    highest levels in Oracle. I will continue to personally work with you and the team to achieve

2    this critical GoLive on Oct 1." In addition, as noted above, the May 1, 2013 ordering

3    document expressly provided that post-production work would begin on October 1, 2013.

4    Furthermore, Oracle prepared estimates of the Level of Effort required to complete the

5    project and used those estimates to create the ordering documents under the Oracle-Cover

6    Oregon Contracts. Those estimates projected that the website would be delivered before

7    October 1, 2013. OHA and Cover Oregon relied on Oracle's representations throughout the

8    HIX-IT Project and, based on those representations, reasonably expected that Oracle would

9    deliver a functioning HIX system on or before October 1, 2013.

10                                              123.

11          In early 2013, Cover Oregon staff provided Oracle with a set of requirements setting

12    out the scope of the final version of the HIX-IT Project. A requirement is a stand-alone

13    statement describing a required functionality. Most requirements were based on federal and

14    State laws and regulations governing the implementation of the HIX. Cover Oregon's key

15    requirements were for Individual Enrollment and SHOP, but also included several others.

16                                              124.

17          In April 2013, Oracle provided feedback to Cover Oregon that they were concerned

18    that they could not complete the HIX-IT Project in time to launch on October 1, 2013 unless

19    Cover Oregon reduced the scope. In response, Cover Oregon reduced the number of

20    requirements, but retained both Individual Enrollment and SHOP. After Cover Oregon

21    agreed to reduce the scope, Oracle assured Cover Oregon that it would meet the October 1,

22    2013 launch date, including completing both Individual Enrollment and SHOP.

23                                              125.

24          Throughout 2013, Oracle deceived the State about the development status of the HIX.

25    During the June 13, 2013 Cover Oregon Board of Directors meeting, Oracle Technical

26    Manager Brian Kim provided a demonstration to the Cover Oregon Board that purportedly

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 40 of 140

1    showed that core elements of the HIX were functional, including portions of both Individual

2    Enrollment and SHOP.  Kim's demonstration was designed to create and did create the

3    impression that core elements of the HIX were functional and nearly complete.  But the core

4    elements of the HIX, as Oracle knew, were not functional and were not nearly complete.

5                                                          126.

6           During the June 13, 2013 demonstration, Kim purported to demonstrate the

7    functionality of the HIX at that time.  Kim explained that "we wanted to demonstrate the

8    functionality."  Kim represented that the HIX had functionality to (1) allow different types of

9    users (including individuals, employees, employers) to create and manage accounts, (2) allow

10   individuals to submit an application to enroll for financial assistance under the ACA for

11   healthcare coverage, (3) determine if an individual who submits an online application is

12   eligible for financial assistance for coverage, (4) allow individuals to shop for medical

13   coverage and dental coverage, and enroll in the coverage of her or his choosing, and (5)

14   allow employers to shop for and select a healthcare plan for their employees.  Kim's

15   demonstration was false.  At the time of the demonstration, the core functionalities Kim

16   demonstrated were not complete and were not in a state of completion that would allow them

17   to launch in October.  Kim knew or recklessly disregarded that the core functionalities he

18   was demonstrating were not complete and were not in a state of completion that would allow

19   them to launch in October.

20                                                          127.

21          As the summer of 2013 progressed, Cover Oregon had growing concerns about

22   Oracle's performance.  Although Oracle executives Loos and Wardlaw had promised Cover

23   Oregon that environments would be set up in approximately 12 weeks, Oracle delivered the

24   environments late.  A Cover Oregon contractor wrote to Oracle: "[W]hen [Oracle] delivers

25   an environment nothing is setup to work together.  You are Oracle People, working on an

26   Oracle Platform, with Oracle technology products, on an Oracle solution. * * *  Oracle

Page        37 -       COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 41 of 140

1    should be delivering these environments and products as a solution, like they actually

2    understood the products and owned the solution which has not been the case by a long shot."

3                                    128.

4           In addition, from spring until August, Oracle regularly provided Cover Oregon with

5    "development dashboards," which showed the percentage of the development of the Project

6    that Oracle estimated was complete.  The first development dashboard, provided in April

7    2013, showed the HIX-IT Project at just under 80% complete.  Development dashboards

8    provided in the following months remained at approximately 80% complete, even as Oracle

9    purportedly increased resources dedicated to the Project and Cover Oregon continued to

10   reduce its scope.

11                                   129.

12          Given these concerns, in August 2013 Cover Oregon decided to focus development

13   efforts on Individual Enrollment and not launch SHOP on October 1, 2013.  Cover Oregon

14   also revised its October launch plan.  It decided to implement a "soft launch" on October 1,

15   2013.  Under the soft launch, Cover Oregon did not plan to launch Individual Enrollment to

16   the public immediately on October 1, 2013.  Instead, Cover Oregon set up a portal accessible

17   only by community partners and agents.  Oregonians contacted a community partner or agent

18   to request that the community partner or agent use the portal to enroll them in an appropriate

19   health insurance plan.  Cover Oregon planned to launch Individual Enrollment to the public

20   later in October 2013.

21                                   130.

22          Oracle executives assured Cover Oregon that the system would meet this revised

23   launch plan.  At the August 8, 2013 Cover Oregon Board of Directors meeting, Oracle Vice

24   President for North America Government Consulting Thomas Budnar stated that Oracle has

25   "been working closely with the Oregon management team on all aspects of the project,

26   including the launch plan.  We worked together to develop that – it's in line with our best

Page    38 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    practices for what we would recommend for large projects, so we feel very comfortable with

2    that and support the approach 100%." At the same time, Budnar failed to disclose that there

3    were serious deficiencies with the system that would prevent Oracle from meeting Cover

4    Oregon's revised launch plan. At the time he made these statements and failed to disclose

5    the HIX systems' serious deficiencies, Budnar knew or recklessly disregarded that the state

6    of development on the HIX-IT Project would make it impossible to launch the system

7    according to Cover Oregon's plan.

8                                          131.

9           Oracle staff regularly told the State that the system was almost ready.

10                          **Oracle's Failures to Launch**

11                                          132.

12          On September 11 and 12, 2013, the Center for Medicare and Medicaid Services

13   ("CMS"), the federal agency overseeing state projects to build exchanges, conducted an

14   Operational Readiness Review to assess the status of Oregon's HIX. Oracle employee Brian

15   Kim led CMS through a demonstration of the system.

16                                          133.

17          Kim's demonstration exposed serious problems with the HIX. Both Individual

18   Enrollment and SHOP (which Oracle demonstrated even though it was not planned for the

19   October launch) failed to function correctly. Kim could not successfully demonstrate that the

20   system was capable of processing user requests as simple as an address change. Serious

21   errors occurred throughout the demonstration. Kim demonstrated portions of the system that

22.  had not been completed and still resided on a development environment.

23                                          134.

24          On September 18, 2013, Oracle demonstrated the system to Cover Oregon staff at

25   Cover Oregon's headquarters in Durham, Oregon. Oracle executives flew into Oregon from

26   out-of-state to attend the demonstration. The demonstration was a disaster. Critical errors

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    interrupted the demonstration.  Essential functionality needed to enroll Oregonians in health

2    insurance programs was incomplete and failed to operate.

3                                         135.

4         Even with a sharply reduced scope, the system was not ready to launch on October 1,

5    2013.  The soft launch to community partners and agents failed to function correctly and

6    Cover Oregon was forced to scale it back.

7                                         136.

8         Despite Oracle's failure to deliver a functional system on October 1, Oracle

9    executives continued to assure Cover Oregon that the system, including Individual

10   Enrollment, would be ready to launch before the end of October.  On October 10, 2013, Vice

11   President, Engineered Systems and Hardware Stephen Bartolo sent an email to Rocky King

12   stating "[a]t this point in time we are confident that we will reach the 10/15 date[.]"  Bartolo

13   also repeatedly told King and Karjala in person that the system would be ready to launch

14   with Individual Enrollment before the end of October.  During the October 17, 2013 Cover

15   Oregon Board of Directors meeting, Bartolo stated that "we're working together to meet the

16   date of October 30."  At the time he made each of these statements, Bartolo knew or

17   recklessly disregarded that given the current state of development of the HIX-IT Project it

18   would be impossible for the system to launch on the dates he told King and Karjala.

19                                         137.

20        In October 2013, Oracle assigned its "A-Team" to Cover Oregon to fix the errors

21   caused by Oracle's inferior development team over the preceding years.

22                                         138.

23        Even with the "A-Team" on site, the HIX was not ready to launch by the end of

24   October 2013.

25   /// ///

26   /// ///

Page    40 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

1          139.

2          By mid- to late-October 2013, Cover Oregon had lost hope that the system would be

3    capable of allowing citizens to enroll online.  To ensure that Oregonians would be able to

4    enroll in insurance, Cover Oregon had no choice but to hire hundreds of temporary workers

5    to manually process paper applications.

6          140.

7          In November, Oracle executives continued to represent to Cover Oregon that the

8    system was nearly ready to launch.  On November 14, 2013, Budnar told the Cover Oregon

9    Board of Directors that the system would be ready for individual enrollments by the end of

10   December 2013.  Budnar stated: "The timeframe that we're looking at for the plan selection

11   and enrollment is early- to mid-December.  For the full end-to-end eligibility is the middle to

12   end of December."  He went on to add that "those are dates that we feel are outliers and

13   we're going to try to bring it in before those dates."  At the time he made these statements,

14   Budnar was aware that the state of development of the system made it impossible to launch

15   the system by the end of December 2013.

16         141.

17         Like Bartolo's assurances, Budnar's assurances were false.  The system did not

18   launch by the end of December 2013.

19         142.

20         From October 1, 2013 onward, Oracle worked on repairing its earlier deficient

21   services.  Oracle's level of effort estimates, express oral and written statements, and May 1,

22   2013 ordering document all indicated that Oracle would deliver a fully functioning HIX on

23   October 1, 2013.  When Oracle broke its promises to meet that deadline, it was unable to

24   engage in the "post-production" work agreed to in the May 1, 2013 ordering document.

25   Instead, Oracle continued to work on the deficient system.  Consistent with the Cover Oregon

26   OLSA, which requires Oracle to re-perform deficient services free of charge, Cover Oregon

Page     41 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A

1   began withholding payments to Oracle in September 2013.  Nonetheless, Oracle has and

2   continues to insist that Cover Oregon owes it millions for work performed after October

3   2013, even though that work was for repairing Oracle's earlier deficient services.

4                                      143.

5        On January 7, 2014, Oracle sent yet another executive to Oregon to again assure the

6   State that Oracle would meet a deadline.  Senior Vice President for North America

7   Technology and Government Consulting Ravi Puri, along with Budnar, met with Acting

8   Executive Director of Cover Oregon Dr. Bruce Goldberg and told him that Oracle would

9   have the functionality necessary to launch the HIX completed on February 3, 2014.  Puri also

10  claimed that all serious errors—known as "blockers"—preventing the HIX system from

11  launching had been resolved.  In an email following up on their meeting, Puri wrote to

12  Goldberg that Oracle is "committed to a successful go-live."  At the time Puri made these

13  statements, he knew or recklessly disregarded that Oracle had not resolved all "blockers" and

14  the state of development of the system made it impossible to launch the HIX on February 3,

15  2014.

16                                      144.

17       Even though Oracle had failed to meet the October 2013 launch dates, during the

18  January 7, 2014 meeting, Puri demanded that Cover Oregon pay Oracle more than $24

19  million for development work allegedly performed after October 1, 2013.  This included

20  more than $11 million for allegedly new development, as opposed to repair work which

21  would have been covered by warranty, performed in November and December 2013 (and that

22  failed to make the site ready for launch in December 2013, as Budnar had promised),  $11

23  million for allegedly new development work, as opposed to repair work which would have

24  been covered by warranty, planned for January 2014, and $2 million for testing through

25  February 3, 2014.  Puri's demand for more than $24 million constituted a representation that

26  Oracle had performed new development work, as opposed to repairs to the system, because

**Page     42 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085   **EXHIBIT A**
Fax: (503) 323-9105
**PAGE 46 of 140**

1    repair work was covered by warranty and should have been performed without charge.  At

2    the time Puri demanded payment, he knew or recklessly disregarded that the work Oracle

3    was claiming payment for was not new development work, but was repair work that was

4    covered by warranty.  Because the system was not ready to launch, Dr. Goldberg refused to

5    pay Oracle.

6                                              145.

7         Budnar failed to correct Puri's false statements and failed to disclose that the system

8    would be unable to launch on February 3, 2014.  Budnar also knew or recklessly disregarded

9    that Oracle had not resolved all "blockers" and the state of development of the system made

10   it impossible to launch the HIX on February 3, 2014.  Budnar also failed to disclose that the

11   work Oracle had performed since October 1, 2013, and was proposing to perform, was repair

12   work covered by warranty, even though he knew or recklessly disregarded that this was the

13   case.

14                                             146.

15        Dr. Goldberg met with Puri and Budnar again on February 11, 2014.  Dr. Goldberg

16   told Puri and Budnar that Cover Oregon would not pay Oracle until the HIX worked

17   correctly.  Puri "guaranteed" that the HIX would be working for community partners and

18   agents by February 14, 2014 and ready for launch to the public the following week on

19   February 24, 2014.  When he made this representation, Puri knew or recklessly disregarded

20   that the system would not have sufficient functionality for Cover Oregon to successfully

21   launch the HIX on February 24, 2014.  Puri coupled his representation that the HIX website

22   was nearly ready to launch with a demand that Cover Oregon pay Oracle nearly $70,000,000.

23   Puri threatened to pull the entire Oracle workforce off the HIX-IT Project on March 1, 2014

24   if Cover Oregon did not make the demanded payment.  Later that day, Puri emailed Goldberg

25   a PowerPoint slide purporting to show that Cover Oregon should pay Oracle nearly

26   $70,000,000 for HIX development and testing.  Puri's demand for nearly $70,000,000

**Page     43 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
**PAGE 47 of 140**

1  constituted a representation that Oracle had performed and was going to perform new

2  development work, as opposed to repairs to the system, because repair work was covered by

3  warranty and should have been performed without charge.  At the time Puri demanded

4  payment, he knew or recklessly disregarded that the work Oracle was claiming payment for

5  was not new development work, but was repair work that was covered by warranty.

6                                                    147.

7          Budnar failed to correct Puri's false statements and failed to disclose that the system

8  would be unable to launch on February 14 and 24, 2014.  Budnar knew or recklessly

9  disregarded that it would be impossible for Cover Oregon to successfully launch the HIX on

10  February 24, 2014.  Budnar also failed to disclose that the work Oracle had performed since

11  October 1, 2013, and was proposing to perform, was repair work covered by warranty, even

12  though he knew or recklessly disregarded that this was the case.

13                                                    148.

14          Throughout this time, Oracle continued to exert tight control over the development

15  process.  A February 2014 report by the Centers for Medicare and Medicaid Services

16  ("CMS") noted that there "is no visibility by [Cover Oregon] into OCS' activities.

17  Therefore, there is a substantial dependency on OCS for almost everything that is time

18  sensitive (e.g., schedules, fixes, releases, etc.)."  The report went on to note that Oracle was

19  failing to provide Cover Oregon with variance reports necessary to allow Cover Oregon to

20  properly test the system.

21                                                    149.

22          Despite Oracle's assurances that the system could launch in February 2014, Cover

23  Oregon concluded that it was unstable and not suitable for the public.  The February 2014

24  CMS report found that the "system environments are not stable and are affecting testing,

25  development and activities."  Cover Oregon conducted consumer testing throughout

26

Page      44 -      COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    February.  Significant numbers of testers were unable to enroll in insurance through the

2    system.

3                                    150.

4         On February 26, 2014, during a meeting with Dr. Goldberg and State officials, Oracle

5    President Safra Catz threatened to pull Oracle personnel off the HIX-IT Project in less than a

6    week if Cover Oregon did not immediately pay Oracle millions of dollars for work

7    performed since October.  Catz's threat risked severely compromising the limited back-end

8    functionality Cover Oregon was using to make Medicaid eligibility determinations and enroll

9    Oregonians in health insurance through community partners and agents with paper

10   applications.  Catz also claimed that the HIX system was nearly ready to launch and that the

11   State and Oracle were on the verge of declaring victory.  At the time she made these claims,

12   Catz knew or recklessly disregarded that the system was not almost ready to launch.  On

13   February 28, 2014, Cover Oregon and Oracle reached an agreement by which Oracle would

14   continue work and Cover Oregon would pay $43,934,567, a portion of the amount Oracle

15   claimed it was owed.  Pursuant to this agreement, Cover Oregon did not waive any claims

16   and expressly retained its right to seek a refund of its payment to Oracle.

17                                   151.

18        In April 2014, Catz wrote a letter to Cover Oregon in which she claimed that the HIX

19   website "that Oracle coded has successfully registered a very substantial number of citizens."

20   Catz also claimed that the "functionality required to enroll the vast majority of Oregon

21   residents is operational* * * ."  In May 2014, Catz followed up in an email to Cover Oregon

22   stating Oracle and Cover Oregon must resolve "payment issues."

23                                   152.

24        Puri's representation that the HIX website would be ready to launch in February 2014

25   and Catz's subsequent representation that month that it was ready to launch were false.  In

26   January 2014, a review conducted on behalf of the federal government found that "there are

**Page    45 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER·
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax:  (503) 323-9105

**EXHIBIT A**

1    still significant performance issues with the system such that, while the core functionality

2    exists, the end user experience would be significantly diminished." A report by Deloitte in

3    April 2014 concluded that it would take nearly two years and cost more than $50,000,000 in

4    2014 alone for Oracle and the State to repair the "Oracle Solution" in order to make it usable

5    for Oregonians.

6                                          153.

7            As of April 24, 2014, Cover Oregon staff identified 1,198 errors that required repair

8    before the system could be considered for a public launch. On April 25, 2014, the Cover

9    Oregon Board voted unanimously to transition from the HIX-IT Project to the federal health

10   insurance exchange.

11                                         154.

12           Cover Oregon is unable to use the vast majority of Oracle's shoddy and incomplete

13   work. Cover Oregon uses a limited portion of the backend system, which includes

14   functionality to determine Medicaid eligibility, but that system is fragile. Cover Oregon's use

15   is frequently interrupted by extended outages when employees are sometimes locked out for

16   days.

17                                         155.

18           As a result of Oracle's failure to deliver a fully automated "Oracle Solution" to Cover

19   Oregon, the Oregon Health Authority, in coordination with Cover Oregon, is working to

20   transition to the federal website. As part of the transition plan, Cover Oregon will transfer

21   back to the Oregon Health Authority responsibility for MAGI-Medicaid eligibility

22   determinations under the Oregon Health Plan. To accomplish this in time for open

23   enrollment in November 2014, Cover Oregon has already transferred this functionality into

24   an OHA development environment. Both Cover Oregon and the State paid Oracle for

25   developing the limited functionality in use.

26   /// ///

Page      46 -      COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1

**Oracle's Work Was "Atrocious"**

2

156.

3      Throughout the Modernization and HIX-IT Projects, Oracle failed to meet industry

4 standards for architecture, planning, development, implementation, integration,

5 customization, configuration, project management and productivity.

6

157.

7      Oracle's development failed to meet basic industry standards.  A former Oracle

8 employee described Oracle's work designing the architecture for the HIX-IT Project as

9 "literally garbage."  In May 2013, a Cover Oregon consultant who had a long history in

10 Siebel development obtained access to Oracle's work on the Siebel application, the key

11 Oracle product in the "Oracle Solution."  After reviewing Oracle's work, he concluded that

12 "the Oracle development team's quality of * * * work was atrocious."  He added that "they

13 broke every single best practice that Oracle themselves have defined.  It is one of the worst

14 assessments I have performed in my 18 years of Siebel work."  The Centers for Medicare and

15 Medicaid Services observed that Oracle Consulting Services had an "overall lack of

16 timeliness and quality with regards to solution delivery."

17

158.

18      Oracle assigned employees to work on the Projects who lacked minimum levels of

19 training, skill, and experience.  According to a former Oracle employee, Oracle assigned

20 employees to the HIX-IT Project who "had no technical skills in the area they were

21 assigned."  Oracle also assigned employees to teams who lacked relevant experience on the

22 components they were developing.

23

159.

24      Maximus, Cover Oregon's outside quality assurance consultant, also found that

25 Oracle's work was below industry standards.  In its October 2013 report, Maximus stated that

26 Oracle's "processes do not meet industry standards.  Impact analysis, code review, coding

**Page      47 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085      **EXHIBIT A**
Fax:  (503) 323-9105      **PAGE 51 of 140**

1    standards and proper parallel development techniques are ad hoc and inconsistently applied

2    or understood." In its January 2014 report, Maximus observed that "Oracle's performance is

3    clearly lacking. Their inability to adhere to industry standards and professional software and

4    project management tenants warrants further review."

5                                      160.

6           Another outside consultant reviewed Oracle's software development in October and

7    November 2013. He concluded that Oracle's code and development processes were below

8    industry standards. He also found that Oracle had failed to assign a skilled software

9    development manager to the Project. As a result, Oracle was "working under group

10   consensus as opposed to industry standard best practices."

11                                      161.

12          Oracle failed to manage the Projects in a professional manner consistent with industry

13   standards. Oracle was consistently unable to correctly estimate the level of effort required to

14   complete the project. Maximus found that "Oracle's ability to properly estimate the work for

15   any release is significantly lacking." Oracle also failed to properly manage the configuration

16   of its own products. The February 2014 CMS report noted that "there is no formal tool in

17   place for system build configuration management." Furthermore, while Oracle used a

18   software tool to analyze changes to the system, Oracle refused to provide Cover Oregon with

19   access to reports generated by the tool.

20                                      162.

21          Oracle also failed to manage its own staff. Oracle staff were divided into different

22   units according to the product they worked on and there was poor communication between

23   units.

24                                      163.

25          Oracle failed to configure and implement its own programs correctly. WebCenter

26   was incorrectly configured so that if any single connection failed, the whole system would

Page    48 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105    **EXHIBIT A
PAGE 52 of 140**

1  fail.  The Identity Management ("IDM") component, an essential suite of security products,

2  was configured separately for every environment instead if a single instance across all

3  environments, slowing down the setup of all the environments.  Additionally, Oracle had to

4  use an outdated version of IDM because the current version was not compatible with

5  Oracle's other products.  This decision and lack of integration placed the entire project in

6  jeopardy because support was scheduled to end for the older version of IDM in 2015,

7  meaning more costs in trying to upgrade and maintain IDM.

8                          **Oracle's False Statements**

9                                      164.

10       Before DHS and OHA signed the first contract with Oracle, the MLSA on June 30,

11  2011, Oracle made material misrepresentations about the "Oracle Solution" to DHS and

12  OHA.  These included:

13       (a)     The "Oracle Solution" functioned "out-of-the-box":

14           i.     "Oracle's COTS software meets the current and future needs [of]

15                  DHS's case management requirements with out-of-the-box

16                  functionality."  (Letter from Oracle Customer Relations Management

17                  Application Sales Manager Jim Verster to DHS, February, 18, 2009,

18                  Oracle Response to DHS RFI);

19          ii.     "Oracle's COTS software meets the current and future needs of Health

20                  and Human Services sector case management requirements with out-

21                  of-the-box functionality."  (Oracle Response to DHS RFI, February

22                  18, 2009, p. 4);

23         iii.     Oracle's Siebel Public Sector Case Management Solution "contains

24                  intuitive visual tools that allow users to configure the Siebel User

25                  Interface without modifying HTML or writing 'code.'"  (Oracle

26                  Response to DHS RFI, February 18, 2009, p.4);

**Page   49 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105  **PAGE 53 of 140**

1          iv.     "The Siebel Public Sector Case Management Solution is a true

2                    enterprise COTS application that leverages 'out-of-the-box'

3                    functionality and allows DHS to accommodate various application

4                    requirements by configuring the Siebel Public Sector application (and

5                    using our comprehensive development tools) while minimizing the

6                    need for custom coding.  This configuration-based approach will drive

7                    down the cost, time to market and substantially reduce risk for the

8                    Self-Sufficiency Modernization Program." (Oracle Response to DHS

9                    RFI, February 18, 2009, p. 6);

10         v.     "Oracle's componentized solution can be incorporated into the current

11                  technology environment without customization of core features and

12                  functionality on a phased basis." (Oracle Solution for Oregon

13                  Eligibility Automation & Health Insurance Exchange, p. 2 [undated]);

14        vi.    On March 14, 2011 and May 12, 2011, Oracle Vice President Curry

15                  told DHS and OHA that the "Oracle Solution" was 95% out-of-the-

16                  box and would only require 5% customization.

17    (b)    The "Oracle Solution" could be implemented quickly:

18         i.     "Infrastructure and Environment can be stood up in less than **3 weeks**

19                  from contract ratification." (Oracle Solution Overview, p. 37

20                  (emphasis in original));

21        ii.    During a breakfast meeting held on May 12, 2011, an Oracle employee

22                  told DHS Information Technology Director Kathryn Naugle that rules

23                  for determining Oregonians' eligibility for social service programs

24                  could be configured in OPA in six to eight weeks.

25    (c)    The "Oracle Solution" was built on integrated technologies:

26    /// ///

**Page    50 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax:  (503) 323-9105

1          i.          OPA allows purchaser to "achieve consistency across delivery
2                      channels using standard web services architecture and pre-packaged
3                      integrations." (Oracle Solution Overview, p. 41);
4          ii.         "Comprehensive **integrated technology**." (Oracle Solution Overview,
5                      p. 40 (emphasis in original));
6      (d)    The "Oracle Solution" was flexible and easy to integrate with both existing
7              and external systems:
8          i.          "Oracle's integrated solution is a highly flexible, scalable, secure,
9                      commercial-off-the-shelf (COTS) package that is easily integrated
10                     with internal and external systems." (Oracle Solution for Oregon
11                     Eligibility Automation & Health Insurance Exchange, p. 4 [undated,
12                     2011]).
13         ii.         "Oracle will also enable Oregon to achieve the following goals and
14                     objectives * * * [e]ase operability/integration to legacy and 3rd party
15                     systems." (Oracle Solution for Oregon Eligibility Automation &
16                     Health Insurance Exchange, p. 6 [undated, 2011]);
17         iii.        "Oracle will also enable Oregon to achieve the following goals and
18                     objectives * * * [f]lexible and maintainable applications to enable self-
19                     sufficiency for Oregon staff." (Oracle Solution for Oregon Eligibility
20                     Automation & Health Insurance Exchange, p. 6 [undated, 2011]);
21         iv.         "Key capabilities include * * * [c]onfigurable applications and flexible
22                     business rules architecture." (Oracle Solution for Oregon Eligibility
23                     Automation & Health Insurance Exchange, p. 4 [undated, 2011]);
24         v.          "The Seibel Data Model is designed to be very flexible, and able to
25                     optimize performance for both online users and server processes."
26

Page    51 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A
PAGE 55 of 140**

1          (Oracle Response to request for additional information, April 29, 2011,

2          p. 3.)

3    (e)    The "Oracle Solution" included implementation of a health insurance

4          exchange:

5      i.    The "Oracle Solution" "provid[es] a Health Insurance Exchange and

6            an Eligibility Automation solution for [Oregon] citizens." (Oracle

7            Solution for Oregon Eligibility Automation & Health Insurance

8            Exchange, p. 6 [undated]);

9      ii.    "Comprehensive functionality across multi-program social services

10           case management, eligibility automation & health insurance exchange"

11           (Oracle Solution Overview, p. 40);

12     iii.   "Proven enterprise architecture & OnDemand hosting speeds the

13           deployment time necessary to meet HIX deadlines." (Oracle Solution

14           Overview, p. 47);

15     iv.   "Comprehensive Solution for Eligibility Automation and Health

16           Insurance Exchange." (Oracle Solution Overview, p. 53);

17     v.    "Our solution is the most comprehensive and secure solution with

18           regards to the total functionality necessary for Oregon, including

19           Eligibility Automation and Health Insurance Exchange." (Oracle

20           Solution Overview, p. 54);

21     vi.   The "Oracle Solution's" "Comprehensive functionality addresses a

22           broad range of requirements across Eligibility Automation and Health

23           Insurance Exchange." (Oracle Solution for Oregon Eligibility

24           Automation & Health Insurance Exchange, p. 2 [undated]);

25     vii.  "Oracle will also enable Oregon to achieve the following goals and

26           objectives * * * [t]o accomplish an effective single point of entry fo[r]

Page    52 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A

1                 all clients – Eligibility Automation and Healthcare Insurance

2                 Exchange." (Oracle Solution for Oregon Eligibility Automation &

3                 Health Insurance Exchange, p. 6 [undated, 2011]).

4                           165.

5       These representations by Oracle were false. In fact, the Oracle products making up

6 the "Oracle Solution" were not a "Comprehensive Solution" and were unable to function

7 together to modernize DHS's social services delivery systems or create an operational HIX.

8 An internal assessment estimated that the "Oracle Solution" was 40% custom code. The

9 "Oracle Solution" failed to easily integrate with Oregon's legacy systems and external

10 systems. The "Oracle Solution" and its components could not be implemented quickly.

11                         166.

12       Oracle also made numerous false statements on the Vendor Questionnaire. As noted

13 above, Oracle answered 95% of the Vendor Questionnaire requirements with a "4,"

14 indicating "out-of-the-box" functionality. The following responses to the Vendor

15 Questionnaire requirements were false. For each requirement, the "Oracle Solution" did not

16 function "out-of-the-box." It required customization and integration to meet the requirement:

17       (a)      State requirement T-250: "The system shall utilize automated deployment

18                 tools and techniques to build different environments (for development, testing,

19                 training and production) and support interfaces with external systems."

20                 Oracle response: 4.

21       (b)      State requirement T-340: "The system shall support Master Data Management

22                 functions, including data standardization and deduplication." Oracle

23                 response: 4. Oracle comments: "Our Master Data Management platform

24                 performs high-quality search, match, duplicate identification, and relationship

25                 linking on all types of name, address and other identification data."

26     /// ///

**Page**     **53 -**    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1      (c)    State requirement T-780: "The system shall be the Agency system of record

2                for all information used to determine client eligibility and the eligibility result.

3                This information shall include client identity, personal information, legal

4                status, household information, income and assets."  Oracle response: 4.

5                Oracle comments: "Oracle's technology components are ideal for building

6                master data management systems, and Oracle's MDM solutions for client data

7                can bring real business value in a fraction of the time it takes to build from

8                scratch."

9      (d)    State requirement R-0152: "System shall support client-initiated electronic

10             application for benefits."  Oracle's response: 4.  Oracle comments: "Clients

11             will use the proposed Eligibility Automation Portal - powered by Oracle

12             WebCenter, Oracle's Siebel Public Sector and Oracle Policy Automation

13             (OPA) - to initiate and complete online applications for benefits."

14     (e)    State requirement R-0153: "System shall support client self-screening for

15             program benefits and services."  Oracle's response: 4.  Oracle comments:

16             "Clients will use the proposed Eligibility Automation Portal - powered by

17             Oracle WebCenter, Oracle's Siebel Public Sector and Oracle Policy

18             Automation (OPA) - to initiate self screening."

19     (f)    State requirement R-0156: "The system shall provide a method for clients and

20             client advocates to update case information."  Oracle response: 4.

21     (g)    State requirement R-0473: "The system shall support configurable workflow

22             management."  Oracle response: 4.

23     (h)    State requirement T-360: "The system shall be scalable, meaning that

24             additional performance load can be met without changes to the technical

25             architecture."  Oracle response: 4.

26    /// ///

Page    54 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 58 of 140

1       (i)     State requirement T-380: "The system shall provide failover capability for
2               servers."  Oracle response: 4.

3       (j)     State requirement T-390: "The system shall average 2 seconds or less end-
4               user response time 98% of the time each day, testable from the server subnet."
5               Oracle response: 4.

6       (k)     State requirement T-400: "The system shall scale to at least 50,000 end-users
7               while meeting response time requirements (this number is inclusive of the
8               number of users for con-current usage). Other information pertinent to sizing
9               of the system include: (1) Number of Oregon medicaid - eligible clients: over
10              500,000; (2) Number of case managers & other administrative users: 6,000 ;
11              (3) Number of Providers: 50,000."  Oracle response: 4.

12      (l)     State requirement T-410: "The system shall support 10,000 concurrent users."
13              Oracle response: 4.

14      (m)     State requirement T-420: "The system shall be recoverable from a system
15              failure in 30 minutes or less."  Oracle response: 4.

16      (n)     State requirement T-840: "The system shall support real-time & batch
17              interfaces with the legacy Client Index system."  Oracle response: 4.

18      (o)     State requirement T-850: "The system shall facilitate a person search in its
19              database and the legacy Client Index system for resolving the identity of
20              known and possibly known persons before initiating the eligibility
21              determination process."  Oracle response: 4.  Oracle comment: "Oracle's
22              MDM technology components include Data Quality capabilities that search
23              for possible duplicates and provide data cleansing functions that can be
24              utilized before eligibility determination processes are started."

25      (p)     State requirement T-860: "The system shall support real-time & batch
26              interfaces with the Agency SSA Data Exchange system to facilitate data

**Page    55 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

1                exchange with Social Security Administration systems to support eligibility

2                verification functions." Oracle response: 4.

3       (q)     State requirement R-0002: "The system shall support updating client data

4                (e.g., client demographics and detail information)." Oracle response: 4.

5       (r)     State requirement R-0019: "The system shall support setting an eligibility

6                status." Oracle response: 4.

7       (s)     State requirement R-0034: "The system shall support the issuance of benefits

8                (e.g., medical cards, EBT cards, provider vouchers, cash equivalents, checks,

9                EFT, Foster Home Licenses, etc.)." Oracle response: 4.

10      (t)     State requirement R-0039: "The system shall support tracking of payment

11               transactions (e.g., client payments to branch, deposits, overdue payments,

12               provider vouchers, EBT Cards, 437's, Contractor Invoices [599A's])." Oracle

13               response: 4.

14      (u)     State requirement R-0148: "System shall support insurance plan enrollment."

15               Oracle response: 4.

16      (v)     State requirement R-0149: "System shall support identifying regional

17               insurance plan choices." Oracle response: 4.

18      (w)   State requirement R-0238: "The system shall support data extraction for

19               analysis and reporting." Oracle response: 4.

20      (x)     State requirement R-0450: "The system shall identify duplicate data in client

21               records." Oracle response: 4.

22      (y)     State requirement R-0471: "The system shall determine client benefits."

23               Oracle response: 4. Oracle comments: "Oracle Policy Automation, Oracle's

24               natural language rules engine, will be used to determine all client benefits

25               based on underlying State business policies and legislation."

26   /// ///

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    (z)    State requirement (not numbered): "The system shall support maintenance of

2    rules." Oracle response: 4. Oracle comments: "The Oracle Policy

3    Automation (OPA) component of the proposed solution supports rule

4    maintenance. OPA is used to create, model, test, and deploy business rules in

5    natural language."

6    (aa)    State requirement R-0272: "The system shall support receiving new Oregon

7    Administrative Rule(s) (OAR)." Oracle response: 4. Oracle comments: "Rule

8    adminis[t]rators, using Oracle Policy Automation, can receive and incorporate

9    new OAR rules easily as they are released."

10    (bb)    State requirement R-0273: "The system shall provide historical access to prior

11    Oregon Administrative Rule(s) (OAR)." Oracle response: 4. Oracle

12    comments: "Oracle Policy Modeling has the ability to store historical versions

13    of source policy documents and legislation in its rule repository."

14    (cc)    State requirement R-0274: "The system shall support rule testing/impact

15    analysis." Oracle response: 4. Oracle comments: "Oracle's Policy

16    Automation solution determines eligibility in complex legislative

17    environments."

18    (dd)    State requirement R-0275: "The system shall support importing, exporting and

19    sharable rules." Oracle response: 4. Oracle comments: "Oracle's Policy

20    Automation solution supports the ability to import, export and [s]hare

21    business rules in easy-understood formats by using familiar desktop

22    applications such as Microsoft Word and Excel."

23    (ee)    State requirement R-0278: "The system shall support applying rules." Oracle

24    response: 4. Oracle comments: "The Oracle Policy Automation (OPA)

25    component of the proposed solution supports applying rules to business

26    processes."

**Page    57 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105    **EXHIBIT A**

**PAGE 61 of 140**

1   (ff) State requirement X-0001: "The system shall support a web portal for an

2      individual to view/identify affordable health insurance options." Oracle

3      response: 4.

4   (gg) State requirement X-0002: "The system shall support a web portal for a

5      employer to view/identify affordable health insurance options." Oracle

6      response: 4.

7   (hh) State requirement X-0008: "The system shall support multiple open

8      enrollment periods (e.g., initial, change·of circumstance, Indian tribal, etc.)."

9      Oracle response: 4.

10   (ii) State requirement X-0032: "The system shall support individual enrollment

11      for health plans." Oracle response: 4.

12   (jj) State requirement X-0033: "The system shall support employer enrollment

13      for health plans." Oracle response: 4.

14           167.

15  Oracle's representations were false. With respect to each of the representations

16 described in paragraphs164 and 166, the system did not function out-of-the-box. Oracle did

17 not use automated development deployment and billed the State to configure and standup

18 code-ready environments. Oracle's discrete products failed to integrate without extensive

19 customization. The disaster recovery environment was never delivered. On the October 1,

20 2013 launch date, the systems scaled to only 80 users. Oracle failed to configure its data

21 management component to load client addresses from the State's legacy servers and Oracle

22 billed the State to de-duplicate data. An Oracle employee noted that OPA, which was the

23 key Oracle product responsible for eligibility automation, was "[n]ot ready for prime time

24 when sold as an integral part of the initial contract." Oracle extensively customized Siebel

25 and OPA.

26 /// ///

**Page**  **58 -**  **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1              168.

2          Oracle also presented false bills to the State.  According to a former Oracle employee,

3   Oracle billed the State for employees working 40-hour weeks when those same employees

4   were not working on the Projects but were instead performing work for other states.

5                          **The Damage Oracle Caused to the State**

6              169.

7          From June 2011 until June 2014, the State and Cover Oregon paid $240,280,008 for

8   Oracle products and services to build a HIX and modernize its delivery of social services.

9   The State's and Cover Oregon's investment in Oracle products and services has amounted to

10  a nearly complete loss.  The HIX failed to launch on schedule and has never functioned as

11  planned.  The Modernization Project ground to a halt in 2013 and remains incomplete.

12             170.

13         Since 2011, DHS and OHA have paid $133,607,504 for Oracle products and services

14  for the Modernization and HIX-IT Projects.  Of that total, DHS and OHA paid $94,504,170

15  for Oracle's consulting services.  Cover Oregon paid $106,672,503 between March 2013 and

16  present for Oracle products and services related to the HIX-IT Project.  Of that total, Cover

17  Oregon paid $77,197,987 for Oracle's consulting services.  In total, the State and Cover

18  Oregon paid $240,280,008 for Oracle products and services for the Modernization and HIX-

19  IT Projects.

20             171.

21         Oracle's failures have caused the State to incur additional costs beyond Oracle's

22  sizeable fees.

23             172.

24         Oracle's failures required Cover Oregon and the OHA to create a manual process to

25  determine Oregonian's eligibility for benefits under the ACA and enroll them in coverage.

26  To that end, Cover Oregon hired hundreds of temporary workers to manually process paper

**Page    59 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105   **EXHIBIT A**

1    insurance enrollment applications, at a reasonably probable cost through the end of 2014 of

2    $11,235,543. To support this manual process, OHA's activities included creating a call

3    center, renting office space, hiring hundreds of temporary employees, purchasing hardware,

4    and sending out thousands of mailings. It is reasonably probable that the total cost to OHA

5    of this manual process through the end of 2014 will be $51,735,864.

6                                                    173.

7              Aside from a limited portion the back-end system used to determine Medicaid

8    eligibility and transition to the federal exchange, the majority of Oracle's shoddy and

9    incomplete work on the HIX-IT Project is useless. Cover Oregon estimates that it will cost

10    $661,600 to transition to federal exchange. Cover Oregon may incur additional costs that

11    have yet to be determined to complete this transition.

12                                                    174.

13              Oracle's failures required the State and Cover Oregon to build a new eligibility

14    determination process for Medicaid applicants. The first portion of this work is estimated to

15    cost $24,400,000. Additional work will be required at a cost that has not yet been

16    determined.

17                                                    175.

18              Oracle's failures required Cover Oregon to build a temporary website to provide the

19    public with information about health insurance choices at a cost of $5,750,000.

20                                                    176.

21              Oracle's failures cost Cover Oregon millions of dollars in anticipated revenue. Had

22    the exchange launched as planned on October 1, 2013, Cover Oregon expected to earn carrier

23    assessments and public program fees totaling $32,004,018 in revenue in 2014 and

24    $64,361,775 in 2015. Because Oregonians seeking health insurance contacted insurance

25    carriers directly instead of enrolling through Cover Oregon  or did not enroll at all due to

26    inaccessibility of the website, Cover Oregon lost most of the carrier assessment revenue it

Page    60 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105      **EXHIBIT A
PAGE 64 of 140**

1   expected to receive.  As a result of Oracle's failures, it is reasonably probable that Cover

2   Oregon will lose approximately $26,214,018 in anticipated net revenue in 2014, and

3   approximately $54,361,775 in anticipated net revenue in 2015, for a total projected net loss

4   of $80,575,793.

5                                            177.

6           The State and Cover Oregon expected to derive other benefits from the HIX-IT

7   Project, including the benefit of being a nationwide leader in running a state health insurance

8   exchange.  The full amount that the State and Cover Oregon have lost as a result of the

9   failure of Oracle to deliver these benefits has yet to be determined.

10                                           178.

11          Oracle's failures required the State to hire third-party vendors to assess Oracle's

12  work.  In January 2014, the State hired First Data to provide a review of the HIX-IT Project,

13  at a total cost of $228,000.  Also in 2014, the State and Cover Oregon each hired Deloitte to

14  assess Oracle's work and provide them with options for enabling Oregonians to enroll in

15  health insurance.  Cover Oregon paid Deloitte $2,900,000 and the State paid Deloitte

16  $2,980,000.

17                                           179.

18          Oracle's failures caused the Modernization Project to fail.  The State will be forced to

19  spend an amount that has yet to be determined to complete the Modernization Project.

20                                           180.

21          In addition, the State expected the Modernization Project to streamline the

22  application, eligibility determination, and enrollment process for State social service

23  programs, improving efficiency and reducing costs.  The State also expected the

24  Modernization Project to improve caseworker efficiency for State social service programs,

25  also reducing costs.  Finally, the State and Cover Oregon expected to have a unified, single

26  system for the health insurance exchange and the State's social service programs, improving

**Page    61 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105    **PAGE 65 of 140**

1    efficiency and reducing costs.  The full amount that the State and Cover Oregon have lost as

2    a result of the failure of Oracle to deliver these benefits has yet to be determined.

3                                        181.

4          Oracle's failures led to several ongoing federal investigations.  On March 25, 2014,

5    the United States House Committee on Oversight and Government Reform launched an

6    investigation into the failures of Oregon's HIX.  Two months later, the United States Senate

7    Committee on Finance launched its own investigation into the failures.  In May 2014, the

8    United States Attorney for Oregon launched a grand jury investigation.  To date, the State

9    has spent approximately $85,000 responding to these investigations, and will continue to

10   incur costs.

11                                       182.

12         Oracle's failures have also exposed the State to litigation.  In March 2014, the estate

13   of an Oregon citizen provided to the State notice of its intention to sue to recover medical

14   expenses incurred because the citizen was allegedly unable to successfully obtain health

15   insurance through the HIX.  The citizen's alleged inability to obtain health insurance through

16   the HIX is, if true, directly caused by Oracle's failures.  The State has incurred and will incur

17   costs investigating and preparing a defense to this potential lawsuit.

18                                       183.

19         In addition, on July 8, 2014, counsel for a health insurance agent provided notice of

20   intent to file a class action lawsuit against Cover Oregon on behalf of more than 1,000 health

21   insurance agents alleging that Cover Oregon had failed to pass through commission

22   payments to agents and provide adequate reporting.  Any delay or inadequacy in commission

23   payments or reporting by Cover Oregon was caused by Oracle's failure to properly design

24   and construct the functionality necessary to process the commissions and accurately report.

25   To date, Cover Oregon has incurred costs to address these issues and will incur costs to

26   defend any future lawsuit.

Page    62 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 66 of 140

1    **FIRST CLAIM FOR RELIEF**

2    **Fraud**

3    **(DHS and OHA against Defendant Oracle)**

4    184.

5    Plaintiffs re-allege paragraphs 1 through 183, and incorporate the allegations herein,

6    as if fully set forth.

7    185.

8    Oracle made material representations to DHS and OHA that were false, including:

9    (a)    The "Oracle Solution" was an out-of-the-box solution, as described in

10            paragraphs 3, 35, 57, 59, 60, 61, 69, 72, 74, 75, 164 and 166;

11    (b)    The "Oracle Solution" required only 5% customization, as described in

12            paragraphs 59, 63, 72, 74, 75, 164 and 166;

13    (c)    The "Oracle Solution" could be implemented quickly, as described in

14            paragraphs 53, 70, 66 and 164;

15    (d)    The "Oracle Solution" was built on integrated technologies, as described in

16            paragraphs 3, 51, 64, 66, 70, 75, 76 and 164;

17    (e)    The "Oracle Solution" was flexible and easy to integrate with both existing

18            and external systems, as described in paragraphs 3, 35, 66, 75, 76 and 77;

19    (f)    The "Oracle Solution" included implementation of a health insurance

20            exchange, as described in paragraph 164.

21    186.

22    Oracle disguised the true state of development of the Modernization and HIX-IT

23    Projects, including by its control of access to development environments, as described in

24    paragraphs 6, 103, 106 and 148, so that DHS and OHA were unable to discover that Oracle

25    was failing to meet the representations listed in paragraph 185.

26    /// ///

**Page    63 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105
**PAGE 67 of 140**

1             187.

2        DHS and OHA were ignorant of the falsity of Oracle's representations, which were

3   material to DHS and OHA's decision to purchase the "Oracle Solution."

4             188.

5        Oracle either knew that its representations were false or recklessly disregarded the

6   truth or falsity of its representations.

7             189.

8        Oracle made these representations with the intent that DHS and OHA would rely on

9   them to decide to purchase and use the "Oracle Solution" and to pay Oracle millions of

10  dollars.

11            190.

12       Oracle's representations caused DHS and OHA to purchase the "Oracle Solution" and

13  pay Oracle, as described in paragraphs 9, 14, 96, 169 and 170.

14            191.

15       DHS and OHA's reliance on Oracle's representations was justified.  Oracle had

16  superior knowledge and understanding of the products in the "Oracle Solution" and the

17  capacity of Oracle to integrate, program, and implement the products.  Furthermore, DHS

18  and OHA exercised reasonable diligence in determining the truth of Oracle's representations,

19  including by submitting numerous requests for information, holding several Table Talk

20  presentations, hosting a demonstration of the "Oracle Solution," and hiring Wakely and

21  KPMG to make an independent evaluation and recommendation, as described in paragraphs

22  50, 67, 69 and 78.

23            192.

24       As the direct and foreseeable result of Oracle's fraud, DHS and OHA suffered

25  damages of $212,837,368, as described in paragraphs 169-183.

26  /// ///

**Page     64 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 68 of 140

1        193.

2        The dates on which DHS and OHA became responsible for the amounts described in

3    paragraph 192 are easily ascertainable.  As such, DHS and OHA are entitled to prejudgment

4    interest on those amounts at the statutory rate of 9% per annum.

5        194.

6        Because aggravating factors exist with regard to Oracle's fraud, DHS and OHA

7    reserve the right to seek leave to amend this claim to allege punitive damages consistent with

8    ORS 31.725.

9                         **SECOND CLAIM FOR RELIEF**

10                                **Fraud**

11                   **(Cover Oregon against Defendant Oracle)**

12       195.

13       Plaintiffs re-allege paragraphs 1 through 194, and incorporate the allegations herein,

14   as if fully set forth.

15       196.

16       Oracle made material representations to Cover Oregon that were false, including:

17       (a)     Oracle executives Loos and Wardlaw told Cover Oregon officer Karjala that

18               servers and environments could be set up in less than 12 weeks, as described

19               in paragraph 115;

20       (b)     Oracle Level of Effort estimates provided to Cover Oregon showed that the

21               HIX-IT Project was nearly 80% complete, as described in paragraphs 7, 117

22               and 128;

23       (c)     Oracle would deliver complete production of the HIX-IT Project before

24               October 1, 2013.

25   /// ///

26   /// ///

**Page    65 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax:  (503) 323-9105    **EXHIBIT A**

197.

In addition, Oracle intended that the representations it made to DHS and OHA, described above in paragraph 196, would be passed on to and relied on by Cover Oregon.

198.

Cover Oregon was ignorant of the falsity of Oracle's representations, which were material to Cover Oregon's decision to enter the Oracle-Cover Oregon Contracts.

199.

Oracle either knew that its representations was false or recklessly disregarded the truth or falsity of its representations.

200.

Oracle made these representations with the intent that Cover Oregon would enter the Oracle-Cover Oregon Contracts and pay Oracle millions of dollars.

201.

Oracle's representations caused Cover Oregon to enter the Oracle-Cover Oregon Contracts and pay the amounts Oracle billed for and demanded, as described in paragraphs 114, 150, 169 and 170.

202.

Cover Oregon's reliance on Oracle's representations was justified. Oracle had superior knowledge and understanding of the products in the "Oracle Solution," including the servers and environments, and the capacity of Oracle to integrate, program, and implement the products. Furthermore, Oracle controlled the HIX-IT Project, as described in paragraphs 6, 103, 106 and 148. As such, Oracle did not provide Cover Oregon with access to development environments and Cover Oregon was unable to assess the degree to which Oracle had completed the HIX-IT Project.

/// ///

/// ///

Page    66 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

203.

As the direct and foreseeable result of Oracle's fraud, Cover Oregon suffered damages of $207,915,439 as described in paragraphs 169-183.

204.

The dates on which Cover Oregon became responsible for the amounts described in paragraph 203 are easily ascertainable. As such, Cover Oregon is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

205.

Because aggravating factors exist with regard to Oracle's fraud, Cover Oregon reserves the right to seek leave to amend this claim to allege punitive damages consistent with ORS 31.725.

## THIRD CLAIM FOR RELIEF

### Oregon False Claims Act

### (Attorney General of Oregon against Defendant Oracle)

206. .

Plaintiffs re-allege paragraphs 1 through 205, and incorporate the allegations herein, as if fully set forth.

### Count 1 – Violation of ORS 180.755(1)(a)

207.

Oracle presented invoices for payment to DHS, OHA, and Cover Oregon, as described in paragraphs 9, 14, 96, 114, 143-147, 150, 169 and 170.

208.

Oracle fraudulently induced DHS, OHA, and Cover Oregon to enter the Mythics-OHA Contracts, the Oracle-OHA Contracts, and the Oracle-Cover Oregon Contracts, as described in First and Second Claims for Relief. Each and every one of the invoices presented to DHS, OHA, and Cover Oregon pursuant to the Mythics-OHA Contracts, the

**Page    67 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    EXHIBIT A
Fax: (503) 323-9105
PAGE 71 of 140

1   Oracle-OHA Contracts, and the Oracle-Cover Oregon Contracts was a false claim because

2   they derived from the original fraudulent misrepresentations inducing DHS, OHA, and Cover

3   Oregon to the enter Mythics-OHA Contracts, the Oracle-OHA Contracts, and the Oracle-

4   Cover Oregon Contracts.

                                        209.

6        Oracle disguised the true state of development on the Modernization and HIX-IT

7   Projects, including by controlling access to development environments, as described in

8   paragraphs 6,l 103, 106 and 148, so that DHS, OHA and Cover Oregon were unable to

9   discover that Oracle was failing to meet the representations listed in paragraphs 185 and 196.

10                                       210.

11       As a direct and foreseeable result of Oracle's false claims, DHS, OHA, and Cover

12   Oregon were damaged in the full amount of every claim paid, amounting to $133,607,504

13   paid by DHS and OHA and $106,672,503 paid by Cover Oregon, as described in paragraph

14   9, 14, 96, 114, 150, 169 and 170.

15                                       211.

16       Pursuant to ORS 180.760(4), the Attorney General seeks an award of damages for the

17   amounts described in paragraph 210.

18                                       212.

19       The dates on which DHS, OHA, and Cover Oregon became responsible for the

20   amounts described in paragraph 210 are easily ascertainable.  As such, the Attorney General

21   is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

22                                       213.

23       In addition, pursuant to ORS 180.760(4), the Attorney General seeks civil penalties

24   amounting to twice the amount of damages described in paragraph 210.  The Attorney

25   General seeks an award of reasonable attorney fees and costs of investigation, preparation,

26   and litigation incurred in connection this count pursuant to ORS 180.760(8).

Page     68 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 72 of 140

1              **Count 2 – Violation of ORS 180.755(1)(b)**

2                                    214.

3        Oracle falsely stated that:

4        (a)      The "Oracle Solution" was an out-of-the-box solution, as described in

5                 paragraphs 3, 35, 57, 59, 60, 61, 69, 72, 74, 75, 164 and 166;

6        (b)      The "Oracle Solution" required only 5% customization, as described in

7                 paragraphs 59, 63, 72, 74, 75, 164 and 166;

8        (c)      The "Oracle Solution" could be implemented quickly, as described in

9                 paragraphs 55, 66, 70, 164;

10       (d)      The "Oracle Solution" was built on integrated technologies, as described in

11                paragraphs 3, 51, 64, 66, 70, 75, 76 and 164;

12       (e)      The "Oracle Solution" was flexible and easy to integrate with both existing

13                and external systems, as described in paragraphs 3, 35, 66, 75, 76 and 77;

14       (f)      The "Oracle Solution" included implementation of a health insurance

15                exchange, as described in paragraph 164;

16       (g)      The HIX-IT Project was nearly complete, as stated in the development

17                dashboards and described in paragraphs 7 and 128;

18       (h)      Core elements of the exchange were functional as shown in Kim's

19                demonstration at the June 13, 2013 Cover Oregon Board of Directors' meeting

20                described in paragraphs 125-127;

21       (i)      The HIX would be ready to launch on October 1, 2013, as described in

22                paragraphs 7, 8, 117, 120, 122, 124, 126, 128, 130 and 142;

23       (j)      The HIX would be ready to launch on October 15, 2013, as stated in the email

24                from Bartolo to King described in paragraphs 9 and 136;

25       (k)      The HIX would be ready to launch on October 31, 2013, as told by Bartolo to

26                King and Karjala and described in paragraph 9 and 136;

**Page    69 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    (l)    The HIX would be ready to launch at the end of December 2013, as told by

2             Budnar to the Cover Oregon Board of Directors on November 14, 2013 and

3             described in paragraphs 9 and 140;

4    (m)    The HIX would be ready to launch on February 3, 2014, as told by Puri to

5             Goldberg on January 7, 2014 and described in paragraphs 9, 10, 143-145;

6    (n)    The HIX would be ready to launch on February 24, 2014, as told by Puri to

7             Goldberg on February 11, 2014 and described in paragraphs 9, 10, 146-147;

8    (o)    The HIX was nearly ready to launch as told by Catz to Goldberg and other

9             State officials on February 26, 2014 and described in paragraph 150;

10    (p)    The "functionality required to enroll the vast majority of Oregon residents is

11            operational," as written in a letter from Catz to Cover Oregon in April 2014

12            and described in paragraph 151.

13                   215.

14    Oracle made these statements with actual knowledge that they were false, with

15  deliberate ignorance of their falsity, or with reckless disregard of their falsity.

16                   216.

17    Oracle made these statements in the course of presenting invoices and other claims

18  for payment to DHS, OHA, and Cover Oregon.  Oracle made these statements in the course

19  of presenting for payment each of the invoices and claims described in paragraphs 9, 14, 96,

20  114, 143-147, 150, 169, 170 and 210.

21                   217.

22    Oracle disguised the true state of development on the Modernization and HIX-IT

23  Projects, including by controlling access to development environments, as described in

24  paragraphs 6, 103, 106 and 148, so that DHS and OHA were unable to discover that Oracle

25  was failing to meet the representations listed in paragraph 214.

26  /// ///

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

218.

As a direct and foreseeable result of Oracle's false claims, DHS, OHA, and Cover Oregon were damaged in the full amount of every claim paid, amounting to $133,607,504 paid by DHS and OHA and $106,672,503 paid by Cover Oregon, as described in paragraphs 9, 14, 96, 114, 150, 169, 170 and 210.

219.

Pursuant to ORS 180.760(4), the Attorney General seeks an award of damages for the amounts described in paragraph 218.

220.

The dates on which DHS, OHA, and Cover Oregon became responsible for the amounts described in paragraph 218 are easily ascertainable. As such, the Attorney General is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

221.

In addition, pursuant to ORS 180.760(4), the Attorney General seeks civil penalties amounting to twice the amount of damages described in paragraph 218. The Attorney General seeks an award of reasonable attorney fees and costs of investigation, preparation, and litigation incurred in connection this count pursuant to ORS 180.760(8).

### Count 3 – Violation of ORS 180.755(1)(a)

222.

Oracle presented invoices for payment to DHS, OHA, and Cover Oregon, for consulting services, as described in paragraphs 9, 96, 114, 143-147, 150, 169 and 170.

223.

Each and every one of these invoices was false because Oracle's consulting services were not provided in a professional manner consistent with industry standards, as required in the MLSA, OHA OLSA, and Cover Oregon OLSA. Oracle failed to adhere to industry standards, as described in paragraphs 13, 84, 94, 112, 113, 156-163.

Page    71 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105    **PAGE 75 of 140**

1          224.

2          ⋅ Oracle disguised the true state of development on the Modernization and HIX-IT

3    ⋅ Projects, including by controlling access to development environments, as described in

4    paragraphs 6, 103, 106 and 148, so that DHS and OHA were unable to discover that Oracle

5    was failing to meet industry standards.

6          225.

7          As a direct and foreseeable result of Oracle's false claims, DHS, OHA, and Cover

8    Oregon paid Oracle $174,029,405 for consulting services, as set forth in Exhibit 1.

9          226.

10         Pursuant to ORS 180.760(4), the Attorney General seeks an award of damages for the

11    amounts described in paragraph 225.

12         227.

13         The dates on which DHS, OHA, and Cover Oregon became responsible for the

14    amounts described in paragraph 225 are easily ascertainable.  As such, the Attorney General

15    is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

16         228.

17         In addition, pursuant to ORS 180.760(4), the Attorney General seeks civil penalties

18    amounting to twice the amount of damages described in paragraph 225.  The Attorney

19    General seeks an award of reasonable attorney fees and costs of investigation, preparation,

20    and litigation incurred in connection this count pursuant to ORS 180.760(8).

21    **Count 4 – Violation of ORS 180.755(1)(a)**

22         229.

23         Oracle presented invoices for payment to DHS, OHA, and Cover Oregon, for

24    consulting services, as described in paragraphs 9, 96, 114, 143-147, 150, 169 and 170.

25    /// ///

26    /// ///

Page    72 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

230.

Numerous of these invoices were false because they represented that Oracle employees were working on the Projects, when in reality those employees were performing work for other states, as described in paragraph 168.

231.

As a direct and foreseeable result of Oracle's false claims, DHS, OHA, and Cover Oregon paid Oracle an amount to be determined, but not in excess of $174,029,405, for consulting services billed that Oracle did not perform.

232.

Pursuant to ORS 180.760(4), the Attorney General seeks an award of damages for the amounts described in paragraph 231.

233.

The dates on which DHS, OHA, and Cover Oregon became responsible for the amounts described in paragraph 231 are easily ascertainable. As such, the Attorney General is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

234.

In addition, pursuant to ORS 180.760(4), the Attorney General seeks civil penalties amounting to twice the amount of damages described in paragraph 231. The Attorney General seeks an award of reasonable attorney fees and costs of investigation, preparation, and litigation incurred in connection this count pursuant to ORS 180.760(8).

**FOURTH CLAIM FOR RELIEF**

**Oregon False Claims Act – Violation of ORS 180.755(1)(b)**

**(Attorney General of Oregon against Defendant Catz)**

235.

Catz made the following false statements:

/// ///

Page    73 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105    **PAGE 77 of 140**

1     (a)    During a meeting on February 26, 2014 with Dr. Goldberg and State officials,

2            Catz falsely stated that the HIX system was nearly ready to launch, as

3            described in paragraph 150;

4     (b)    In an April 2014 letter to Cover Oregon, Catz falsely stated that the

5            "functionality required to enroll the vast majority of Oregon residents is

6            operational," as described in paragraph 151.

7                             236.

8       Catz made these statements with actual knowledge that they were false, with

9  deliberate ignorance of their falsity, or with reckless disregard of their falsity.

10                       237.

11      Catz made these statements in the course of presenting claims for payment to Cover

12  Oregon.  Catz made her February 26, 2014 statement in the course of demanding that the

13  State and Cover Oregon pay Oracle millions of dollars, as described in paragraph 150.  Catz

14  made her April 2014 statement in the course of demanding that Cover Oregon resolve

15  "payment issues" with Oracle, as described in paragraph 151.

16                       238.

17      As a direct and foreseeable result of Catz's February 26, 2014 statement, Cover

18  Oregon paid Oracle $43,934,567, as described in paragraph 150.

19                       239.

20      Pursuant to ORS 180.760(5), Catz is liable for a penalty under ORS 180.760(4).  The

21  Attorney General seeks civil penalties amounting to twice the amount of damages described

22  in paragraph 238.  Pursuant to ORS 180.760(4), the Attorney General also seeks a penalty of

23  $10,000 for each of Catz's violations of ORS 180.755(1)(b) contained in her April 2014

24  letter.

25    /// ///

26    /// ///

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

1                                    240.

2        The dates on which Cover Oregon became responsible for the amounts described in

3   paragraph 238 are easily ascertainable.  As such, the Attorney General is entitled to

4   prejudgment interest on those amounts at the statutory rate of 9% per annum.

5                                    241.

6        The Attorney General seeks an award of reasonable attorney fees and costs of

7   investigation, preparation, and litigation incurred in connection with this claim pursuant to

8   ORS 180.760(8).

9                       **FIFTH CLAIM FOR RELIEF**

10           **Oregon False Claims Act – Violation of ORS 180.755(1)(b)**

11             **(Attorney General of Oregon against Defendant Budnar)**

12                                   242.

13       Budnar made the following false statements:

14   (a)   At the August 8, 2013 Cover Oregon Board of Directors meeting, Budnar

15         confirmed that the HIX system would be ready to launch on October 1, 2013,

16         and failed to disclose that there were serious deficiencies with the system, as

17         described in paragraph 130;

18   (b)   At the November 14, 2013 Cover Oregon Board of Directors meeting, Budnar

19         stated that the HIX would be ready to launch at the end of December 2013, as

20         described in paragraph 140;

21   (c)   At the January 7, 2014 meeting with Puri and Dr. Goldberg, Budnar failed to

22         to correct Puri's false statements, as described in paragraphs 143-145;

23   (d)   At the February 11, 2014 meeting with Puri and Dr. Goldberg, Budnar failed

24         to correct Puri's false statements, as described in paragraphs 146-147.

25   /// ///

26   /// ///

**Page    75 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
**PAGE 79 of 140**

243.

Budnar made these statements with actual knowledge that they were false, with deliberate ignorance of their falsity, or with reckless disregard of their falsity.

244.

Budnar made these statements in the course of presenting claims for payment to Cover Oregon. Oracle had four invoices awaiting payment when Budnar made his first misrepresentation on August 8, 2013, as shown in Exhibit 1. Oracle sent Cover Oregon an additional 33 invoices between August 8, 2013 and December 31, 2013, the last date Budnar said the HIX-IT Project would be ready to launch, as shown in Exhibit 1. In addition failed to correct Puri's false statements during the January 7, 2014 and February 11, 2014 meetings, during which Oracle presented demands for payment.

245.

As a direct and foreseeable result of Budnar's false statement on August 8, 2013, Cover Oregon paid Oracle $12,265,026.37 for consulting services from that date until October 1, 2013, the date Budnar represented the HIX-IT Project would be ready to launch, as shown in Exhibit 1.

246.

As a direct and foreseeable result of Budnar's failure to correct Puri's false statements on January 7, 2014 and February 11, 2014, Cover Oregon paid Oracle $43,934,567 in March 2014, as described in paragraph 150.

247.

Pursuant to ORS 180.760(4) and (5), the Attorney General seeks civil penalties amounting to twice the amount of damages described in paragraphs 245 and 246.

248.

Pursuant to ORS 180.760(4), the Attorney General seeks a penalty of $10,000 for each of Budnar's violations of ORS 180.755(1)(b) on November 14, 2013.

Page   76 -   **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105
EXHIBIT A
PAGE 80 of 140

249.

The dates on which Cover Oregon became responsible for the amounts described in paragraphs 245-246 are easily ascertainable. As such, the Attorney General is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

250.

The Attorney General seeks an award of reasonable attorney fees and costs of investigation, preparation, and litigation incurred in connection with claim pursuant to ORS 180.760(8).

## SIXTH CLAIM FOR RELIEF

**Oregon False Claims Act – Violation of ORS 180.755(1)(b)**

**(Attorney General of Oregon against Defendant Bartolo)**

251.

Bartolo made the following false statements:

(a) On October 10, 2013, Bartolo sent an email to King stating that the HIX-IT Project would be ready to launch on October 15, 2013, as described in paragraphs 9 and 136;

(b) On multiple dates in October, Bartolo told King and Karjala that the HIX-IT Project would be ready to launch on October 30, 2013, as described in paragraphs 9 and 136.

252.

Bartolo made these statements with actual knowledge that they were false, with deliberate ignorance of their falsity, or with reckless disregard of their falsity.

253.

Bartolo made these statements in the course of presenting claims for payment to Cover Oregon. Oracle had five invoices outstanding in October 2013 and Oracle sent Cover Oregon an additional two invoices in October 2013, as shown in Exhibit 1.

**Page    77 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
**PAGE 81 of 140**

254.

Pursuant to ORS 180.760(4) and (5), the Attorney General seeks a penalty of $10,000 for each of Bartolo's violations of ORS 180.755(1)(b).

255.

The Attorney General seeks an award of reasonable attorney fees and costs of investigation, preparation, and litigation incurred in connection with claim pursuant to ORS 180.760(8).

**SEVENTH CLAIM FOR RELIEF**

**Oregon False Claims Act – Violation of ORS 180.755(1)(b)**

**(Attorney General of Oregon against Defendant Kim)**

256.

At the June 13, 2013 Cover Oregon Board of Directors meeting, Kim falsely represented through a demonstration to the Cover Oregon Board of Directors that core elements of the HIX system were functional, as described in paragraphs 125-127.

257.

Kim presented this demonstration with actual knowledge that it was false, with deliberate ignorance of its falsity, or with reckless disregard of its falsity.

258.

Kim presented this demonstration in the course of presenting claims for payment to Cover Oregon.  Oracle sent Cover Oregon 15 invoices between Kim's June 13, 2013 demonstration and October 1, 2013, the date the HIX-IT Project failed to launch.

259.

As a direct and foreseeable result of Kim's June 13, 2013 demonstration, Cover Oregon paid Oracle $22,551,105.19 for consulting services between that date and October 1, 2013, the date the HIX-IT Project failed to launch.

/// ///

Page    78 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 82 of 140

1                                      260.

2        Pursuant to ORS 180.760(4) and (5), the Attorney General seeks civil penalties

3  amounting to twice the amount of damages described in paragraph 259.

4                                      261.

5        The dates on which Cover Oregon became responsible for the amount described in

6  paragraph 259 is easily ascertainable.  As such, the Attorney General is entitled to

7  prejudgment interest on those amounts at the statutory rate of 9% per annum.

8                                      262.

9        The Attorney General seeks an award of reasonable attorney fees and costs of

10  investigation, preparation, and litigation incurred in connection with claim pursuant to

11  ORS 180.760(8).

12                      **EIGHTH CLAIM FOR RELIEF**

13       **Oregon False Claims Act – Violation of ORS 180.755(1)(b)**

14      **(Attorney General of Oregon against Defendant Puri)**

15                                  263.

16  Puri made the following false statements:

17      (a)     On January 7, 2014, Puri told Dr. Goldberg that all "blockers" had been

18                 resolved and the HIX would be ready to launch on February 3, 2014, as

19                 described in paragraph 183;

20      (b)     On the same day, Puri told Dr. Goldberg that Oracle had performed

21                 development work, as opposed to repair work covered by warranty, since

22                 November 17, 2013 and would be performing new development work, as

23                 opposed to repair work covered by warranty, through February 3, 2014;

24      (c)     On February 11, 2014, Puri told Dr. Goldberg that the HIX would be ready to

25                 launch with limited functionality on February 14, 2014 and be ready for a full

26                 launch on February 24, 2014, as described in paragraph 146;

---

**Page**    **79 -**    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1       (d)    On the same day, Puri told Dr. Goldberg that Oracle had performed new

2                development work since October 1, 2013, as opposed to repair work covered

3                by warranty, and would be performing new development work up until

4                February 28, 2014, as opposed to repair work covered by warranty.

5                        264.

6       Puri made these statements with actual knowledge that they were false, with

7 deliberate ignorance of their falsity, or with reckless disregard of their falsity.

8                    265.

9       Puri made these representations in the course of presenting claims for payment to

10 Cover Oregon. On January 7, 2014, Puri demanded more than $24,000,000 in payment, as

11 described in paragraph 144, and on February 11, Puri demanded nearly $70,000,000 in

12 payment, as described in paragraph 146.

13                  266.

14       Puri's false representations that the HIX-IT Project would be ready to launch on

15 February 3, 2014 and February 24, 2014, each violated ORS 180.755(1)(b). Pursuant to ORS

16 180.760(4), the Attorney General seeks a penalty of $10,000 for each of Puri's violations of

17 ORS 180.755(1)(b).

18                  267.

19       As a direct and foreseeable result of Puri's representations on January 7, 2014 and

20 February 11, 2014, that Oracle had performed and would perform development work, as

21 opposed to repair work covered by warranty, Cover Oregon paid Oracle $43,934,567 in

22 March 2014.

23                  268.

24       Pursuant to ORS 180.760(4) and (5), the Attorney General seeks civil penalties

25 amounting to twice the amount of damages described in paragraph 267.

26    /// ///

**Page    80 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 84 of 140

269.

The dates on which Cover Oregon became responsible for the amounts described in paragraph 267 are easily ascertainable.  As such, the Attorney General is entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

270.

The Attorney General seeks an award of reasonable attorney fees and costs of investigation, preparation, and litigation incurred in connection with claim pursuant to ORS 180.760(8).

## NINTH CLAIM FOR RELIEF

### Oregon False Claims Act – Violation of ORS 180.755(1)(a)

### (Attorney General of Oregon against Defendant Curry)

271.

Curry falsely told DHS that the "Oracle Solution" was 95% "out-of-the-box" at a breakfast meeting on May 12, 2011, as described in paragraph 72.  In addition, even though Curry was the highest ranking Oracle employee at the May 2011 demonstrations, Curry failed to disclose that the "Oracle Solution" was not already integrated, was not functional "out-of-the-box," and was not flexible and easy to use, as described in paragraph 71.

272.

Curry made this representation and these omissions with actual knowledge that they were false, with deliberate ignorance of their falsity, or with reckless disregard of their falsity.

273.

Curry's false representation and omissions induced DHS and OHA to enter the Mythics-OHA Contracts and the Oracle-OHA Contracts.  As a result, each and every one of the invoices presented to DHS and OHA pursuant to the Mythics-OHA Contracts and the Oracle-OHA Contracts was a false claim because they derived from Curry's false

Page    81 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    EXHIBIT A
Fax: (503) 323-9105 PAGE 85 of 140

1    representation and omissions inducing DHS and OHA to the enter the Mythics-OHA

2    Contracts and the Oracle-OHA Contracts.

3                                    274.

4        As a direct and foreseeable result of Curry's false representation and omissions, DHS

5    and OHA paid Oracle $133,607,504 under the Mythics-OHA Contracts and the Oracle-OHA

6    Contracts.

7                                    275.

8        Pursuant to ORS 180.760(5), Curry is liable for a penalty under ORS 180.760(4).

9    The Attorney General seeks civil penalties amounting to twice the amount of damages

10   described in paragraph 274.

11                                   276.

12       The dates on which Cover Oregon became responsible for the amounts described in

13   paragraph 274 are easily ascertainable.  As such, the Attorney General is entitled to

14   prejudgment interest on those amounts at the statutory rate of 9% per annum.

15                                   277.

16       The Attorney General seeks an award of reasonable attorney fees and costs of

17   investigation, preparation and litigation incurred in connection with claim pursuant to

18   ORS 180.760(8).

19                        **TENTH CLAIM FOR RELIEF**

20                          **Breach of Contract**

21          **(DHS and OHA against Defendants Oracle and Mythics)**

22                                   278.

23       Plaintiffs re-allege paragraphs 1 through 277, and incorporate the allegations herein,

24   as if fully set forth.

25   /// ///

26   ///. ///

Page    ·82 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax:  (503) 323-9105    **EXHIBIT A**

1                                279.

2          DHS and OHA have performed the duties required of them under the Mythics-OHA

3    Contracts alleged in this complaint, or their duties have been excused, and all conditions

4    precedent to the institution of this lawsuit and to the claims therein have been met.

5                                280.

6          Oracle and Mythics materially breached the Mythics-OHA Contracts by failing to

7    assist DHS and OHA to:

8          (a)    Install, implement, configure, and customize OPA to support benefit

9                 eligibility prescreening and full determination for SNAP, TANF, Medicaid,

10                and the HIX in a professional manner consistent with industry standards

11                (MLSA § E; Oracle Policy Automation Implementation, Exhibit 1, Statement

12                of Work, June 23, 2011, § 1.1)

13         (b)    Configure an online benefit eligibility pre-screening rulebase in a professional

14                manner consistent with industry standards (MLSA § E; Oracle Policy

15                Automation Implementation, Exhibit 1, Statement of Work, June 23, 2011, §

16                2.1(C)(1)(a));

17         (c)    Configure an online benefit application interview rulebase to collect and

18                validate plan data required to apply for TANF, SNAP, and Medicaid programs

19                in the State of Oregon in a professional manner consistent with industry

20                standards (MLSA § E; Oracle Policy Automation Implementation, Exhibit 1,

21                Statement of Work, June 23, 2011, § 2.1(C)(1)(b));

22         (d)    Configure a full determination rulebase for TANF, SNAP, and Medicaid to

23                determine the eligibility of a household for SNAP, TANF, and Medicaid

24                benefits according to criteria in the Oregon Self-Sufficiency Family Services

25                Manual and determine the amount of the benefit an applicant is entitled to

26                using formulas provided by DHS/OHA in a professional manner consistent

**Page    83 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 87 of 140

1    with industry standards (MLSA § E; Oracle Policy Automation

2    Implementation, Exhibit 1, Statement of Work, June 23, 2011, § 2.1(C)(1)(c));

3    (e)    Configure an online HIX eligibility and benefit calculator rulebase to

4    determine eligibility for a health insurance exchange benefit in a professional

5    manner consistent with industry standards (MLSA § E; Oracle Policy

6    Automation Implementation, Exhibit 1, Statement of Work, June 23, 2011, §

7    2.1(C)(1)(d)).

8                                    281.

9    Oracle and Mythics also breached the Mythics-OHA Contracts, including without

10    limitation all of the purchase orders and ordering documents, by failing to provide services in

11    a professional manner consistent with standards, as required in the MLSA § E, throughout

12    their work on the Modernization and HIX-IT Projects, as described in paragraphs 156-163.

13    In addition, Oracle and Mythics breached the duty of good faith and fair dealing by failing to

14    deliver a fully functional and complete HIX and Modernization Project, according to the

15    reasonable expectations of DHS and OHA.

16                                    282.

17    As the direct and foreseeable result of Oracle's and Mythics' breach of contract, DHS

18    and OHA suffered damages of $109,455,925, as described in paragraphs 169 and 183 and

19    Exhibit 2.

20                                    283.

21    All of damages sought by DHS and OHA are legally appropriate, despite limitations

22    on remedies in the Mythics-OHA Contracts, due to the conduct of Oracle, as described

23    above.

24    /// ///

25    /// ///

26    /// ///

Page    84 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A

1                   **Count 2 - Breach of Warranty of Repair**

2                       284.

3       The MLSA, Section E, provides that if Oracle breaches its warranty to provide

4 service in a professional manner consistent with industry standards, then Oracle will provide

5 additional services at no charge to correct that breach of warranty.  Specifically, the MLSA

6 provides that when Oracle and Mythics breaches the warranty, Oracle and Mythics shall

7 provide "**THE REPERFORMANCE OF THE DEFICIENT SERVICES**" (capitalization

8 and emphasis in original).

9                       285.

10      Oracle and Mythics breached their warranty by failing to provide re-performance of

11 the deficient services.

12                     286.

13      As the direct and foreseeable result of Oracle's and Mythics' breaches of warranty,

14 DHS and OHA suffered damages of in the amount of $2,203,324, as described in Exhibit 1,

15 pg. 5 and Exhibit 2.

16                     287.

17      All of damages sought by DHS and OHA are legally appropriate, despite limitations

18 on remedies in the Mythics-OHA Contracts, due to the conduct of Oracle, as described

19 above.

20             **Count 3 - Breach of Warranty to Recover Fees**

21                     288.

22      The MLSA, Section E, further provides that if Oracle and Mythics cannot correct

23 their breaches of the warranty "**IN A COMMERCIALLY REASONABLE MANNER,**

24 **[DHS and OHA] MAY END THE RELEVANT SERVICES AND RECOVER THE**

25 **FEES YOU PAID TO ORACLE FOR THE DEFICIENT SERVICES**" (capitalization

26 and emphasis in original).

**Page   85 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105
EXHIBIT A
PAGE 89 of 140

289.

Oracle and Mythics did not correct their breaches of warranty in a commercially reasonable manner. DHS and OHA have ended the relevant services. Oracle and Mythics have not returned the fees that DHS and OHA paid to Oracle and Mythics.

290.

As the direct and foreseeable result of Oracle's and Mythics' breaches of warranty, DHS and OHA suffered damages in the amount of $2,203,324, as described in Exhibit 1, pg. 5 and Exhibit 2.

291.

All of damages sought by DHS and OHA are legally appropriate, despite limitations on remedies in the Mythics-OHA Contracts, due to the conduct of Oracle, as described above.

292.

The dates on which DHS and OHA became responsible for the amounts described in paragraphs 282, 286 and 290 are easily ascertainable. As such, the DHS and OHA are entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

## ELEVENTH CLAIM FOR RELIEF

### Breach of Contract

### (DHS and OHA against Defendant Oracle)

293.

Plaintiffs re-allege paragraphs 1 through 292, and incorporate the allegations herein, as if fully set forth.

294.

DHS and OHA have performed the duties required of them under the Oracle-OHA Contracts alleged in this complaint, or their duties have been excused, and all conditions precedent to the institution of this lawsuit and to the claims therein have been met.

Page    86 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 90 of 140

1       **Count 1 - Breach of Express Contract**

2                                    295.

3       Oracle materially breached the Oracle-OHA Contracts by failing to assist DHS and

4    OHA to:

5       (a)     Implement a completed and functioning HIX (Exhibit 1-TME-300336749 to

6               ordering document 306226-04-OD-18-NOV-2011, § 1(A); Exhibit 1-TME-

7               300336724 to ordering document 306226-04-OD-18-NOV-2011, § 1(A));

8       (b)     Implement a completed and functioning Modernization Project by building

9               eligibility automation initiatives (Exhibit 2-TME-300336724 to ordering

10              document 306226-04-OD-18-NOV-2011, § (1));

11      (c)     Analyze and design HIX Siebel integrations in a professional manner

12              consistent with industry standards (OHA OLSA § E; Exhibit 1-TME-

13              300336724 to ordering document 306226-04-OD-18-NOV-2011, § 2.2(1)(a)

14              (HIX Tasks));

15      (d)     Analyze and design a WebCenter portal for HIX, Medicaid, and CHIP in a

16              professional manner consistent with industry standards (OHA OLSA § E;

17              Exhibit 1-TME-300336724 to ordering document 306226-04-OD-18-NOV-

18              2011, § 2.2(3)(a) (HIX Tasks));

19      (e)     Analyze and design Oracle SOA integrations in a professional manner

20              consistent with industry standards (OHA OLSA § E; Exhibit 1-TME-

21              300336724 to ordering document 306226-04-OD-18-NOV-2011, § 2.2(4)

22              (HIX Tasks));

23      (f)     Analyze and design MDM functionality in a professional manner consistent

24              with industry standards (OHA OLSA § E; Exhibit 1-TME-300336724 to

25              ordering document 306226-04-OD-18-NOV-2011, § 2.2(a) (Shared

26              Component tasks));

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1         (g)    Analyze and design IDM functionality in a professional manner consistent

2                 with industry standards (OHA OLSA § E; Exhibit 1-TME-300336724 to

3                 ordering document 306226-04-OD-18-NOV-2011, § 2.2(3) (Shared

4                 Component tasks));

5         (h)    Manage the Modernization and HIX-IT Projects in a professional manner

6                 consistent with industry standards (OHA OLSA § E; Exhibit 1-TME-

7                 300336741 to ordering document 306226-04-OD-18-NOV-2011, as amended

8                 September 7, 2012, § 1(A); Exhibit 2-TME-300336724 to ordering document

9                 306226-04-OD-18-NOV-2011, § (1)(D));

10       (i)    Configure and test Seibel for SNAP, Medicaid, and Long-Term Care in a

11                professional manner consistent with industry standards (OHA OLSA, § E;

12                Exhibit 1-TME-300336741 to ordering document 306226-04-OD-18-NOV-

13                2011, as amended September 7, 2012, § 3.1(a)(3); Exhibit 1-TME-300336749

14                to ordering document 306226-04-OD-18-NOV-2011, as amended September

15                7, 2012, § 3.1(2));

16       (j)    Implement Siebel integrations with OPA in a professional manner consistent

17                with industry standards (OHA OLSA, § E; Exhibit 1-TME-300336741 to

18                ordering document 306226-04-OD-18-NOV-2011, as amended September 7,

19                2012, § 3.1(a)(3)(e); Exhibit 1-TME-300336749 to ordering document

20                306226-04-OD-18-NOV-2011, as amended September 7, 2012, § 3.1(2));

21       (k)    Install the Modernization and HIX-IT Projects in the test, training, and

22                production environments in a professional manner consistent with industry

23                standards (OHA OLSA, § E; Exhibit 2-TME-300336724 to ordering

24                document 306226-04-OD-18-NOV-2011, §§ (1)(A)(xii), (1)(B)(vii); Exhibit

25                1-TME-300336741 to ordering document 306226-04-OD-18-NOV-2011, as

26                amended September 7, 2012, §§ 4.1(a)(1), 4.1(b)(1); Exhibit 1-TME-

**Page    88 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

| | | |
|---|---|---|
| 1 | | 300336749 to ordering document 306226-04-OD-18-NOV-2011, as amended |
| 2 | | September 7, 2012, §§ 4.1(a), (e)); |
| 3 | (l) | Validate the OPA pre-screening, benefit application interview, and full |
| 4 | | eligibility rulebases in a professional manner consistent with industry |
| 5 | | standards (OHA OLSA, § E; Exhibit 1-TME-300336741 to ordering |
| 6 | | document 306226-04-OD-18-NOV-2011, as amended September 7, 2012, §§ |
| 7 | | 4.1(b)(2)-(4), 4.1(c)(2)-(3)); |
| 8 | (m) | Test the Modernization and HIX-IT Projects in a professional manner |
| 9 | | consistent with industry standards (OHA OLSA, § E; Exhibit 1-TME- |
| 10 | | 300336749 to ordering document 306226-04-OD-18-NOV-2011, as amended |
| 11 | | September 7, 2012, § 3.1(c)(1)-(3), (5); Exhibit 2-TME-300336724 to |
| 12 | | ordering document 306226-04-OD-18-NOV-2011, §§ (1)(A)(xiii), |
| 13 | | (1)(B)(viii)); |
| 14 | (n) | Migrate the Modernization and HIX-IT Projects from one environment to |
| 15 | | another in a professional manner consistent with industry standards (OHA |
| 16 | | OLSA, § E; Exhibit 1-TME-300336749 to ordering document 306226-04- |
| 17 | | OD-18-NOV-2011, as amended September 7, 2012, §§ 4.1(e), 5.1(d) Exhibit |
| 18 | | 2-TME-300336724 to ordering document 306226-04-OD-18-NOV-2011, § |
| 19 | | (1)(E)(iv)); |
| 20 | (o) | Design, build, and test integrations between Siebel and other application |
| 21 | | components for the Modernization and HIX-IT Projects in a professional |
| 22 | | manner consistent with industry standards (OHA OLSA, § E; Exhibit 2-TME- |
| 23 | | 300336724 to ordering document 306226-04-OD-18-NOV-2011, §§ |
| 24 | | (1)(A)(iv), (1)(B)(iv)); |
| 25 | (p) | Design, build, and test Webcenter for the Modernization Projects in a |
| 26 | | professional manner consistent with industry standards (OHA OLSA § E; |

Page   89 -   COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105 EXHIBIT A
PAGE 93 of 140

1    Exhibit 2-TME-300336724 to ordering document 306226-04-OD-18-NOV-

2    2011, § (1)(B)(ii));

3    (q)    Design, build, and test the HIX Identity Management application in a

4    professional manner consistent with industry standards (OHA OLSA, § E;

5    Exhibit 2-TME-300336724 to ordering document 306226-04-OD-18-NOV-

6    2011, § (1)(A)(vii));

7    (r)    Design, build, and test the Master Data Management application for the HIX-

8    IT Project in a professional manner consistent with industry standards (OHA

9    OLSA, § E; Exhibit 2-TME-300336724 to ordering document 306226-04-

10    OD-18-NOV-2011, §§ (1)(A)(viii));

11    (s)    Design, build, and test PeopleSoft for the HIX-IT Project in a professional

12    manner consistent with industry standards (OHA OLSA, § E; Exhibit 2-TME-

13    300336724 to ordering document 306226-04-OD-18-NOV-2011, §

14    (1)(A)(xi));

15    (t)    Correct defects and resolve deficiencies in a professional manner consistent

16    with industry standards (OHA OLSA, § E; Exhibit 1-TME-300336741 to

17    ordering document 306226-04-OD-18-NOV-2011, as amended September 7,

18    2012, §§ 4.1(a) (5), 5.1(a); Exhibit 1-TME-300336749 to ordering document

19    306226-04-OD-18-NOV-2011, as amended September 7, 2012, §§ 3.1(c)(4),

20    4.1(b), 4.2(b), 5.1(a); Exhibit 2-TME-300336724 to ordering document

21    306226-04-OD-18-NOV-2011, §§ (1)(E)(i)-(iii)).

22    296.

23    Oracle also breached the Oracle-OHA Contracts, including without limitation all of

24    the purchase orders and ordering documents, by failing to provide services in a professional

25    manner consistent with standards, as required in the OHA OLSA § E, throughout its work on

26    the Modernization and HIX-IT Projects, as described in paragraphs 156-163.

Page    90 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    EXHIBIT A
Fax: (503) 323-9105  PAGE 94 of 140

297.

As the direct and foreseeable result of Oracle's breaches of contract, DHS and OHA suffered damages of $182,611,307, as described in paragraphs 169-183.

298.

All of the damages sought by DHS and OHA are legally appropriate, despite limitations on remedies in the Oracle-OHA Contracts, due to the conduct of Oracle, as described above.

**Count 2 - Breach of Implied Duty of Good Faith and Fair Dealing**

299.

The Oracle-OHA Contracts contain an implied duty of good faith and fair dealing.

300.

The Oracle-OHA Contracts require Oracle to "assist" DHS and OHA with "the implementation of the Health Insurance Exchange system[.]" The implied duty of good fair and fair dealing required Oracle to "assist" DHS and OHA in a manner consistent with the reasonable expectation of the parties.

301.

DHS and OHA reasonably expected that Oracle was responsible for delivering a fully functional HIX on or before the State's launch date of October 1, 2013. This reasonable expectation is manifest in:

(a)     Oracle's complete control of the Modernization and HIX-IT Projects, as described in paragraphs 6, 103, 106 and 148;

(b)     DHS and OHA did not have their own developers and architects and relied on Oracle for all software development and system architecture;

(c)     The size and scope of the Oracle-OHA Contracts, which provided that DHS and OHA would pay Oracle tens of millions of dollars and provide assistance with every facet of the Modernization and HIX-IT project, including project

**Page     91 -     COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

1    management, scheduling, hardware, software, and development, as described

2    in paragraphs 92-97, 293-296;

3    (d)    Oracle's assumption of the role, in effect, of Systems Integrator, as described

4    in paragraphs 5, 6, 90-91, 103-104.

5    302.

6    Oracle breached its implied duty of good faith and fair dealing by failing to meet the

7    reasonable expectation of the parties and delivering a fully functional HIX system on or

8    before October 1, 2013.

9    303.

10    As the direct and foreseeable result of Oracle's breach of the duty of good faith and

11    fair dealing, DHS and OHA suffered damages of $182,611,307, as described in paragraphs

12    169-183.

13    304.

14    All of damages sought by DHS and OHA are legally appropriate, despite limitations

15    on remedies in the Oracle-OHA Contracts, due to the conduct of Oracle, as described above.

16    **Count 3 - Breach of Warranty of Repair**

17    305.

18    The OHA OLSA, Section E, provides that if Oracle breaches its warranty to provide

19    service in a professional manner consistent with industry standards, then Oracle will provide

20    additional services at no charge to correct that breach of warranty. Specifically, the OHA

21    OLSA provides that when Oracle breaches the warranty, Oracle shall provide "**THE**

22    **REPERFORMANCE OF THE DEFICIENT SERVICES**" (capitalization and emphasis in

23    original).

24    306.

25    Oracle breached its warranty by failing to provide re-performance of its deficient

26    services.

Page    92 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 96 of 140

307.

As the direct and foreseeable result of Oracle's breach of warranty, DHS and OHA

suffered damages in the amount of $94,628,093, as described in Exhibit 1, pg. 5.

308.

All of damages sought by DHS and OHA are legally appropriate, despite limitations

on remedies in the Oracle-OHA Contracts, due to the conduct of Oracle, as described above.

**Count 4 - Breach of Warranty to Recover Fees**

309.

The OHA OLSA, Section E, further provides that if Oracle cannot correct its breach

of the warranty "**IN A COMMERCIALLY REASONABLE MANNER, [DHS and OHA]**

**MAY END THE RELEVANT SERVICES AND RECOVER THE FEES YOU PAID**

**TO ORACLE FOR THE DEFICIENT SERVICES**" (capitalization and emphasis in

original).

310.

Oracle did not correct its breaches of warranty in a commercially reasonable manner.

DHS and OHA have ended the relevant services.  Oracle has not returned the fees that DHS

and OHA paid to Oracle.

311.

As the direct and foreseeable result of Oracle's breach of warranty, DHS and OHA

suffered damages in the amount of $94,628,093, as described in Exhibit 1, pg. 5.

312.

All of damages sought by DHS and OHA are legally appropriate, despite limitations

on remedies in the Oracle-OHA Contracts, due to the conduct of Oracle, as described above.

/// ///

/// ///

/// ///

Page    93 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105
**EXHIBIT A**
**PAGE 97 of 140**

1      313.

2      The dates on which DHS and OHA became responsible for the amounts described in

3  paragraphs 297, 303 and 311 are easily ascertainable. As such, the DHS and OHA are

4  entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

5                        **TWELFTH CLAIM FOR RELIEF**

6                           **Breach of Contact**

7              **(Cover Oregon against Defendant Oracle)**

8                              314.

9      Plaintiffs re-allege paragraphs 1 through 313, and incorporate the allegations herein,

10  as if fully set forth.

11                             315.

12      Cover Oregon has performed the duties required of it under the Oracle-Cover Oregon

13  Contracts alleged in this complaint, or its duties have been excused, and all conditions

14  precedent to the institution of this lawsuit and to the claims therein have been met.

15              **Count 1 - Breach of Express Contract**

16                             316.

17      Oracle materially breached the Oracle-Cover Oregon Contracts by:

18      (a)     Failing to provide a functioning, completed HIX (Exhibit 1 to the April 28,

19              2013 Ordering Document; Exhibit 1 to the November 15, 2013 Ordering

20              Document; Exhibit 1 to the March 1, 2014 Ordering Document; Exhibit 1 to

21              the March 11, 2014 Ordering Document; Exhibit 1 to the April 14, 2014

22              Ordering Document; and Exhibit 1 to the May 16, 2014 Ordering Document);

23      (b)     Failing to meet deadlines to ensure the timely launch of the HIX (Exhibit 1 to

24              the April 28, 2013 Ordering Document; Exhibit 1 to the November 15, 2013

25              Ordering Document; Exhibit 1 to the March 1, 2014 Ordering Document;

26              Exhibit 1 to the March 11, 2014 Ordering Document; Exhibit 1 to the April

**Page    94 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A
PAGE 98 of 140**

1        14, 2014 Ordering Document; and Exhibit 1 to the May 16, 2014 Ordering

2        Document);

3    (c)    Failing to design and deliver an overall architecture for the HIX in a manner

4        consistent with industry standards (Cover Oregon OLSA § E; Exhibit 1 to the

5        April 28, 2013 Ordering Document, §2.B.5, 7;  Exhibit 1 to the November 15,

6        2013 Ordering Document § 2.B.10, 12; Exhibit 1 to the March 1, 2014

7        Ordering Document § 2.B.13, 15; Exhibit 1 to the March 11, 2014 Ordering

8        Document §2.B.13, 15; Exhibit 1 to the April 14, 2014 Ordering Document

9        §2.B.13, 15; and Exhibit 1 to the May 16, 2014 Ordering Document § 2.B.12,

10       14);

11    (d)    Failing to document the overall architecture for the HIX (Cover Oregon

12       OLSA § E; Exhibit 1 to the April 28, 2013 Ordering Document, §2.B.5, 7;

13       Exhibit 1 to the November 15, 2013 Ordering Document § 2.B.10, 12; Exhibit

14       1 to the March 1, 2014 Ordering Document § 2.B.13, 15; Exhibit 1 to the

15       March 11, 2014 Ordering Document §2.B.13, 15; Exhibit 1 to the April 14,

16       2014 Ordering Document §2.B.13, 15; and Exhibit 1 to the May 16, 2014

17       Ordering Document § 2.B.12, 14);

18    (e)    Failing to deliver a set of integrated software programs (Cover Oregon OLSA

19       § E; Exhibit 1 to the April 28, 2013 Ordering Document; Exhibit 1 to the

20       November 15, 2013 Ordering Document; Exhibit 1 to the March 1, 2014

21       Ordering Document; Exhibit 1 to the March 11, 2014 Ordering Document;

22       Exhibit 1 to the April 14, 2014 Ordering Document; and Exhibit 1 to the May

23       16, 2014 Ordering Document);

24    (f)    Failing to  provide personnel with the proper experience, competence, and

25       training to perform the tasks necessary to meet Cover Oregon's needs in a

26       professional manner consistent with industry standards (Cover Oregon OLSA

Page    95 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 99 of 140

1             § E; Exhibit 1 to the April 28, 2013 Ordering Document; Exhibit 1 to the

2             November 15, 2013 Ordering Document; Exhibit 1 to the March 1, 2014

3             Ordering Document; Exhibit 1 to the March 11, 2014 Ordering Document;

4             Exhibit 1 to the April 14, 2014 Ordering Document; and Exhibit 1 to the May

5             16, 2014 Ordering Document);

6       (g)     Failing to provide adequate project management, including failure to follow

7             the Oracle Unified Method, consistent with industry standards (Cover Oregon

8             OLSA § E; Exhibit 1 to the April 28, 2013 Ordering Document § 2.B.5, 6, §

9             4; Exhibit 1 to the November 15, 2013 Ordering Document § 2.B.10, 11, § 4;

10            Exhibit 1 to the March 1, 2014 Ordering Document § 2.B.13, 14 § 4; Exhibit 1

11            to the March 11, 2014 Ordering Document § 2.B.13, 14, § 4; Exhibit 1 to the

12            April 14, 2014 Ordering Document § 2.B.13, 14, § 4; and Exhibit 1 to the

13            May 16, 2014 Ordering Document § 2 B.12, 14, § 4);

14      (h)     Failing to provide proper configuration of Siebel consistent with industry

15            standards (Cover Oregon OLSA § E; Exhibit 1 to the April 28, 2013 Ordering

16            Document, § 1, §2.B.23; Exhibit 1 to the November 15, 2013 Ordering

17            Document § 1, § 2.B.20; Exhibit 1 to the March 1, 2014 Ordering Document §

18            1, § 2.B.23; Exhibit 1 to the March 11, 2014 Ordering Document § 1, §

19            2.B.23; Exhibit 1 to the April 14, 2014 Ordering Document § 1, § 2.B.23; and

20            Exhibit 1 to the May 16, 2014 Ordering Document § 1, § 2 B.22);

21      (i)     Failing to apply standard naming conventions consistent with industry

22            standards (Cover Oregon OLSA § E);

23      (j)     Failing to provide proper branching for WebCenter applications consistent

24            with industry standards (Cover Oregon OLSA § E; Exhibit 1 to the April 28,

25            2013 Ordering Document, § 1, § 2.B.23; Exhibit 1 to the November 15, 2013

26            Ordering Document § 1, § 2.B.20; Exhibit 1 to the March 1, 2014 Ordering

Page    96 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1               Document § 1, § 2.B.23; Exhibit 1 to the March 11, 2014 Ordering Document

2               § 1, 2.B.23; Exhibit 1 to the April 14, 2014 Ordering Document § 1, § 2.B.23;

3               and Exhibit 1 to the May 16, 2014 Ordering Document, § 1, § 2.B.22);

4       (k)      Failing to provide and complete the development of SHOP (Cover Oregon

5               OLSA § E; Exhibit 1 to the April 28, 2013 Ordering Document; Exhibit 1 to

6               the November 15, 2013 Ordering Document; Exhibit 1 to the March 1, 2014

7               Ordering Document; Exhibit 1 to the March 11, 2014 Ordering Document;

8               Exhibit 1 to the April 14, 2014 Ordering Document; and Exhibit 1 to the May

9               16, 2014 Ordering Document);

10      (l)       Failing to develop an adequate enrollment interface, including but not limited

11              to failure to comply with ACA and the Health Insurance Portability and

12              Accountability Act (Cover Oregon OLSA § E; Exhibit 1 to the April 28, 2013

13              Ordering Document; Exhibit 1 to the November 15, 2013 Ordering

14              Document; Exhibit 1 to the March 1, 2014 Ordering Document; Exhibit 1 to

15              the March 11, 2014 Ordering Document; Exhibit 1 to the April 14, 2014

16              Ordering Document; and Exhibit 1 to the May 16, 2014 Ordering Document);

17      (m)     Failing to provide adequate testing of new code releases consistent with

18              industry standards (Cover Oregon OLSA § E; Exhibit 1 to the April 28, 2013

19              Ordering Document; June 3, 2013 Ordering Document; June 25, 2013

20              Ordering Document; Exhibit 1 to the November 15, 2013 Ordering Document

21              § 1.F; Exhibit 1 to the March 1, 2014 Ordering Document § 1.F; Exhibit 1 to

22              the March 11, 2014 Ordering Document § 1.F; Exhibit 1 to the April 14, 2014

23              Ordering Document § 1.F; and Exhibit 1 to the May 16, 2014 Ordering

24              Document § 1.F);

25      (n)       Failing to provide adequate revision controls consistent with industry

26              standards  (Cover Oregon OLSA § E; Exhibit 1 to the April 28, 2013 Ordering

Page     97 -     **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1      Document, § 2.B.5; Exhibit 1 to the November 15, 2013 Ordering Document

2      § 2.B.10; Exhibit 1 to the March 1, 2014 Ordering Document § 2.B.13;

3      Exhibit 1 to the March 11, 2014 Ordering Document § 2.B.13; Exhibit 1 to the

4      April 14, 2014 Ordering Document § 2.B.13; and Exhibit 1 to the May 16,

5      2014 Ordering Document § 2.B.12);

6    (o)  Failing to provide proper configuration of Oracle Identity Management suite

7      consistent with industry standards ((Cover Oregon OLSA § E; Exhibit 1 to the

8      April 28, 2013 Ordering Document, § 1, 2.B.23; Exhibit 1 to the November

9      15, 2013 Ordering Document § 1, § 2.B.20; Exhibit 1 to the March 1, 2014

10      Ordering Document §1, § 2.B.23; Exhibit 1 to the March 11, 2014 Ordering

11      Document § 1, § 2.B.23; Exhibit 1 to the April 14, 2014 Ordering Document §

12      1, § 2.B.23; and Exhibit 1 to the May 16, 2014 Ordering Document § 1, §

13      2.B.22);

14    (p)  Failing to timely deliver code ready environments for necessary testing to

15      meet the October 1, 2013 launch  (Cover Oregon OLSA § E; Exhibit 1 to the

16      April 28, 2013 Ordering Document, §1, § 2.B.23, March 4, 2013 Ordering

17      Document; Exhibit 1 to the November 15, 2013 Ordering Document § 1, §

18      .2.B.20; Exhibit 1 to the March 1, 2014 Ordering Document §1, § 2.B.23;

19      Exhibit 1 to the March 11, 2014 Ordering Document § 1, § 2.B.23; Exhibit 1

20      to the April 14, 2014 Ordering Document § 1, § 2.B.23; and Exhibit 1 to the

21      May 16, 2014 Ordering Document § 1, § 2.B.22);

22    (q)  Failing to deliver code ready environments for development and production to

23      meet the October 1, 2013 launch  (Cover Oregon OLSA § E; Exhibit 1 to the

24      April 28, 2013 Ordering Document, §1.B, §2.B.23; Exhibit 1 to the November

25      15, 2013 Ordering Document § 1.A, § 2.B.20; Exhibit 1 to the March 1, 2014

26      Ordering Document §1.A, § 2.B.23; Exhibit 1 to the March 11, 2014 Ordering

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    Document § 1, § 2.B.23; Exhibit 1 to the April 14, 2014 Ordering Document §

2    1, § 2.B.23; and Exhibit 1 to the May 16, 2014 Ordering Document § 1.a, §

3    2.B.22);

4    (r)    Failing to properly integrate and deliver the Oracle User Content Management

5    program (Cover Oregon OLSA § E; Exhibit 1 to the April 28, 2013 Ordering

6    Document, §1, § 2.B.23; Exhibit 1 to the November 15, 2013 Ordering

7    Document § 1, § 2.B.20; Exhibit 1 to the March 1, 2014 Ordering Document

8    §1, § 2.B.23; Exhibit 1 to the March 11, 2014 Ordering Document § 1, §

9    2.B.23; Exhibit 1 to the April 14, 2014 Ordering Document § 1, § 2.B.23; and

10    Exhibit 1 to the May 16, 2014 Ordering Document § 1, § 2.B.22);

11    (s)    Failing to design and implement the HIX to meet user specifications of

12    scalability to accommodate anticipated number of concurrent users (Cover

13    Oregon OLSA § E; Exhibit 1 to the April 28, 2013 Ordering Document;

14    Exhibit 1 to the November 15, 2013 Ordering Document; Exhibit 1 to the

15    March 1, 2014 Ordering Document; Exhibit 1 to the March 11, 2014 Ordering

16    Document; Exhibit 1 to the April 14, 2014 Ordering Document; and Exhibit 1

17    to the May 16, 2014 Ordering Document);

18    (t)    Failing to provide accurate level of effort estimates (Exhibit 1 to the April 28,

19    2013 Ordering Document §1 and 2 B.1; Exhibit 1 to the November 15, 2013

20    Ordering Document § 1, § 2.B.1; Exhibit 1 to the March 1, 2014 Ordering

21    Document § 1, § 2.B.1; Exhibit 1 to the March 11, 2014 Ordering Document §

22    1, § 2.B.1; Exhibit 1 to the April 14, 2014 Ordering Document § 1, § 2.B.1;

23    and Exhibit 1 to the May 16, 2014 Ordering Document § 1, § 2.B.1);

24    (u)    Failing to provide accurate monthly status reports of the current state, needs,

25    and issues concerning the development of the HIX (Exhibit 1 to the April 28,

26    2013 Ordering Document § 1.I ; Exhibit 1 to the November 15, 2013 Ordering

Page    99 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A

1    Document § 1.B; Exhibit 1 to the March 1, 2014 Ordering Document § 1.B;

2    Exhibit 1 to the March 11, 2014 Ordering Document § 1.B; Exhibit 1 to the

3    April 14, 2014 Ordering Document § 1.B; and Exhibit 1 to the May 16, 2014

4    Ordering Document § 1.B,;

5    (v)    Failing to provide adequate documentation of software, architecture, design,

6    and systems engineering for the HIX consistent with industry standards

7    (Cover Oregon OLSA § E; Exhibit 1 to the April 28, 2013 Ordering

8    Document, § 2.B.5, 7; Exhibit 1 to the November 15, 2013 Ordering

9    Document §.2.B.10, 12; Exhibit 1 to the March 1, 2014 Ordering Document §

10    2.B.13, 15; Exhibit 1 to the March 11, 2014 Ordering Document § 2.B.13, 15;

11    Exhibit 1 to the April 14, 2014 Ordering Document § 2.B.13, 15; and Exhibit

12    1 to the May 16, 2014 Ordering Document § 2.B.12, 14);

13    (w)   Failing to provide timely repair of coding failures, bugs and errors (Cover

14    Oregon OLSA § E; Exhibit 1 to the April 28, 2013 Ordering Document, §

15    2.B.5, 7; June 3, 2013 Ordering Document; June 25, 2013 Ordering

16    Document; Exhibit 1 to the November 15, 2013 Ordering Document §1, §

17    2.B.10, 12; Exhibit 1 to the March 1, 2014 Ordering Document §1, § 2.B.13,

18    15; Exhibit 1 to the March 11, 2014 Ordering Document §1, § 2.B.13, 15;

19    Exhibit 1 to the April 14, 2014 Ordering Document §1, § 2.B.13, 15; and

20    Exhibit 1 to the May 16, 2014 Ordering Document §1, § 2.B.12, 14);

21    (x)    Failing to provide "reperformance of the deficient services" consistent with

22    industry standards and without charge  (Cover Oregon OLSA § E);

23    (y)    Failing to use software engineering tools to support the development of the

24    HIX, consistent with industry standards (Cover Oregon OLSA § E);

25    (z)    Failing to perform system monitoring and system health checks (Cover

26    Oregon OLSA § E; March 4, 2013 Ordering Document);

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1      (aa)   Failing to implement an electronic submission of collected data to Siebel for

2            storage and further processing (Exhibit 1 to April 28, 2013 Ordering

3            Document §1.A);

4      (bb)   Failing to deliver an online web interview implementing the information

5            display, data collection, and webpage behavior as described in requirements

6            provided to Oracle (Exhibit 1 to April 28, 2013 Ordering Document §1.A);

7      (cc)   Failing to integrate WebCenter with IDM for Single Sign On and User

8            registration self-service, OPA to display OPA questionnaires, Siebel for end

9            user functionality using the Oracle SOA Suite, and Oracle WebCenter Content

10           for content management (Exhibit 1 to April 28, 2013 Ordering Document

11           §1.A);

12                              317.

13      Oracle also breached the Oracle-Cover Oregon Contracts, including without

14  limitation all purchase orders and ordering documents, by failing to provide services in a

15  professional manner consistent with standards, as required in the Cover Oregon OLSA § E,

16  throughout its work on the HIX-IT Projects, as described in paragraphs 156-163.

17                              318.

18      As the direct and foreseeable result of Oracle's breach of contract, Cover Oregon

19  suffered damages of $207,915,439, as described in paragraphs 169-183.

20                              319.

21      All of damages sought by Cover Oregon are legally appropriate, despite limitations

22  on remedies in the Oracle-Cover Oregon Contracts, due to the conduct of Oracle, as

23  described above.

24   /// ///

25   /// ///

26   /// ///

Page    101 -   COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1    **Count 2 - Breach of Implied Duty of Good Faith and Fair Dealing**

2                                              320.

3           The Oracle-Cover Oregon Contracts contain an implied duty of good faith and fair

4    dealing.

5                                              321.

6           The Oracle-Cover Oregon Contracts require Oracle to "assist" Cover Oregon "with

7    the completion of the Cover Oregon * * * implementation of the Health Insurance Exchange

8    system[.]" The implied duty of good fair and fair dealing required Oracle to "assist" Cover

9    Oregon in a manner consistent with the reasonable expectation of the parties.

10                                             322.

11          Cover Oregon reasonably expected that Oracle was responsible for delivering a fully

12   functional HIX on or before Cover Oregon's launch date of October 1, 2013. This

13   reasonable expectation is manifest in:

14          (a)      Oracle's complete control of the development of the HIX system, as described

15                   in paragraphs 6, 103, 106, 148;

16          (b)      Oracle's complete control of demonstrations of the HIX system before

17                   October 1, 2013, including control of demonstrations at the June 13, 2013

18                   Cover Oregon Board of Directors' meeting, the September 11-12, 2013 CMS

19                   Operation Readiness Review, and the September 18, 2013 demonstrations to

20                   Cover Oregon staff, as described in paragraphs 6, 125-127, 132-133 and 134;

21          (c)      Oracle executives' statements that Oracle would deliver a functional HIX by

22                   October 1, 2013, as described in paragraphs 9, 122 and 130;

23          (d)      The May 1, 2013 ordering document's terms providing that Oracle would

24                   provide "post production support from 10/1/13 [Cover Oregon's launch date

25                   for the HIX] through 12/31/13" and additional post-production support in

26                   2014;

**Page    102 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
**PAGE 106 of 140**

1    (e)    Oracle's determination of the "Level of Effort" necessary to complete the HIX

2            system in time for launch on October 1, 2013, as described in paragraph 117,

3            122 and 142;

4    (f)    The size and scope of the Oracle-Cover Oregon Contracts, which provided

5            that Cover Oregon would pay Oracle nearly $100 million and provide

6            assistance with every facet of the HIX-IT Project, including project

7            management, scheduling, hardware, software, and development, as described

8            in paragraphs 110-114, 314-317.

9                                        323.

10        Oracle breached its implied duty of good faith and fair dealing by failing to meet the

11    reasonable expectation of the parties and delivering a fully functional HIX system on or

12    before October 1, 2013.

13                                        324.

14        As the direct and foreseeable result of Oracle's breach of contract, Cover Oregon

15    suffered damages of $207,915,439, as described in paragraphs 169-183.

16                                        325.

17        All of damages sought by Cover Oregon are legally appropriate, despite limitations

18    on remedies in the Oracle-Cover Oregon Contracts, due to the conduct of Oracle, as

19    described above.

20                        **Count 3 - Breach of Warranty of Repair**

21                                        326.

22        The Cover Oregon OLSA, Section E, provides that if Oracle breaches its warranty to

23    provide service in a professional manner consistent with industry standards, then Oracle will

24    provide additional services at no charge to correct that breach of warranty. Specifically, the

25    Contract provides that when Oracle breaches the warranty, Oracle shall provide **"THE**

26

Page    103 -   **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105 **EXHIBIT A**

1    REPERFORMANCE OF THE DEFICIENT SERVICES" (capitalization and emphasis in

2    original).

3                                    327.

4          Oracle breached its warranty by failing to provide re-performance of the deficient

5    services.  Instead, Oracle charged Cover Oregon and demanded payment for Oracle's

6    attempts to correct Oracle's previously substandard services (November 15, 2013 Ordering

7    Document, March 1, 2014 Ordering Document, April 1, 2014 Ordering Document, April 14,

8    2014 Ordering Document, May 16, 2014 Ordering Document).

9                                    328.

10         As the direct and foreseeable result of Oracle's breach of warranty, Cover Oregon

11   suffered damages of $77,197,987, as described in Exhibit 1, pg. 7.

12                                   329.

13         All of damages sought by Cover Oregon are legally appropriate, despite limitations

14   on remedies in the Oracle-Cover Oregon Contracts, due to the conduct of Oracle, as

15   described above.

16               **Count 4 - Breach of Warranty to Recover Fees**

17                                   330.

18         The Cover Oregon OLSA, Section E, further provides that if Oracle cannot correct its

19   breach of the warranty "**IN A COMMERCIALLY REASONABLE MANNER, [Cover**

20   **Oregon] MAY END THE RELEVANT SERVICES AND RECOVER THE FEES YOU**

21   **PAID TO ORACLE FOR THE DEFICIENT SERVICES**" (capitalization and emphasis

22   in original).

23                                   331.

24         Oracle did not correct its breaches of warranty in a commercially reasonable manner.

25   Cover Oregon has ended the relevant services.  Oracle has not returned the fees that Cover

26   Oregon paid to Oracle.

**Page     104 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 108 of 140

332.

As the direct and foreseeable result of Oracle's breach of warranty, Cover Oregon suffered damages of $77,197,987, as described in paragraphs Exhibit 1, pg. 7.

333.

All of damages sought by Cover Oregon are legally appropriate, despite limitations on remedies in the Oracle-Cover Oregon Contracts, due to the conduct of Oracle, as described above.

**Count 5 - Promissory Estoppel**

334.

Oracle promised that it would deliver a functional HIX-IT Project by October 1, 2013, as described in paragraphs 7, 8, 117, 120, 122, 124, 126, 128, 130 and 142.

335.

Oracle could and did foresee that this promise would induce Cover Oregon to make payments to Oracle.

336.

Cover Oregon relied on Oracle's promise and as a result of that reliance paid Oracle to deliver a functional HIX-IT Project by October 1, 2013.

337.

As the direct and foreseeable result of Oracle's breach of its promise, Cover Oregon suffered damages of $207,915,439, as described in paragraphs 169-183.

338.

All of damages sought by Cover Oregon are legally appropriate, despite limitations on remedies in the Oracle-Cover Oregon Contracts, due to the conduct of Oracle, as described above.

/// ///

/// ///

**Page    105 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 109 of 140

1          339.

2          The dates on which Cover Oregon became responsible for the amounts described in

3     paragraphs 318, 324, 328, 332 and 337 are easily ascertainable. As such, Cover Oregon is

4     entitled to prejudgment interest on those amounts at the statutory rate of 9% per annum.

5                              **THIRTEENTH CLAIM FOR RELIEF**

6              **Oregon Civil Racketeer Influenced and Corrupt Organizations Act**

7                         **(DHS, OHA, and Cover Oregon against Oracle)**

8          340.

9          Plaintiffs re-allege paragraphs 1 through 339, and incorporate the allegations herein,

10    as if fully set forth.

11                         **Count 1 – Violation of ORS 166.720(2)**

12         341.

13         DHS, OHA, Cover Oregon, Mythics, and Oracle have operated continuously as an

14    associated-in-fact enterprise from February 2009, when Oracle submitted its response to

15    DHS's request for information, until present (the "Modernization-HIX Enterprise"). This

16    enterprise is organized for a legitimate common purpose, to implement the Modernization

17    and HIX-IT Projects. The members of this enterprise are organized through a web of

18    contracts, including the Mythics-OHA Contracts, Oracle-OHA Contracts, and Oracle-Cover

19    Oregon Contracts, as described in paragraphs 79-87, 92-97, 110-114. DHS, OHA, and Cover

20    Oregon have been and are innocent participants in this legitimate enterprise.

21         342.

22         Oracle indirectly and directly acquired and maintained control of the Modernization-

23    HIX Enterprise through a pattern of racketeering activity by committing or attempting to

24    commit the crimes of unsworn falsification, ORS 162.085, and fraudulently obtaining a

25    signature, ORS 165.042.

26    */// ///*

**Page**    **106 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
**PAGE 110 of 140**

1        343.

2        Oracle committed or attempted to commit the crime of unsworn falsification by:

3    (a)    Falsely stating in writing that:

4        i.    The "Oracle Solution" had out-of-the-box functionalities on the

5            Vendor Questionnaire, as described in paragraphs 55-61, 74, 75 and

6            166;

7        ii.    The "Oracle Solution" was an out-of-the-box solution, as described in

8            paragraphs 3, 35, 57, 61, 69, 72, 74-75, 164 and 166;

9        iii.    The "Oracle Solution" could be implemented quickly, as described in

10            paragraphs 53, 66, 70, 164;

11        iv.    The "Oracle Solution" was built on integrated technologies, as

12            described in paragraphs 3, 51, 64, 66, 70, 75-76 and 164;

13        v.    The "Oracle Solution" was flexible and easy to integrate with both

14            existing and external systems, as described in paragraphs 3, 35, 66, 75-

15            77;

16        vi.    The "Oracle Solution" included implementation of a health insurance

17            exchange, as described in paragraph 164;

18        vii.    The HIX-IT Project was nearly complete, as stated in the development

19            dashboards and described in paragraphs 7 and 128;

20        viii.    Oracle would deliver the HIX on October 15, 2013, as stated in the

21            email from Bartolo to King described in paragraph 9 and 136;

22        ix.    The "functionality required to enroll the vast majority of Oregon

23            residents is operational," as written in a letter from Catz to Cover

24            Oregon in April 2014 and described in paragraph 151.

25    (b)    Making each of these representations to public servants working for DHS,

26        OHA, or Cover Oregon.

Page    107 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER'
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105
EXHIBIT A
PAGE 111 of 140

1    (c)    Making these statements in connection with:

2        i.    Oracle's application to become DHS, OHA, and Cover Oregon's

3            vendor for the Modernization and HIX-IT Projects and obtain the

4            benefit of payment from DHS, OHA, and Cover Oregon;

5        ii.    Applications for payment of invoices pursuant to the Mythics-OHA

6            Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon

7            Contracts, as described in paragraphs 96, 114, 143-147, 150, 169 and

8            170 for the benefit of payments from DHS, OHA, and Cover Oregon.

9                        344.

10    Oracle committed or attempted to commit the crime of fraudulently obtaining a

11    signature by:

12    (a)    Obtaining DHS's, OHA's, and Cover Oregon's signatures on the Mythics-

13        Oracle Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon

14        Contracts;

15    (b)    Obtaining these signatures by knowingly misrepresenting that:

16        i.    The "Oracle Solution" was an out-of-the-box solution, as described in

17            paragraphs 3, 35, 57-61, 69, 72, 74-75, 164 and 166;

18        ii.    The "Oracle Solution" required only 5% customization, as described in

19            paragraphs 59, 63, 72, 74-75, 164 and 166;

20        iii.    The "Oracle Solution" could be implemented quickly, as described in

21            paragraphs 53, 66, 70 and 164;

22        iv.    The "Oracle Solution" was built on integrated technologies, as

23            described in paragraphs 3, 51, 64, 66, 70, 75-76 and 164;

24        v.    The "Oracle Solution" was flexible and easy to integrate with both

25            existing and external systems, as described in paragraphs 3, 35, 66, 75-

26            77;

Page    108 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105    EXHIBIT A
PAGE 112 of 140

1         vi.    The "Oracle Solution" included implementation of a health insurance

2                  exchange, as described in paragraph 164;

3         vii.   The HIX-IT Project was nearly complete, as stated in the development

4                  dashboards and described in paragraphs 7 and 128;

5        viii.  Core elements of the exchange were functional as shown in Kim's

6                  demonstration at the June 13, 2013 Cover Oregon Board of Directors'

7                  meeting described in paragraphs 125-127;

8         ix.   The HIX would be ready to launch on October 1, 2013, as described in

9                  paragraphs 7, 8, 117, 120, 122, 124, 126, 128, 130 and 142;

10       x.    The HIX would be ready to launch on October 15, 2013, as stated in

11                the email from Bartolo to King described in paragraphs 9 and 136;

12       xi.   The HIX would be ready to launch on October 31, 2013, as told by

13                Bartolo to King and Karjala and described in paragraphs 9 and 136;

14       xii.   The HIX would be ready to launch at the end of December 2013, as

15                told by Budnar to the Cover Oregon Board of Directors on November

16                14, 2013, and described in paragraphs 9 and 140;

17       xiii.  The HIX would be ready to launch on February 3, 2014, as told by

18                Puri to Goldberg on January 7, 2014, and described in paragraphs 9,

19                10, 143-145;

20       xiv.  The HIX would be ready to launch on February 24, 2014, as told by

21                Puri to Goldberg on February 11, 2014, and described in paragraphs 9,

22                10, 146-147;

23       xv.   The HIX was nearly ready to launch as told by Katz to Goldberg and

24                other State officials on February 26, 2014, and described in paragraph

25                150;

26

**Page   109 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**

xvi.    The "functionality required to enroll the vast majority of Oregon residents is operational," as written in a letter from Catz to Cover Oregon in April 2014 and described in paragraph 151.

(c)    Making these representations with the intent to defraud DHS, OHA, and Cover Oregon.

345.

Oracle committed multiple crimes of unsworn falsification and fraudulently obtaining a signature.  Oracle committed the crime of unsworn falsification once for every instance in which Oracle made a false statement in writing as described in paragraph 343(a).  Oracle committed the crime of fraudulently obtaining a signature once for every signature a State employee placed on any of the Mythics-OHA Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon Contracts.

346.

These crimes had the same intent:  To obtain payments of substantial sums from DHS, OHA, and Cover Oregon to Mythics and Oracle or to obtain contracts providing for such payments.  These crimes also had the same victims: DHS, OHA, and Cover Oregon.

347.

Oracle disguised the true state of development on the Modernization and HIX-IT Projects, including by controlling access to development environments, as described in paragraphs 6, 103, 1065 and 148, so that DHS and OHA were unable to discover that Oracle was failing to meet the representations listed in paragraphs 343 and 344.

348.

DHS, OHA, and Cover Oregon were injured by reason of Oracle's violations of ORS 166.720(2).  Oracle's control of the Modernization-HIX Enterprise caused both the Modernization and HIX-IT Projects to fail.  The "Oracle Solution" failed to meet the needs of the Modernization and HIX-IT Projects, as described in paragraphs 132-163, 169-183.

**Page    110 -  COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105
**PAGE 114 of 140**

1    Moreover, Oracle's control of the Modernization-HIX Enterprise enabled Oracle to disguise

2    its poor work and inability to complete the Projects, thus preventing the State from taking

3    action to correct Oracle's mistakes or hire an alternate vendor.  Oracle's control of the

4    Modernization-HIX Enterprise also allowed Oracle to manipulate the State into signing

5    additional purchase orders, guaranteeing Oracle a continuous flow of payments.

6                                          349.

7            As the direct and foreseeable result of Oracle's violations of ORS 166.720(2), DHS,

8    OHA, and Cover Oregon suffered damages of $420,752,808, as described in paragraphs 169-

9    183, which shall be trebled in accordance with ORS 166.725(7)(a).

10                                         350.

11           The dates on which DHS, OHA, and Cover Oregon became responsible for the

12   amounts described in paragraph 349 are easily ascertainable.  As such, DHS, OHA, Cover

13   Oregon are entitled to prejudgment interest on those amounts at the statutory rate of 9% per

14   annum.

15                                         351.

16           Because aggravating factors exist with regard to Oracle's violations of ORS

17   166.720(2), DHS, OHA, and Cover Oregon reserve the right to seek leave to amend this

18   count to allege punitive damages consistent with ORS 166.725(7)(a) and ORS 31.725.

19                      **Count 2 – Violation of ORS 166.720(3)**

20                                         352.

21           Oracle and Mythics have operated continuously as an associated-in-fact enterprise

22   since before 2010 to present, as described in paragraphs 79-80.  The common purpose of this

23   enterprise is to sell, resell, and distribute Oracle products and services.  This enterprise is

24   organized through contracts between Oracle and Mythics.

25   /// ///

26   /// ///

Page    111 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

353.

Oracle participated in the Oracle-Mythics enterprise through a pattern of racketeering activity by committing or attempting to commit the crimes of unsworn falsification, ORS 162.085, and fraudulently obtaining a signature, ORS 165.042.

354.

Oracle committed or attempted to commit the crime of unsworn falsification by engaging in the conduct alleged in paragraph 343.

355.

Oracle committed or attempted to commit the crime of fraudulently obtaining a signature by engaging in the conduct alleged in paragraph 344.

356.

Oracle committed multiple crimes of unsworn falsification and fraudulently obtaining a signature. Oracle committed the crime of unsworn falsification once for every instance in which Oracle made a false statement in writing as described in paragraph 343(a). Oracle committed the crime of fraudulently obtaining a signature once for every signature a State employee placed on any of the Mythics-OHA Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon Contracts.

357.

These crimes had the same intent: To obtain payments of substantial sums from DHS, OHA, and Cover Oregon to Mythics and Oracle or to obtain contracts providing for such payments. These crimes also had the same results: The execution of the Mythics-OHA Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon Contracts and the payments by DHS, OHA, and Cover Oregon pursuant to those contracts. These crimes also had the same victims: DHS, OHA, and Cover Oregon.

/// ///

/// ///

**Page     112 -    COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1                                      358.

2          Oracle disguised the true state of development on the Modernization and HIX-IT

3   Projects, including by controlling access to development environments, as described in

4   paragraphs 6, 103, 106 and 148, so that DHS and OHA were unable to discover that Oracle

5   was failing to meet the representations listed in paragraphs 343-344.

6                                      359.

7          DHS, OHA, and Cover Oregon were injured by reason of Oracle's violations of ORS

8   166.720(3).  As a direct result of Oracle's crimes, DHS, OHA, and Cover Oregon entered the

9   Mythics-OHA Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon Contracts and

10  the payments by DHS, OHA, and Cover Oregon pursuant to those contracts.  Oracle violated

11  ORS 166.720(3) with the intent that the State would enter these contracts and make

12  substantial payments to Oracle.

13                                     360.

14         As the direct and foreseeable result of Oracle's violations of ORS 166.720(3), DHS,

15  OHA, and Cover Oregon suffered damages of $420,752,808, as described in paragraphs 169-

16  183, which shall be trebled in accordance with 166.725(7)(a).

17                                     361.

18         The dates on which DHS, OHA, and Cover Oregon became responsible for the

19  amounts described in paragraph 360 are easily ascertainable.  As such, DHS, OHA, Cover

20  Oregon are entitled to prejudgment interest on those amounts at the statutory rate of 9% per

21  annum.

22                                     362.

23         Because aggravating factors exist with regard to Oracle's violations of ORS

24  166.720(3), DHS, OHA, and Cover Oregon reserve the right to seek leave to amend this

25  claim to allege punitive damages consistent with ORS 166.725(7)(a) and ORS 31.725.

26  /// ///

Page    113 -   COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 117 of 140

363.

DHS, OHA, and Cover Oregon seek an award of reasonable attorney fees incurred in connection with this claim pursuant to ORS 166.725(14).

## FOURTEENTH CLAIM FOR RELIEF

### Oregon Civil Racketeer Influenced and Corrupt Organizations Act

### (Attorney General of Oregon against Oracle)

364.

Plaintiffs re-allege paragraphs 1 through 363, and incorporate the allegations herein, as if fully set forth.

### Count 1 – Violation of ORS 166.720(2)

365.

DHS, OHA, Cover Oregon, Mythics, and Oracle have operated continuously as an associated-in-fact enterprise from February 2009, when Oracle submitted its response to DHS's request for information, until present (the "Modernization-HIX Enterprise"). This enterprise is organized for a legitimate common purpose, to implement the Modernization and HIX-IT Projects. The members of this enterprise are organized through a web of contracts, including the Mythics-OHA Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon Contracts, as described in paragraphs 79-87, 92-97, 110-114. DHS, OHA, and Cover Oregon have been and are innocent participants in this legitimate enterprise.

366.

Oracle indirectly and directly acquired and maintained control of the Modernization-HIX Enterprise through a pattern of racketeering activity by committing or attempting to commit the crimes of unsworn falsification, ORS 162.085, and fraudulently obtaining a signature, ORS 165.042, obtaining execution of documents by deception, ORS 165.102, and wire fraud, 18 U.S.C. § 1343.

/// ///

Page    114 -    COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 118 of 140

1
367.

2      Oracle committed or attempted to commit the crime of unsworn falsification by

3 engaging in the conduct alleged in paragraph 343.

4
368.

5      Oracle committed or attempted to commit the crime of fraudulently obtaining a

6 signature by engaging in the conduct alleged in paragraph 344.

7
369.

8      Oracle committed or attempted to commit the crime of obtaining execution of

9 documents by deception by:

10   (a)   Obtaining DHS's, OHA's, and Cover Oregon's signatures on the Mythics-

11        Oracle Contracts, Oracle-OHA Contracts, and Oracle-Cover Oregon Contracts

12        and presenting invoices for payments, as described in paragraphs 96, 114,

13        143-147, 150, 169 and 170.

14   (b)   Obtaining execution of these documents by fraud, deceit, or subterfuge by

15        knowingly misrepresenting that:

16      i.   The "Oracle Solution" was an out-of-the-box solution, as described in

17          paragraphs 3, 35, 57-61, 69, 72, 74-75, 164 and 166;

18      ii.   The "Oracle Solution" required only 5% customization, as described in

19          paragraphs 59, 63, 72, 74-75, 164 and 166;

20      iii.   The "Oracle Solution" could be implemented quickly, as described in

21          paragraphs 53, 66, 70, 164;

22      iv.   The "Oracle Solution" was built on integrated technologies, as

23          described in paragraphs 3, 51, 64, 66, 70, 75-76 and 164;

24      v.   The "Oracle Solution" was flexible and easy to integrate with both

25          existing and external systems, as described in paragraphs 3, 35, 66, 75-

26          77;

Page   115 -  COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105
**EXHIBIT A**
**PAGE 119 of 140**

| | | |
|---|---|---|
| 1 | vi. | The "Oracle Solution" included implementation of a health insurance |
| 2 | | exchange, as described in paragraph 164; |
| 3 | vii. | The HIX-IT Project was nearly complete, as stated in the development |
| 4 | | dashboards and described in paragraphs 7 and 128; |
| 5 | viii. | Core elements of the exchange were functional as shown in Kim's |
| 6 | | demonstration at the June 13, 2013, Cover Oregon Board of Directors' |
| 7 | | meeting described in paragraphs 125-127; |
| 8 | ix. | The HIX would be ready to launch on October 1, 2013, as described in |
| 9 | | paragraphs 7, 8, 117, 120, 122, 124, 126, 128, 130 and 142; |
| 10 | x. | The HIX would be ready to launch on October 15, 2013, as stated in |
| 11 | | the email from Bartolo to King described in paragraph 9 and 136; |
| 12 | xi. | The HIX would be ready to launch on October 31, 2013, as told by |
| 13 | | Bartolo to King and Karjala and described in paragraph 9 and 136; |
| 14 | xii. | The HIX would be ready to launch at the end of December 2013, as |
| 15 | | told by Budnar to the Cover Oregon Board of Directors on November |
| 16 | | 14, 2013, and described in paragraph 9 and 140; |
| 17 | xiii. | The HIX would be ready to launch on February 3, 2014, as told by |
| 18 | | Puri to Goldberg on January 7, 2014, and described in paragraphs 9, |
| 19 | | 10, 143-145; |
| 20 | xiv. | The HIX would be ready to launch on February 24, 2014, as told by |
| 21 | | Puri to Goldberg on February 11, 2014 and described in paragraph 9, |
| 22 | | 10, 146-147; |
| 23 | xv. | The HIX was nearly ready to launch as told by Catz to Goldberg and |
| 24 | | other State officials on February 26, 2014, and described in paragraph |
| 25 | | 150; |
| 26 | /// /// | |

Page    116 -   COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 120 of 140

1              xvi.    The "functionality required to enroll the vast majority of Oregon

2                     residents is operational," as written in a letter from Catz to Cover

3                     Oregon in April 2014 and described in paragraph 151.

4      (c)    Making these misrepresentations with the intent to acquire millions of dollars

5          in payments.

6                                      370.

7    Oracle committed the crime of wire fraud by:

8      (a)    Engaging in a scheme to defraud DHS, OHA, and Cover Oregon by making

9          material misrepresentations, including that:

10          i.    The "Oracle Solution" was an out-of-the-box solution, as described in

11                 paragraphs 3, 35, 57-61, 69, 72, 74-75, 164 and 166;

12          ii.    The "Oracle Solution" required only 5% customization, as described in

13                 paragraphs 59, 63, 72, 74-75, 164 and 166;

14          iii.    The "Oracle Solution" could be implemented quickly, as described in

15                 paragraphs 53, 66, 70 and 164;

16          iv.    The "Oracle Solution" was built on integrated technologies, as

17                 described in paragraphs 3, 51, 64, 66, 70, 75-76 and 164;

18          v.    The "Oracle Solution" was flexible and easy to integrate with both

19                 existing and external systems, as described in paragraphs 3, 35, 66, 75-

20                 77;

21          vi.    The "Oracle Solution" included implementation of a health insurance

22                 exchange, as described in paragraph 164;

23          vii.    The HIX-IT Project was nearly complete, as stated in the development

24                 dashboards and described in paragraphs 7 and 128;

25   /// ///

26   /// ///

Page    117 -   **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

**EXHIBIT A**
**PAGE 121 of 140**

1    viii.   Core elements of the exchange were functional as shown in Kim's

2            demonstration at the June 13, 2013, Cover Oregon Board of Directors'

3            meeting described in paragraphs 125-127;

4    ix.     The HIX would be ready to launch on October 1, 2013, as described in

5            paragraphs 7, 8, 117, 120, 122, 124, 126, 128, 130 and 142;

6    x.      The HIX would be ready to launch on October 15, 2013, as stated in

7            the email from Bartolo to King described in paragraphs 9 and 136;

8    xi.     The HIX would be ready to launch on October 31, 2013, as told by

9            Bartolo to King and Karjala and described in paragraphs 9 and 136;

10   xii.    The HIX would be ready to launch at the end of December 2013, as

11           told by Budnar to the Cover Oregon Board of Directors on November

12           14, 2013, and described in paragraphs 9 and 140;

13   xiii.   The HIX would be ready to launch on February 3, 2014, as told by

14           Puri to Goldberg on January 7, 2014, and described in paragraphs 9,

15           10 and 143-145;

16   xiv.    The HIX would be ready to launch on February 24, 2014, as told by

17           Puri to Goldberg on February 11, 2014, and described in paragraphs 9,

18           10, 146-147;

19   xv.     The HIX was nearly ready to launch as told by Catz to Goldberg and

20           other State officials on February 26, 2014, and described in paragraph

21           150;

22   xvi.    The "functionality required to enroll the vast majority of Oregon

23           residents is operational," as written in a letter from Catz to Cover

24           Oregon in April 2014 and described in paragraph 151.

25   (b)     Using the wires to transmit documents containing these misrepresentations, as

26           well as invoices and other documents in furtherance of its scheme to defraud.

Page    118 -   COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 122 of 140

1      (c)    Making these misrepresentations with the specific intent to cause DHS, OHA,

2            and Cover Oregon to enter into the Mythics-OHA Contracts, the Oracle-OHA

3            Contracts, and the Oracle-Cover Oregon Contracts, and to make payments to

4            Oracle and Mythics under those Contracts.

5                             371.

6      Oracle disguised the true state of development on the Modernization and HIX-IT

7  Projects, including by controlling access to development environments, as described in

8  paragraphs 6, 103, 106 and 148, so that DHS and OHA were unable to discover that Oracle

9  was failing to meet the representations listed in paragraphs 369 and 370.

10                         372.

11     For Oracle's violations of ORS 166.720(2), the Attorney General seeks the following

12  injunctive relief pursuant to ORS 166.725(1):

13      (a)    An order voiding the provisions of the Mythics-OHA Contracts, the Oracle-

14            OHA Contracts, and the Oracle-Cover Oregon Contracts that limit DHS's,

15            OHA's, and Cover Oregon's rights to recover indirect, incidental, special,

16            punitive and consequential damages;

17      (b)    An order voiding the provisions of the Mythics-OHA Contracts, the Oracle-

18            OHA Contracts, and the Oracle-Cover Oregon Contracts stating that actions

19            arising out or related to those contracts may not be brought more than two

20            years after the cause of action accrues;

21      (c)    A permanent injunction prohibiting Oracle from marketing to or entering into

22            a contract with any public corporation of or agency of the State of Oregon

23            from the date of judgment forward.

24                         373.

25     For each of Oracle's violations of ORS 166.720(2), the Attorney General seeks a civil

26  penalty of $250,000 pursuant to ORS 166.725(8).

Page    119 -   **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085    **EXHIBIT A**
Fax: (503) 323-9105

1    **Count 2 – Violation of ORS 166.720(3)**

2                                    374.

3    Oracle and Mythics have operated continuously as an associated-in-fact enterprise

4    since before 2010 to present, as described in paragraphs 79-80.  The common purpose of this

5    enterprise is to sell, resell, and distribute Oracle products and services.  This enterprise is

6    organized through contracts between Oracle and Mythics.

7                                    375.

8    Oracle participated in the Oracle-Mythics enterprise through a pattern of racketeering

9    activity by committing or attempting to commit the crimes of unsworn falsification, ORS

10   162.085, and fraudulently obtaining a signature, ORS 165.042, obtaining execution of

11   documents by deception, ORS 165.102, and wire fraud, 18 U.S.C. § 1343.

12                                   376.

13   Oracle committed or attempted to commit the crime of unsworn falsification by

14   engaging in the conduct alleged in paragraph 343.

15                                   377.

16   Oracle committed or attempted to commit the crime of fraudulently obtaining a

17   signature by engaging in the conduct alleged in paragraph 344.

18                                   378.

19   Oracle committed or attempted to commit the crime of obtaining execution of

20   documents by engaging in the conduct alleged in paragraph 369.

21                                   379.

22   Oracle committed the crime of wire fraud by engaging in the conduct alleged in

23   paragraph 370.

24                                   380.

25   Oracle disguised the true state of development on the Modernization and HIX-IT

26   Projects, including by controlling access to development environments, as described in

**Page    120 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105   **EXHIBIT A**

1    paragraphs 6, 103, 106 and 148, so that DHS and OHA were unable to discover that Oracle

2    was failing to meet the representations listed in paragraphs 343, 344, 369 and 370.

3                                           381.

4          For Oracle's violations of ORS 166.720(3), the Attorney General seeks the following

5    injunctive relief pursuant to ORS 166.725(1):

6          (a)    An order voiding the provisions of the Mythics-OHA Contracts, the Oracle-

7                 OHA Contracts, and the Oracle-Cover Oregon Contracts that limit DHS's,

8                 OHA's, and Cover Oregon's rights to recover indirect, incidental, special,

9                 punitive and consequential damages;

10         (b)    An order voiding the provisions of the Mythics-OHA Contracts, the Oracle-

11                OHA Contracts, and the Oracle-Cover Oregon Contracts stating that actions

12                arising out or related to those contracts may not be brought more than two

13                years after the cause of action accrues;

14         (c)    A permanent injunction prohibiting Oracle from marketing to or entering into

15                a contract with any public corporation of or agency of the State of Oregon

16                from the date of judgment forward.

17                                          382.

18         For each of Oracle's violations of ORS 166.720(3), the Attorney General seeks a civil

19    penalty of $250,000 pursuant to ORS 166.725(8).

20                                          383.

21         The Attorney General seeks an award of the cost of investigation and reasonable

22    attorney fees incurred in connection with this claim, including the costs and expenses of

23    DHS, OHA, and Cover Oregon incurred in connection with the investigation and litigation,

24    pursuant to ORS 166.725(5).

25    /// ///

26    /// ///

Page     121 -    **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1                                      **PRAYER**

2         WHEREFORE, plaintiffs Attorney General Rosenblum, the State of Oregon, by and

3    through DHS, OHA, and Attorney General Rosenblum, and Cover Oregon pray for relief

4    against defendants as follows:

5         A.  On the first claim for relief, for a judgment in favor of DHS and OHA and

6             against Oracle in an amount of $212,837,368;

7         B.  On the second claim for relief, for a judgment in favor of Cover Oregon and

8             against Oracle in an amount of $207,915,439;

9         C.  On the third claim for relief:

10            1.  On count 1, for a judgment in favor of Attorney General Rosenblum

11                and against Oracle in the amount of $240,280,008 in damages and

12                $480,560,017 in penalties;

13            2.  On count 2, for a judgment in favor of Attorney General Rosenblum

14                and against Oracle in the amount of $240,280,008 in damages and

15                $480,560,017in penalties;

16            3.  On count 3, for a judgment in favor of Attorney General Rosenblum

17                and against Oracle in the amount of $174,029,405 in damages and

18                $348,058,811 in penalties;

19            4.  On count 4, for a judgment in favor of Attorney General Rosenblum

20                and against Oracle in the amount of to be determined but not to exceed

21                $174,029,405 in damages and $348,058,811 in penalties;

22        D.  On the fourth claim for relief, for a judgment in favor of Attorney General

23            Rosenblum and against Catz in the amount of $87,879,134 in penalties and an

24            additional $10,000 in penalties for each of Catz's violations of ORS

25            180.755(1)(b) in her April 2014 letter;

26    /// ///

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

1        E.  On the fifth claim for relief, for a judgment in favor of Attorney General

2              Rosenblum and against Budnar in the amount of $112,399,186.74 in penalties

3              and an additional $10,000 in penalties for each of Budnar's violations of ORS

4              180.755(1)(b) during the November 14, 2013 Cover Oregon Board meeting;

5        F.  On the sixth claim for relief, for a judgment in favor of Attorney General

6              Rosenblum and against Bartolo in the amount of $10,000 in penalties for each

7              of Bartolo's violations of ORS 180.755(1)(b);

8        G.  On the seventh claim for relief, for a judgment in favor of Attorney General

9              Rosenblum and against Kim in the amount of $45,102,210.38 in penalties;

10       H.  On the eighth claim for relief, for a judgment in favor of Attorney General

11             Rosenblum and against Puri in the amount of $87,869,134 in penalties and an

12             additional $10,000 in penalties for each of Puri's violations of ORS

13             180.755(1)(b) during the January 7, 2014 and February 11, 2014 meetings;

14       I.  On the ninth claim for relief, for a judgment in favor of Attorney General

15             Rosenblum and against Curry in the amount of $267,215,009.94 in penalties;

16       J.  On the tenth claim for relief:

17           (a) On count 1, for a judgment in favor of DHS and OHA against Oracle

18                and Mythics in the amount of $109,455,925;

19           (b) On count 2, for a judgment in favor of DHS and OHA against Oracle

20                and Mythics in an amount to be determined;

21           (c) On count 3, for a judgment in favor of DHS and OHA against Oracle

22                and Mythics in an amount to be determined;

23       K.  On the eleventh claim for relief:

24           (a) On count 1, for a judgment in favor of DHS and OHA against Oracle

25                in the amount of $182,611,307;

26     /// ///

**Page    123 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 127 of 140

1       (b) On count 2, for a judgment in favor of DHS and OHA against Oracle

2           in the amount of $182,611,307;

3       (c) On count 3, for a judgment in favor of DHS and OHA against Oracle

4           in an amount to be determined;

5       (d) On count 4, for a judgment in favor of DHS and OHA against Oracle

6           in an amount to be determined;

7    L.  On the twelfth claim for relief:

8       (a) On count 1, for a judgment in favor of Cover Oregon against Oracle in

9           the amount of $207,915,439;

10      (b) On count 2, for a judgment in favor of Cover Oregon against Oracle in

11           the amount of $207,915,439;

12      (c) On count 3, for a judgment in favor of Cover Oregon against Oracle in

13           the amount of $77,197,987.33;

14      (d) On count 4, for a judgment in favor of Cover Oregon against Oracle in

15           the amount of $77,197,987.33;

16      (e) On count 5, for a judgment in favor of Cover Oregon against Oracle in

17           the amount of $207,915,439;

18    M. On the thirteenth claim for relief:

19       (a) On count 1, for a judgment in favor of DHS, OHA, and Cover Oregon

20           and against Oracle in the amount $420,752,808, which shall be trebled

21           in accordance with ORS 166.725(7)(a);

22       (b) On count 2, for a judgment in favor of DHS, OHA, and Cover Oregon

23           and against Oracle in the amount $420,752,808, which shall be trebled

24           in accordance with ORS 166.725(7)(a);

25    N.  On the fourteenth claim for relief:

26    /// ///

**Page    124 -   COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085
Fax: (503) 323-9105

EXHIBIT A
PAGE 128 of 140

1      (a)    On count 1, for a judgment in favor of Attorney General Rosenblum

2      and against Oracle:

3          1.    Voiding the provisions of the Mythics-OHA Contracts,

4      the Oracle-OHA Contracts, and the Oracle-Cover

5      Oregon Contracts that limit DHS's, OHA's, and Cover

6      Oregon's rights to recover indirect, incidental, special,

7      punitive, and consequential damages;

8          2.    Voiding the provisions of the Mythics-OHA Contracts,

9      the Oracle-OHA Contracts, and the Oracle-Cover

10      Oregon Contracts stating that actions arising out or

11      related to those contracts may not be brought more than

12      two years after the cause of action accrues;

13          3.    Prohibiting Oracle from marketing to or entering into a

14      contract with any public corporation of or agency of the

15      State of Oregon from the date of judgment forward.;

16          4.    Awarding penalties in the amount of $250,000 for each

17      of Oracle's violation of ORS 166.720(2);

18      (b)    On count 2, for a judgment in favor of Attorney General Rosenblum

19      and against Oracle:

20          1.    Voiding the provisions of the Mythics-OHA Contracts,

21      the Oracle-OHA Contracts, and the Oracle-Cover

22      Oregon Contracts that limit DHS's, OHA's, and Cover

23      Oregon's rights to recover indirect, incidental, special,

24      punitive, and consequential damages;

25          2.    Voiding the provisions of the Mythics-OHA Contracts,

26      the Oracle-OHA Contracts, and the Oracle-Cover

Page    125 -  **COMPLAINT**

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105
**EXHIBIT A**
**PAGE 129 of 140**

1                           Oregon Contracts stating that actions arising out or

2                           related to those contracts may not be brought more than

3                           two years after the cause of action accrues;

4          3.      Prohibiting Oracle from marketing to or entering into a

5                           contract with any public corporation of or agency of the

6                           State of Oregon from the date of judgment forward;

7          4.      Awarding penalties in the amount of $250,000 for each

8                           of Oracle's violation of ORS 166.720(3);

9    O. Prejudgment interest at the statutory rate of 9% per annum;

10   P. An award of reasonable attorney fees, pursuant to ORS 166.725(5) and (14)

11      and an award of reasonable attorney fees and costs of investigation,

12      preparation, and litigation incurred in connection this count pursuant to ORS

13      180.760(8); and

14   Q. Such other relief as the Court deems appropriate.

15  DATED this 22nd day of August, 2014.

16                    ELLEN ROSENBLUM
                        ATTORNEY GENERAL

17                    FOR THE STATE OF OREGON

18

19              By:
                    David B. Markowitz, OSB #742046
                    DavidMarkowitz@MHGM.com

20                    Peter H. Glade, OSB #790480
                    PeterGlade@MHGM.com

21                    Lisa A. Kaner, OSB #881373
                    LisaKaner@MHGM.com

22                    Dallas DeLuca, OSB #072992
                    DallasDeLuca@MHGM.com

23                    Harry B. Wilson, OSB #077214
                    HarryWilson@MHGM.com

24

25                    Special Assistant Attorneys General for
                    Plaintiffs

26

Page   126 -   COMPLAINT

ATTORNEY GENERAL ELLEN ROSENBLUM
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SPECIAL ASSISTANT ATTORNEYS GENERAL
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085
Fax: (503) 323-9105

Invoices to OHA/DHS for Oracle Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 10/19/2011 | XFF3RWRT9M | $ 498,626.22 | $ 498,626.22 | 1/27/2012 |
| 1/4/2012 | XFMJRMFN1 | $ 169,034.00 | $ 169,034.00 | 5/9/2012 |
| 3/13/2012 | XFP69TNC9 | $ 194,849.00 | $ 194,849.00 | 9/5/2012 |
| 4/2/2012 | XFPMR1R76 | $ 862,592.60 | $ 862,592.60 | 6/27/2012 |
| 4/2/2012 | XFMR1XM5 | $ 59,856.00 | $ 59,856.00 | 6/27/2012 |
| 4/2/2012 | XFPMR1WN7 | $ 137,749.20 | $ 137,749.20 | 6/27/2012 |
| 4/2/2012 | XFPMR2293 | $ 241,632.16 | $ 241,632.16 | 6/27/2012 |
| 4/2/2012 | XFPMR1XK9M | $ 186,572.20 | $ 186,572.20 | 7/27/2012 |
| 4/20/2012 | XFR3724X9 | $ 1,714,127.02 | $ 1,714,127.02 | 5/22/2012 |
| 4/20/2012 | XFR3725T2 | $ 67,418.12 | $ 67,418.12 | 5/22/2012 |
| 4/20/2012 | XFR372536 | $ 260,194.12 | $ 260,194.12 | 5/22/2012 |
| 4/20/2012 | XFR3722K4 | $ 576,935.78 | $ 576,935.78 | 5/23/2012 |
| 4/20/2012 | XFR3725N8 | $ 194,532.00 | $ 194,532.00 | 5/29/2012 |
| 4/20/2012 | XFR3726J1M | $ 689,523.43 | $ 689,523.43 | 9/5/2012 |
| 4/20/2012 | XFW739PR9 | $ 90,576.08 | $ 90,576.08 | 9/5/2012 |
| 6/7/2012 | XFT3K3PK1 | $ 263,253.00 | $ 263,253.00 | 7/24/2012 |
| 6/28/2012 | XFTFTT5N1 | $ 235,433.00 | $ 235,433.00 | 7/24/2012 |
| 7/12/2012 | XFTR8NKM2 | $ 16,764.00 | $ 16,764.00 | 7/24/2012 |
| 8/2/2012 | XFW739KK2 | $ 986,688.74 | $ 986,688.74 | 8/23/2012 |
| 8/2/2012 | XFW739M54 | $ 51,928.93 | $ 51,928.93 | 8/23/2012 |
| 8/2/2012 | XFW73C3N9 | $ 131,309.10 | $ 131,309.10 | 8/23/2012 |
| 8/2/2012 | XFW73C847 | $ 516,223.20 | $ 516,223.20 | 8/23/2012 |
| 8/2/2012 | XFW73C9C1 | $ 1,086,582.78 | $ 1,086,582.78 | 9/5/2012 |
| 8/2/2012 | XFW73C7N4 | $ 649,619.99 | $ 649,619.99 | 9/20/2012 |
| 8/20/2012 | XFWKDDP79 | $ 45,061.00 | $ 45,061.00 | 9/5/2012 |
| 8/31/2012 | XFWW4RDR4 | $ 89,862.48 | $ 89,862.48 | 9/20/2012 |
| 8/31/2012 | XFX4FWP11 | $ 104,748.00 | $ 104,748.00 | 9/20/2012 |
| 8/31/2012 | XFWW4RNX9 | $ 846,270.56 | $ 846,270.56 | 9/20/2012 |
| 8/31/2012 | XFWW5PC31 | $ 674,488.73 | $ 674,488.73 | 9/20/2012 |
| 8/31/2012 | XFWW5PR57 | $ 1,099,702.28 | $ 1,099,702.28 | 9/20/2012 |
| 9/13/2012 | XFX4FWK85 | $ 444,835.49 | $ 444,835.49 | 9/20/2012 |
| 9/13/2012 | XFX4JR673 | $ 86,132.48 | $ 86,132.48 | 9/20/2012 |
| 9/13/2012 | XFWW5PJX7 | $ 61,726.50 | $ 61,726.50 | 9/20/2012 |
| 9/14/2012 | XFX59T762 | $ (12.00) | $ (12.00) | 9/20/2012 |
| 9/17/2012 | XFWW5PD38 | $ 752,151.55 | $ 752,151.55 | 9/20/2012 |
| 10/4/2012 | XFX9XDT3 | $ 1,800.00 | $ 1,800.00 | 10/15/2012 |
| 10/4/2012 | XFXD9F113 | $ 774,368.90 | $ 774,368.90 | 10/17/2012 |
| 10/4/2012 | XFXD9F228 | $ 111,911.58 | $ 111,911.58 | 10/17/2012 |
| 10/4/2012 | XFXCPP5K5 | $ 88,661.70 | $ 88,661.70 | 10/17/2012 |
| 10/4/2012 | XFX4FWM45 | $ 545,939.44 | $ 545,939.44 | 10/17/2012 |
| 10/4/2012 | XFXD9F1N1 | $ 880,215.44 | $ 880,215.44 | 10/17/2012 |
| 10/4/2012 | XFW4MN712 | $ 822,971.40 | $ 822,971.40 | 10/17/2012 |

EXHIBIT 1
Page 1 of 9   EXHIBIT A
PAGE 131 of 140

Invoices to OHA/DHS for Oracle Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 10/4/2012 | XFXCTP1J2 | $ 164,527.84 | $ 164,527.84 | 10/17/2012 |
| 10/4/2012 | XFXD9F1X9 | $ 1,011,893.96 | $ 1,011,893.96 | 10/17/2012 |
| 10/5/2012 | XFXD9F1F6 | $ 979,965.18 | $ 979,965.18 | 10/17/2012 |
| 10/5/2012 | XFX4FWNW4 | $ 639,871.21 | $ 639,871.21 | 10/17/2012 |
| 10/12/2012 | XFXP59N52 | $ 77,438.70 | $ 77,438.70 | 11/8/2012 |
| 10/12/2012 | XFXMWF1W7 | $ 773,220.24 | $ 773,220.24 | 11/28/2012 |
| 10/15/2012 | XFXR5WR51 | $ 584,831.88 | $ 584,831.88 | 11/28/2012 |
| 10/22/2012 | XFXP1PTM7 | $ 80,260.50 | $ 80,260.50 | 11/8/2012 |
| 10/26/2012 | XFXR5WX68 | $ 105,207.72 | $ 105,207.72 | 11/8/2012 |
| 11/16/2012 | XJ1969278 | $ 1,488,131.95 | $ 1,488,131.95 | 11/28/2012 |
| 11/16/2012 | XJ17M4M95 | $ 29,618.00 | $ 29,618.00 | 11/28/2012 |
| 11/16/2012 | XJ16XD2D4 | $ 134,509.66 | $ 134,509.66 | 11/29/2012 |
| 11/16/2012 | XJ16XD1D8 | $ 793,111.01 | $ 793,111.01 | 11/29/2012 |
| 11/16/2012 | XJ169MJR8 | $ 930,614.66 | $ 930,614.66 | 12/6/2012 |
| 11/27/2012 | XJ19691R9 | $ 486,239.27 | $ 486,239.27 | 12/6/2012 |
| 11/27/2012 | XJ1969219 | $ 690,455.12 | $ 690,455.12 | 12/6/2012 |
| 11/27/2012 | XJ1969286 | $ 898,614.92 | $ 898,614.92 | 1/11/2013 |
| 11/28/2012 | XJ1NR89R5 | $ 1,057,039.71 | $ 1,057,039.71 | 1/11/2013 |
| 12/11/2012 | XJ2219T39 | $ 1,522,575.53 | $ 1,522,575.53 | 1/9/2013 |
| 12/11/2012 | XJ2219T39M | $ 4,106.24 | $ 4,106.24 | 2/7/2013 |
| 12/18/2012 | XJ2219TX8 | $ 165,824.36 | $ 165,824.36 | 12/27/2012 |
| 12/18/2012 | XJ2219TT5 | $ 1,149,493.77 | $ 1,149,493.77 | 1/23/2013 |
| 12/18/2012 | XJ22N4CF2 | $ 517,636.60 | $ 517,636.60 | 1/24/2013 |
| 12/20/2012 | XJ24WTTC4 | $ 368,548.08 | $ 368,548.08 | 1/9/2013 |
| 12/21/2012 | XJ2218RD6 | $ 19,164.00 | $ 19,164.00 | 1/24/2013 |
| 1/10/2013 | XJ2F8K525 | $ 67,374.41 | $ 67,374.41 | 1/30/2013 |
| 1/10/2013 | XJ2F779X9 | $ 0.03 | $ 0.03 | 1/30/2013 |
| 1/10/2013 | XJ2F8JXN3 | $ 1,153.72 | $ 1,153.72 | 1/30/2013 |
| 1/21/2013 | XJRDTM26 | $ 1,839,591.56 | $ 1,839,591.56 | 2/11/2013 |
| 1/22/2013 | XJ2F775P8 | $ 132,012.92 | $ 132,012.92 | 1/24/2013 |
| 1/30/2013 | XJ2RDTJ51 | $ 1,312,242.57 | $ 1,312,242.57 | 2/11/2013 |
| 1/30/2013 | XJRDTR97 | $ 909,954.85 | $ 909,954.85 | 2/13/2013 |
| 2/6/2013 | XJ2KK9XD2 | $ 313,058.00 | $ 313,058.00 | 2/11/2013 |
| 2/13/2013 | XJ37M7X95 | $ 11,537.00 | $ 11,537.00 | 2/21/2013 |
| 2/22/2013 | XJ3FC3X53 | $ 31.15 | $ 31.15 | 3/5/2013 |
| 2/22/2013 | XJ3FC3XT3 | $ 1,350,224.96 | $ 1,350,224.96 | 3/5/2013 |
| 2/22/2013 | XJ3FC41M7 | $ 102,054.71 | $ 102,054.71 | 4/4/2013 |
| 2/25/2013 | XJ3FCJ7J6 | $ 1,981,377.23 | $ 1,981,377.23 | 3/5/2013 |
| 2/25/2013 | XJ3FC3X45 | $ 1,049,075.90 | $ 1,049,075.90 | 3/5/2013 |
| 2/28/2013 | XJ3KP45D2 | $ 128,962.39 | $ 128,962.39 | 3/14/2013 |
| 3/14/2013 | XJ3WTPN96 | $ 168,171.91 | $ 168,171.91 | 3/25/2013 |
| 3/14/2013 | XJ3WTPJT8 | $ 205,770.68 | $ 205,770.68 | 4/17/2013 |

EXHIBIT 1
Page 2 of 9   EXHIBIT A
PAGE 132 of 140

Invoices to OHA/DHS for Oracle Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 3/15/2013 | XJ3WXNFX9 | $ 148,574.44 | $ 148,574.44 | 3/25/2013 |
| 3/20/2013 | XJ3X8RTN5 | $ 344,384.11 | $ 344,384.11 | 3/25/2013 |
| 3/20/2013 | XJ41JN3D9 | $ 1,961,894.02 | $ 1,961,894.02 | 3/25/2013 |
| 3/20/2013 | XJ3XCT963 | $ 963,276.43 | $ 963,276.43 | 3/25/2013 |
| 3/20/2013 | XJ41X2FX2M | $ 296,437.08 | $ 296,437.08 | 4/8/2013 |
| 3/20/2013 | XJ41X2J12 | $ 331,504.60 | $ 331,504.60 | 4/8/2013 |
| 3/20/2013 | XJ41X2FN5 | $ 331,504.60 | $ 331,504.60 | 4/8/2013 |
| 3/20/2013 | XJ41X2J39 | $ 331,504.60 | $ 331,504.60 | 4/8/2013 |
| 3/22/2013 | XJ42J4PF2 | $ 1,796,592.75 | $ 1,796,592.75 | 4/8/2013 |
| 4/23/2013 | XJ4N9X5W6 | $ 234,999.20 | $ 234,999.20 | 5/28/2013 |
| 4/23/2013 | XJ4NCX549 | $ 2,841,499.20 | $ 2,841,499.20 | 5/29/2013 |
| 4/24/2013 | XJ4N9X615 | $ 3,521,428.10 | $ 3,521,428.10 | 5/8/2013 |
| 4/24/2013 | XJ4N9X2F2 | $ 1,572,453.46 | $ 1,572,453.46 | 5/8/2013 |
| 5/10/2013 | XJ52WKRT2 | $ 28,618.00 | $ 28,618.00 | 6/13/2013 |
| 5/10/2013 | XJ52WKRT2M | $ 1,000.00 | $ 1,000.00 | 7/17/2013 |
| 5/22/2013 | XJ575TW82 | $ 1,173,998.03 | $ 1,173,998.03 | 5/28/2013 |
| 5/22/2013 | XJ575TW58 | $ 143,158.92 | $ 143,158.92 | 6/6/2013 |
| 5/22/2013 | XJ575TT91 | $ 1,117,656.15 | $ 1,117,656.15 | 6/13/2013 |
| 5/22/2013 | XJ575TWD6 | $ 873,978.48 | $ 873,978.48 | 6/21/2013 |
| 5/23/2013 | XJ575TD96 | $ 4,346,436.59 | $ 4,346,436.59 | 5/28/2013 |
| 6/25/2013 | XJ5TNDRR4 | $ 7,713.09 | $ 7,713.09 | 6/28/2013 |
| 6/25/2013 | XJ5TMN8X9 | $ 183,646.13 | $ 183,646.13 | 7/1/2013 |
| 6/26/2013 | XJ5W22RM2 | $ 143,177.52 | $ 143,177.52 | 6/27/2013 |
| 6/26/2013 | XJ5W229N1 | $ 1,255,423.45 | $ 1,255,423.45 | 7/1/2013 |
| 6/26/2013 | XJ5W22RD3 | $ 1,387,103.04 | $ 1,387,103.04 | 7/1/2013 |
| 7/16/2013 | XJ66K11W7 | $ 225,899.67 | $ 225,899.67 | 7/17/2013 |
| 7/16/2013 | XJ66K11R6 | $ 590,940.01 | $ 590,940.01 | 7/17/2013 |
| 7/16/2013 | XJ66K15F8 | $ 1,511,444.86 | $ 1,511,444.86 | 7/17/2013 |
| 7/16/2013 | XJ66K15T8 | $ 7,427.42 | $ 7,427.42 | 9/30/2013 |
| 7/16/2013 | XJ72CFC19 | $ 27,552.00 | $ 27,552.00 | 10/10/2013 |
| 7/23/2013 | XJ699F744 | $ 24,213.72 | $ 24,213.72 | 8/29/2013 |
| 8/27/2013 | XJ72CFD23 | $ 951,556.37 | $ 951,556.37 | 9/5/2013 |
| 8/27/2013 | XJ72CF9F1 | $ 92,585.68 | $ 92,585.68 | 9/11/2013 |
| 8/27/2013 | XJ72CFCP9 | $ 846,127.39 | $ 846,127.39 | 9/11/2013 |
| 8/27/2013 | XJ72CF9X4 | $ 188,795.15 | $ 188,795.15 | 9/23/2013 |
| 8/27/2013 | XJ72CFC86 | $ 3,713.71 | $ 3,713.71 | 11/6/2013 |
| 9/17/2013 | XJ7CCP1K9 | $ 217,063.74 | $ 217,063.74 | 9/23/2013 |
| 9/17/2013 | XJ7CCN329 | $ 98,543.20 | $ 98,543.20 | 9/23/2013 |
| 9/17/2013 | XJ7CCMPX6 | $ 1,097,065.84 | $ 1,097,065.84 | 9/23/2013 |
| 9/17/2013 | XJ7CCMXM1 | $ 1,315,876.89 | $ 1,315,876.89 | 9/23/2013 |
| 9/17/2013 | XJ7CCM2F2 | $ 48,672.32 | $ 48,672.32 | 10/10/2013 |
| 9/17/2013 | XJ7CCM826 | $ 9,712.78 | $ 9,712.78 | 11/6/2013 |

EXHIBIT 1
Page 3 of 9  EXHIBIT A
PAGE 133 of 140

Invoices to OHA/DHS for Oracle Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 10/18/2013 | XJ857P241 | $ 16,283.19 | $ 16,283.19 | 1/29/2014 |
| 10/24/2013 | XJ83W8RD1 | $ 3,550.00 | $ 3,550.00 | 10/31/2013 |
| 10/24/2013 | XJ84239K5 | $ 25,593.75 | $ 25,593.75 | 10/31/2013 |
| 10/24/2013 | XJ84232M7 | $ 2,403.65 | $ 2,403.65 | 2/20/2014 |
| 10/28/2013 | XJ857N2C2 | $ 230,710.12 | $ 230,710.12 | 12/18/2013 |
| 10/28/2013 | XJ857NDK4 | $ 74,149.02 | $ 74,149.02 | 12/18/2013 |
| 10/28/2013 | XJ857NXR8 | $ 321,633.56 | $ 321,633.56 | 12/26/2013 |
| 10/28/2013 | XJ857N674 | $ 161,341.28 | $ 161,341.28 | 1/24/2014 |
| 10/28/2013 | XJ857P3X9 | $ 1,104,227.39 | $ 1,104,227.39 | 1/24/2014 |
| 10/28/2013 | XJ857NTW3 | $ 422,873.40 | $ 422,873.40 | 1/28/2014 |
| 10/29/2013 | XJ85JFJ94 | $ 1,632,671.66 | $ 1,632,671.66 | 12/18/2013 |
| 12/3/2013 | XJ8RM8WC8 | $ 13,776.00 | $ 13,776.00 | 1/29/2014 |
| 12/18/2013 | XJ2219WP1 | $ 1,177,160.06 | $ 1,177,160.06 | 1/24/2013 |
| 12/26/2013 | XJ97MMJ93 | $ 261,639.97 | $ 261,639.97 | 1/29/2014 |
| 12/26/2013 | XJ97MMX94 | $ 5,713.40 | $ 5,713.40 | 1/29/2014 |
| 12/26/2013 | XJ97MN7C6 | $ 22,201.20 | $ 22,201.20 | 1/31/2014 |
| 12/26/2013 | XJ97MN7J9 | $ 88,043.86 | $ 88,043.86 | 3/3/2014 |
| 12/27/2013 | XJ97MMW63 | $ 190,199.22 | $ 190,199.22 | 3/12/2014 |
| 12/27/2013 | XJ97MMTJ9 | $ 13,284.65 | $ 13,284.65 | 3/13/2014 |
| 12/27/2013 | XJ97MMTD4 | $ 135,186.88 | $ 135,186.88 | 3/13/2014 |
| 12/27/2013 | XJ97MMWD3 | $ 1,855,984.59 | $ 1,855,984.59 | 3/13/2014 |
| 12/27/2013 | XJ97MN676 | $ 712,519.11 | $ 712,519.11 | 3/13/2014 |
| 1/16/2014 | XJ9KK4T49 | $ 199,701.61 | $ 199,701.61 | 2/20/2014 |
| 1/16/2014 | XJ9KK5124 | $ 84,459.68 | $ 84,459.68 | 2/20/2014 |
| 1/16/2014 | XJ9KK4PW6 | $ 92,996.00 | $ 92,996.00 | 2/20/2014 |
| 1/16/2014 | XJ9KK5132 | $ 50,277.92 | $ 50,277.92 | 2/20/2014 |
| 1/16/2014 | XJ9KK4T57 | $ 501,229.39 | $ 501,229.39 | 2/20/2014 |
| 1/16/2014 | XJ9KK59N5 | $ 747,385.79 | $ 747,385.79 | 2/20/2014 |
| 1/16/2014 | XJ9KK52R9 | $ 106,497.20 | $ 106,497.20 | 2/20/2014 |
| 1/16/2014 | XJ9KK4XK3 | $ 123,307.94 | $ 123,307.94 | 3/6/2014 |
| 1/16/2014 | XJ9KK4XJ5 | $ 127,460.79 | $ 127,460.79 | 3/6/2014 |
| 1/16/2014 | XJ9KK5183 | $ 14,283.50 | $ 14,283.50 | 3/6/2014 |
| 1/16/2014 | XJ9KK4P51 | $ 42,155.36 | $ 42,155.36 | 3/6/2014 |
| 1/16/2014 | XJ9KK5466 | $ 139,185.93 | $ 139,185.93 | 3/6/2014 |
| 1/16/2014 | XJ9KK51M6 | $ 56,323.04 | $ 56,323.04 | 3/6/2014 |
| 1/16/2014 | XJ9KK57W1 | $ 1,951,055.78 | $ 1,951,055.78 | 3/12/2014 |
| 1/16/2014 | XJ9KK4NP4 | $ 1,310,862.17 | $ 1,310,862.17 | 3/24/2014 |
| 1/16/2014 | XJ9KK4N49 | $ 155,928.02 | $ 155,928.02 | 3/24/2014 |
| 3/18/2014 | XJCNNK2F5 | $ 18,855.00 | $ 18,855.00 | 4/17/2014 |
| 3/18/2014 | XJCNNDDN1 | $ 3,550.00 | $ 3,550.00 | 5/1/2014 |
| 3/19/2014 | XJCPT4PT8 | $ 47,095.14 | $ 47,095.14 | 3/26/2014 |
| 3/19/2014 | XJCPT4F28 | $ 152,649.12 | $ 152,649.12 | 3/26/2014 |

EXHIBIT 1
Page 4 of 9  EXHIBIT A
PAGE 134 of 140

Invoices to OHA/DHS for Oracle Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | | AMOUNT PAID | | DATE PAID |
|---|---|---|---|---|---|---|
| 3/19/2014 | XJCNNKDD4 | $ | 14,550.00 | $ | 14,550.00 | 4/21/2014 |
| 3/19/2014 | XJCNNFJX6 | $ | 26,700.00 | $ | 26,700.00 | 4/21/2014 |
| 3/19/2014 | XJCNNK212 | $ | 35,040.00 | $ | 35,040.00 | 4/21/2014 |
| 3/19/2014 | XJCNNMC83 | $ | 10,837.50 | $ | 10,837.50 | 4/21/2014 |
| 3/19/2014 | XJCNNF359 | $ | 25,593.75 | $ | 25,593.75 | 5/1/2014 |
| 3/21/2014 | XJCPT4N88 | $ | 24,151.70 | $ | 24,151.70 | 3/26/2014 |
| 3/21/2014 | XJCPT37X7 | $ | 17,464.80 | $ | 17,464.80 | 3/26/2014 |
| 3/21/2014 | XJCPT46K3 | $ | 994,969.61 | $ | 994,969.61 | 3/26/2014 |
| 3/21/2014 | XJCPT49C1 | $ | 1,399,089.78 | $ | 1,399,089.78 | 3/26/2014 |
| 4/24/2014 | XJD9P5226 | $ | 5,713.40 | $ | 5,713.40 | 4/24/2014 |
| 4/24/2014 | XJD9P51K5 | $ | 49,098.20 | $ | 49,098.20 | 4/24/2014 |
| 4/24/2014 | XJD9P52J3 | $ | 28,641.50 | $ | 28,641.50 | 4/24/2014 |
| 4/24/2014 | XJD9P521W9 | $ | 138,611.48 | $ | 138,611.48 | 4/24/2014 |
| 4/24/2014 | XJD9P5293 | $ | 128,330.80 | $ | 128,330.80 | 4/24/2014 |
| 4/24/2014 | XJDCN8585 | $ | 355,687.39 | $ | 355,687.39 | 4/24/2014 |
| 4/24/2014 | XJD9P5D19 | $ | 733,234.31 | $ | 733,234.31 | 4/24/2014 |
| 4/24/2014 | XJD9P53K8 | $ | 230,724.20 | $ | 230,724.20 | 4/24/2014 |
| 4/24/2014 | XJD9P5496 | $ | 84,474.56 | $ | 84,474.56 | 4/24/2014 |
| 4/24/2014 | XJD9P53C7 | $ | 1,081,771.75 | $ | 1,081,771.75 | 4/24/2014 |
| 4/24/2014 | XJD9P5D78 | $ | 469,380.24 | $ | 469,380.24 | 4/24/2014 |
| 6/5/2014 | XJF3N6653 | $ | 75,304.26 | $ | 75,304.26 | 6/11/2014 |
| 6/5/2014 | XJF3N63X7 | $ | 523,519.18 | $ | 523,519.18 | 6/11/2014 |
| 7/31/2014 | XJFT8DDR7 | $ | 1,289,421.19 | $ | 1,289,421.19 | 8/8/2014 |
| 8/14/2014 | XJFT8D9W1M | $ | 539,200.67 | $ | 539,200.67 | 8/14/2014 |
| | | $ | 96,831,418.65 | $ | 96,831,418.65 | |

EXHIBIT 1
Page 5 of 9  EXHIBIT A
PAGE 135 of 140

## Invoices to OHA/DHS for Oracle Products and Non-Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 7/12/2011 | XFD679N39M-A | $ 6,922,433.55 | $ 6,922,433.55 | 8/30/2011 |
| 7/12/2011 | XFD679N39M | $ 245,317.25 | $ 245,317.25 | 5/4/2012 |
| 3/13/2012 | XFP68TJX6 | $ 158,317.25 | $ 158,317.25 | 5/9/2012 |
| 4/9/2012 | FPRR53W9 | $ 158,317.25 | $ 158,317.25 | 5/4/2012 |
| 5/31/2012 | XFRXF73F6 | $ 1,708,273.48 | $ 1,708,273.48 | 8/23/2012 |
| 6/11/2012 | XFT4X6465 | $ 2,192,099.99 | $ 2,192,099.99 | 7/11/2012 |
| 6/20/2012 | XFT9886657 | $ 1,464,708.33 | $ 1,464,708.33 | 7/11/2012 |
| 6/29/2012 | XFTJC7TF6 | $ 1,157,797.78 | $ 1,157,797.78 | 7/24/2012 |
| 7/2/2012 | XFTK2X7J4 | $ 43,320.00 | $ 43,320.00 | 7/6/2012 |
| 7/18/2012 | XFTWW1NN9 | $ 158,317.25 | $ 158,317.25 | 7/27/2012 |
| 8/31/2012 | XFWWXM836 | $ 33,760.94 | $ 33,760.94 | 9/21/2012 |
| 9/5/2012 | XFWXR3757 | $ 294,646.40 | $ 294,646.40 | 9/7/2012 |
| 10/4/2012 | XFX93MJP8 | $ 2,192,099.99 | $ 2,192,099.99 | 10/15/2012 |
| 10/4/2012 | XFXJWM354 | $ 1,464,708.33 | $ 1,464,708.33 | 10/15/2012 |
| 12/21/2012 | XJ23F75N5 | $ 1,464,708.33 | $ 1,464,708.33 | 12/27/2012 |
| 12/27/2012 | XJ1R75DC6 | $ 33,760.94 | $ 33,760.94 | 1/14/2013 |
| 1/2/2013 | XJ27KT6R2 | $ 2,192,099.99 | $ 2,192,099.99 | 1/11/2013 |
| 1/7/2013 | XJ2F62184 | $ 58,219.32 | $ 58,219.32 | 1/14/2013 |
| 2/3/2013 | XJ314WTX2 | $ 122,597.90 | $ 122,597.90 | 2/8/2013 |
| 3/1/2013 | XJ3M8RK51 | $ 33,760.94 | $ 33,760.94 | 4/4/2013 |
| 3/7/2013 | XJ3PT8C36 | $ 2,192,099.99 | $ 2,192,099.99 | 3/14/2013 |
| 3/7/2013 | XJ3PT78T1 | $ 1,464,708.33 | $ 1,464,708.33 | 3/14/2013 |
| 4/8/2013 | XJ49T8R94 | $ 58,219.32 | $ 58,219.32 | 5/29/2013 |
| 5/21/2013 | XJ56D8RD1 | $ 1,577,683.47 | $ 1,577,683.47 | 6/10/2013 |
| 6/3/2013 | XJ5D37D52 | $ 33,760.94 | $ 33,760.94 | 6/13/2013 |
| 6/3/2013 | XJ5D5T3X1 | $ 23,265.80 | $ 23,265.80 | 6/14/2013 |
| 6/6/2013 | JX5FWN2N3 | $ 132,979.68 | $ 132,979.68 | 7/24/2013 |
| 6/14/2013 | XJ5J62MP9 | $ 4,689.00 | $ 4,689.00 | 6/21/2013 |
| 7/1/2013 | XJ5X4NK82 | $ 483,576.00 | $ 483,576.00 | 7/5/2013 |
| 7/8/2013 | XJ62M1PM9 | $ 61,627.45 | $ 61,627.45 | 7/17/2013 |
| 8/26/2013 | XJ71R7RM3 | $ 1,577,683.47 | $ 1,577,683.47 | 8/28/2013 |
|  | XJ6615N25 | $ 1,488,789.08 | $ 1,488,789.08 | 8/27/2013 |
| 9/4/2013 | XJ75K68P3 | $ 132,979.68 | $ 132,979.68 | 10/10/2013 |
| 9/9/2013 | XJ7765C25 | $ 76,250.77 | $ 76,250.77 | 10/10/2013 |
| 9/16/2013 | XJ79W2X79 | $ 58,219.32 | $ 58,219.32 | 10/10/2013 |
| 10/8/2013 | XJ7RF4477M | $ 61,627.45 | $ 61,627.45 | 3/26/2014 |
| 11/25/2013 | XJ8KW92K4 | $ 1,577,683.47 | $ 1,577,683.47 | 12/26/2013 |
| 12/2/2013 | XJ8R37X56 | $ 132,979.68 | $ 132,979.68 | 12/26/2013 |
| 12/2/2013 | XJ8R3D5D8 | $ 58,219.32 | $ 58,219.32 | 1/31/2014 |
| 12/9/2013 | XJ8XK6X71 | $ 76,250.77 | $ 76,250.77 | 12/26/2013 |
| 1/8/2014 | XJ9DX5WT5 | $ 61,627.45 | $ 61,627.45 | 2/20/2014 |
| 2/28/2014 | XJCCT1WM6 | $ 1,577,683.47 | $ 1,577,683.47 | 4/14/2014 |
| 3/3/2014 | XJCJ7PXF9 | $ 76,250.77 | $ 76,250.77 | 4/4/2014 |
| 3/4/2014 | XJCDCJ223 | $ 132,979.68 | $ 132,979.68 | 4/14/2014 |
| 4/9/2014 | XJD49DDW7 | $ 61,627.45 | $ 61,627.45 | 5/28/2014 |
| 5/27/2014 | XJDXMTRD9 | $ 1,493,959.30 | $ 1,493,959.30 | 5/30/2014 |
|  |  | $ 36,776,086.32 | $ 36,776,086.32 |  |

EXHIBIT 1
Page 6 of 9   EXHIBIT A
PAGE 136 of 140

Oracle Invoices to Cover Oregon for Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 6/18/2013 | 6402899 | $ 5,304,515.04 | $ 5,039,289.29 | 8/6/2013 |
| 7/9/2013 | 6404975 | $ 116,322.88 | $ 116,322.88 | 8/6/2013 |
| 7/10/2013 | 6405051 | $ 5,400,491.21 | $ 5,130,466.65 | 8/6/2013 |
| 8/7/2013 | 6407310 | $ 379,959.17 | $ 379,959.17 | 9/9/2013 |
| 8/20/2013 | 6407704 | $ 5,531,452.64 | $ 5,254,880.01 | 9/9/2013 |
| 8/30/2013 | 6408817 | $ 5,382,966.77 | $ 5,126,633.16 | 9/24/2013 |
| 8/30/2013 | 6408818 | $ 1,183,512.24 | $ 1,111,521.89 | 9/24/2013 |
| 8/30/2013 | 6408797 | $ 371,500.94 | $ 371,500.94 | 9/24/2013 |
| 8/30/2013 | 6408845 | $ 20,531.20 | $ 20,531.20 | 9/24/2013 |
| 9/27/2013 | 6411309 | $ 49,274.88 | $ 49,274.88 | 3/3/2014 |
| 10/8/2013 | 6412133 | $ 475,864.01 | $ 475,864.01 | 3/3/2014 |
| 10/16/2013 | 6412658 | $ 9,504,412.91 | $ 9,029,192.26 | 3/3/2014 |
| 11/7/2013 | 6414419 | $ 8,121,784.77 | $ 7,715,695.54 | 3/3/2014 |
| 11/30/2013 | 6416135 | $ 12,190.40 | | |
| 12/1/2013 | 6415764 | $ 50,301.44 | $ 50,301.44 | 3/3/2014 |
| 12/1/2013 | 6413290 | $ 43,115.52 | $ 43,115.52 | 3/3/2014 |
| 12/10/2013 | 6417571 | $ 6,912,478.97 | $ 6,566,855.02 | 3/3/2014 |
| 12/24/2013 | 6418020 | $ 50,044.80 | $ 50,044.80 | 3/3/2014 |
| 1/31/2014 | 6420632 | $ 4,949.01 | $ 4,949.01 | 3/3/2014 |
| 1/31/2014 | 6420633 | $ 49,274.88 | $ 49,274.88 | 3/3/2014 |
| 2/25/2014 | 6422495 | $ 62,910.46 | | |
| 2/28/2014 | 7616052 | $ 19,900,000.00 | $ 19,900,000.00 | 3/5/2014 |
| 2/28/2014 | 6423715 | $ 48,248.32 | | |
| 4/8/2014 | 6426714 | $ 3,248,182.61 | $ 3,248,182.61 | 4/21/2014 |
| 5/8/2014 | 6428823 | $ 3,195,707.79 | $ 3,195,707.79 | 5/27/2014 |
| 6/17/2014 | 6431855 | $ 2,909,883.63 | $ 2,909,883.63 | 6/25/2014 |
| 6/24/2014 | 6432013 | $ 1,358,540.75 | $ 1,358,540.75 | 6/25/2014 |
| | | $ 79,688,417.24 | $ 77,197,987.33 | |

EXHIBIT 1
Page 7 of 9  EXHIBIT A
PAGE 137 of 140

Oracle Invoices to Cover Oregon for Oracle Products and Non-Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 3/15/2013 | 2904700 | $ 3,516,160.00 | $ 3,516,160.00 | 5/28/2013 |
| 3/15/2013 | 2904715 | $ 2,086,080.00 | $ 2,086,080.00 | 5/28/2013 |
| 3/15/2013 | 2904715T | $ 172,101.60 | $ 172,101.60 | 6/18/2013 |
| 3/15/2013 | 2904716-1 | $ 101,618.17 | $ 101,618.17 | 7/22/2013 |
| 3/15/2013 | 2904701-1 | $ 162,562.63 | $ 162,562.63 | 7/22/2013 |
| 3/19/2013 | 2905624 | $ 5,948,866.00 | $ 5,948,866.00 | 4/17/2013 |
| 3/19/2013 | 2905625-1 | $ 267,698.97 | $ 267,698.97 | 7/22/2013 |
| 3/31/2013 | 2910448 | $ 31,407.75 | $ 31,407.75 | 5/28/2013 |
| 3/31/2013 | 2910448T | $ 2,591.14 | $ 2,591.14 | 6/18/2013 |
| 3/31/2013 | 2910449-1 | $ 1,019.97 | $ 1,019.97 | 7/29/2013 |
| 4/4/2013 | 2910679 | $ 2,156,250.00 | $ 2,156,250.00 | 5/28/2013 |
| 4/4/2013 | 2910698 | $ 1,689,579.75 | $ 1,689,579.75 | 5/28/2013 |
| 4/4/2013 | 2910679T | $ 177,890.64 | $ 177,890.64 | 6/18/2013 |
| 4/4/2013 | 2910697-1 | $ 50,687.39 | $ 50,687.39 | 8/12/2013 |
| 4/4/2013 | 2910678-1 | $ 64,687.50 | $ 64,687.50 | 8/12/2013 |
| 4/5/2013 | 2911367 | $ 1,312,500.00 | $ 1,312,500.00 | 5/28/2013 |
| 4/5/2013 | 2911398 | $ 1,288,417.00 | $ 1,288,417.00 | 7/29/2013 |
| 4/5/2013 | 2911369-1 | $ 39,375.00 | $ 39,375.00 | 8/12/2013 |
| 4/5/2013 | 2910678-1 | $ 5,336.72 | $ 5,336.72 | 9/24/2013 |
| 5/7/2013 | 2927959 | $ 1,529,308.00 | $ 1,529,308.00 | 5/23/2013 |
| 5/7/2013 | 2927960-2 | $ 68,818.86 | $ 68,818.86 | 5/29/2014 |
| 7/12/2013 | 2957586 | $ 110,392.37 | $ 110,392.37 | 11/25/2013 |
| 8/14/2013 | 2969166 | $ 17,136.59 | $ 17,136.59 | 11/25/2013 |
| 9/4/2013 | 2927960-1 | $ 68,818.86 | $ 68,818.86 | 8/26/2012 |
| 9/10/2013 | 2975902 | $ 229,618.02 | $ 229,618.02 | 11/25/2013 |
| 9/30/2013 | 42325132 | $ 1,288,417.00 | $ 1,288,417.00 | 11/25/2013 |
| 11/14/2013 | 3005618 | $ 58,782.97 | $ 58,782.97 | 2/19/2014 |
| 12/1/2013 | 2905625-2 | $ 267,698.97 | $ 267,698.97 | 12/30/2013 |
| 12/1/2013 | 2905625-3 | $ 267,698.97 | $ 267,698.97 | 12/30/2013 |
| 12/1/2013 | 2904701-3 | $ 158,227.20 | $ 158,227.20 | 12/30/2013 |
| 12/1/2013 | 2904716-3 | $ 101,618.17 | $ 101,618.17 | 12/30/2013 |
| 12/1/2013 | 2904701-2 | $ 158,227.20 | $ 158,227.20 | 12/30/2013 |
| 12/1/2013 | 2904716-2 | $ 101,618.17 | $ 101,618.17 | 12/30/2013 |
| 12/1/2013 | 2910678-2 | $ 70,024.22 | $ 70,024.22 | 12/30/2013 |
| 12/1/2013 | 2911369-2 | $ 39,375.00 | $ 39,375.00 | 12/30/2013 |
| 12/1/2013 | 2910697-2 | $ 50,687.39 | $ 50,687.39 | 12/30/2013 |
| 12/29/2013 | 2910678-3 | $ 70,024.22 | $ 70,024.22 | 1/15/2014 |
| 12/31/2013 | 42426726 | $ 1,288,417.00 | $ 1,288,417.00 | 1/15/2014 |
| 12/31/2013 | 2910449-2 | $ 1,019.97 | $ 1,019.97 | 1/15/2014 |
| 12/31/2013 | 2910697-3 | $ 50,687.39 | $ 50,687.39 | 2/19/2014 |
| 12/31/2013 | 2911369-3 | $ 39,375.00 | $ 39,375.00 | 2/19/2014 |
| 1/6/2014 | 2910449-3 | $ 1,019.97 | $ 1,019.97 | 1/15/2014 |

EXHIBIT 1
Page 8 of 9   EXHIBIT A
PAGE 138 of 140

Oracle Invoices to Cover Oregon for Oracle Products and Non-Consulting Services

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 1/7/2014 | 42421939 | $ 110,392.37 | | |
| 1/31/2014 | 42452780 | $ 17,136.59 | $ 17,136.59 | 3/11/2014 |
| 2/1/2014 | 3005584 | $ 11,691.94 | $ 11,691.94 | 3/11/2014 |
| 2/2/2014 | 2927960-3 | $ 68,818.86 | $ 68,818.86 | 3/11/2014 |
| 2/5/2014 | 42487959 | $ 229,618.02 | $ 229,618.02 | 3/11/2014 |
| | | $ (4,335.43) | $ (4,335.43) | 2/19/2014 |
| 2/28/2014 | 3044292 | $ 34,346.08 | $ 34,346.08 | 5/20/2014 |
| 2/28/2014 | 3044292C | $ (34,346.08) | $ (34,346.08) | 5/20/2014 |
| 3/15/2014 | 2904716-4 | $ 101,618.18 | $ 101,618.18 | 5/5/2014 |
| 3/15/2014 | 2904701-4 | $ 158,227.20 | $ 158,227.20 | 5/5/2014 |
| 3/19/2014 | 2905625-4 | $ 267,698.97 | $ 267,698.97 | 5/5/2014 |
| 3/30/2014 | 3019318 | $ 73,095.35 | $ 73,095.35 | 5/20/2014 |
| 3/30/2014 | 42521402 | $ 58,782.98 | $ 58,782.98 | 5/30/2014 |
| 3/31/2014 | 2910449-4 | $ 1,019.96 | $ 1,019.96 | 5/5/2014 |
| 3/31/2014 | 42521733 | $ 1,013,648.33 | $ 1,013,648.33 | 5/5/2014 |
| 3/31/2014 | 42521374 | $ 7,794.63 | $ 7,794.63 | 5/30/2014 |
| 4/4/2014 | 2910697-4 | $ 50,687.40 | $ 50,687.40 | 5/5/2014 |
| 4/4/2014 | 2910678-4 | $ 70,024.23 | $ 70,024.23 | 5/5/2014 |
| 4/5/2014 | 2911369-4 | $ 39,375.00 | $ 39,375.00 | 5/5/2014 |
| 4/30/2014 | 42543998 | $ 17,136.59 | $ 17,136.59 | 5/30/2014 |
| 5/7/2014 | 42586050 | $ 229,618.02 | $ 229,618.02 | 5/30/2014 |
| 5/7/2014 | 2927960-4 | $ 68,818.86 | $ 68,818.86 | 5/29/2014 |
| 6/9/2014 | 42623048 | $ 58,782.98 | $ 58,782.98 | 8/11/2014 |
| 6/9/2014 | 42523256 | $ 11,708.95 | $ 11,708.95 | 8/18/2014 |
| 6/13/2014 | 42516261 | $ 267,698.97 | $ 267,698.97 | 7/2/2014 |
| 6/13/2014 | 42516203 | $ 158,227.20 | $ 158,227.20 | 7/2/2014 |
| 6/13/2014 | 42515385 | $ 93,873.60 | $ 93,873.60 | 7/2/2014 |
| 6/30/2014 | 42612557 | $ 1,063,119.75 | $ 1,063,119.75 | 7/22/2014 |
| 6/29/2014 | 42622740 | $ 73,095.35 | $ 73,095.35 | 7/22/2014 |
| 6/30/2014 | 42516220 | $ 942.23 | $ 942.23 | 7/22/2014 |
| 7/1/2014 | 42516226 | $ 1,187.39 | $ 1,187.39 | 8/11/2014 |
| 7/3/2014 | 42515484 | $ 64,687.50 | $ 64,687.50 | 8/11/2014 |
| 7/3/2014 | 42515474 | $ 49,500.00 | $ 49,500.00 | 8/11/2014 |
| 7/4/2014 | 42516224 | $ 39,375.00 | $ 39,375.00 | 8/11/2014 |
| 7/31/2014 | 42658066 | $ 17,136.59 | | |
| 7/31/2014 | 42516232 | $ 68,818.87 | | |
| 8/6/2014 | 42689004 | $ 229,618.02 | | |
| | | $ 29,900,482.19 | $ 29,474,516.34 | |

EXHIBIT 1
Page 9 of 9   EXHIBIT A
PAGE 139 of 140



## MLSA Invoices

| INVOICE DATE | INVOICE # | INVOICE AMOUNT | AMOUNT PAID | DATE PAID |
|---|---|---|---|---|
| 7/12/2011 | XFD679N39M-A | $ 6,922,433.55 | $ 6,922,433.55 | 8/30/2011 |
| 7/12/2011 | XFD679N39M | $ 245,317.25 | $ 245,317.25 | 5/4/2012 |
| 10/19/2011 | XFF3RWRT9M | $ 498,626.22 | $ 498,626.22 | 1/27/2012 |
| 1/4/2012 | XFMJRMFN1 | $ 169,034.00 | $ 169,034.00 | 5/9/2012 |
| 3/13/2012 | XFP68TJX6 | $ 158,317.25 | $ 158,317.25 | 5/9/2012 |
| 3/13/2012 | XFP69TNC9 | $ 194,849.00 | $ 194,849.00 | 9/5/2012 |
| 4/9/2012 | FPRR53W9 | $ 158,317.25 | $ 158,317.25 | 5/4/2012 |
| 5/31/2012 | XFRXF73F6 | $ 1,708,273.48 | $ 1,708,273.48 | 8/23/2012 |
| 6/20/2012 | XFT9886657 | $ 1,464,708.33 | $ 1,464,708.33 | 7/11/2012 |
| 6/28/2012 | XFTFTT5N1 | $ 235,433.00 | $ 235,433.00 | 7/24/2012 |
| 6/29/2012 | XFTJC7TF6 | $ 1,157,797.78 | $ 1,157,797.78 | 7/24/2012 |
| 7/2/2012 | XFTK2X7J4 | $ 43,320.00 | $ 43,320.00 | 7/6/2012 |
| 7/18/2012 | XFTWW1NN9 | $ 158,317.25 | $ 158,317.25 | 7/27/2012 |
| 8/31/2012 | XFWWXM836 | $ 33,760.94 | $ 33,760.94 | 9/21/2012 |
| 9/5/2012 | XFWXR3757 | $ 294,646.40 | $ 294,646.40 | 9/7/2012 |
| 10/4/2012 | XFXJWM354 | $ 1,464,708.33 | $ 1,464,708.33 | 10/15/2012 |
| 12/21/2012 | XJ23F75N5 | $ 1,464,708.33 | $ 1,464,708.33 | 12/27/2012 |
| 12/27/2012 | XJ1R75DC6 | $ 33,760.94 | $ 33,760.94 | 1/14/2013 |
| 1/7/2013 | XJ2F62184 | $ 58,219.32 | $ 58,219.32 | 1/14/2013 |
| 2/3/2013 | XJ314WTX2 | $ 122,597.90 | $ 122,597.90 | 2/8/2013 |
| 2/6/2013 | XJ2KK9XD2 | $ 313,058.00 | $ 313,058.00 | 2/11/2013 |
| 3/1/2013 | XJ3M8RK51 | $ 33,760.94 | $ 33,760.94 | 4/4/2013 |
| 3/7/2013 | XJ3PT78T1 | $ 1,464,708.33 | $ 1,464,708.33 | 3/14/2013 |
| 3/20/2013 | XJ41X2FX2M | $ 296,437.08 | $ 296,437.08 | 4/8/2013 |
| 3/20/2013 | XJ41X2J12 | $ 331,504.60 | $ 331,504.60 | 4/8/2013 |
| 3/20/2013 | XJ41X2FN5 | $ 331,504.60 | $ 331,504.60 | 4/8/2013 |
| 3/20/2013 | XJ41X2J39 | $ 331,504.60 | $ 331,504.60 | 4/8/2013 |
| 4/8/2013 | XJ49T8R94 | $ 58,219.32 | $ 58,219.32 | 5/29/2013 |
| 5/21/2013 | XJ56D8RD1 | $ 1,577,683.47 | $ 1,577,683.47 | 6/10/2013 |
| 6/3/2013 | XJ5D37D52 | $ 33,760.94 | $ 33,760.94 | 6/13/2013 |
| 6/3/2013 | XJ5D5T3X1 | $ 23,265.80 | $ 23,265.80 | 6/14/2013 |
| 6/6/2013 | JX5FWN2N3 | $ 132,979.68 | $ 132,979.68 | 7/24/2013 |
| 6/14/2013 | XJ5J62MP9 | $ 4,689.00 | $ 4,689.00 | 6/21/2013 |
| 7/8/2013 | XJ62M1PM9 | $ 61,627.45 | $ 61,627.45 | 7/17/2013 |
| 8/26/2013 | XJ71R7RM3 | $ 1,577,683.47 | $ 1,577,683.47 | 8/28/2013 |
|  | XJ6615N25 | $ 1,488,789.08 | $ 1,488,789.08 | 8/27/2013 |
| 9/4/2013 | XJ75K68P3 | $ 132,979.68 | $ 132,979.68 | 10/10/2013 |
| 9/9/2013 | XJ7765C25 | $ 76,250.77 | $ 76,250.77 | 10/10/2013 |
| 9/16/2013 | XJ79W2X79 | $ 58,219.32 | $ 58,219.32 | 10/10/2013 |
| 10/8/2013 | XJ7RF4477M | $ 61,027.45 | $ 61,027.45 | 3/26/2014 |
| 11/25/2013 | XJ8KW92K4 | $ 1,577,683.47 | $ 1,577,683.47 | 12/26/2013 |
| 12/2/2013 | XJ8R37X56 | $ 132,979.68 | $ 132,979.68 | 12/26/2013 |
| 12/2/2013 | XJ8R3D5D8 | $ 58,219.32 | $ 58,219.32 | 1/31/2014 |
| 12/9/2013 | XJ8XK6X71 | $ 76,250.77 | $ 76,250.77 | 12/26/2013 |
| 1/8/2014 | XJ9DX5WT5 | $ 61,627.45 | $ 61,627.45 | 2/20/2014 |
| 2/28/2014 | XJCCT1WM6 | $ 1,577,683.47 | $ 1,577,683.47 | 4/14/2014 |
| 3/3/2014 | XJCJ7PXF9 | $ 76,250.77 | $ 76,250.77 | 4/14/2014 |
| 3/4/2014 | XJCDCJ223 | $ 132,979.68 | $ 132,979.68 | 4/14/2014 |
| 4/9/2014 | XJD49DDW7 | $ 61,627.45 | $ 61,627.45 | 5/28/2014 |
| 5/27/2014 | XJDXMTRD9 | $ 1,493,959.30 | $ 1,493,959.30 | 5/30/2014 |
|  |  | $ 30,226,061.46 | $ 30,226,061.46 |  |

EXHIBIT 2
Page 1 of 1